**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JANE DOE 43, | CASE NO. 17 Civ 616 (JGK) |
| Plaintiff, | |
| vs. | |
| JEFFREY EPSTEIN, GHISLAINE MAXWELL, SARAH KELLEN, LESLEY GROFF, AND NATALYA MALYSHEV | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS**

# TABLE OF CONTENTS

**BACKGROUND** .................................................................................................2

ARGUMENT ......................................................................................................3

    A.    Allegations Regarding the Prior Proceedings Should Be Stricken.........................3

    B.    Plaintiff Should Be Required To Proceed In Her Name............................................4

    C.    The FAC Fails to State a Claim .................................................................................5

        1.    Section 1591 Does Not Cover The Alleged Conduct ................................6

        2.    The FAC Fails to Plead Fraud ....................................................................8

        3.    The FAC Fails to Plead Coercion.............................................................14

        4.    The FAC Fails to Plead a Causal Link .....................................................16

        5.    The FAC Fails To Allege Knowledge Against Groff................................17

        6.    The FAC Fails to Allege Any Predicate Acts...........................................17

    D.    The FAC Fails to Meet the *Twombly/Iqbal* Standard............................................20

    E.    The Claim Is Barred by the Statute of Limitations.................................................21

    F.    The Court Does Not Have Jurisdiction Over Defendants ......................................23

    G.    Venue Is Improperly Laid in the Southern District of New York .........................24

CONCLUSION...................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abarca v. Little*,
  54 F. Supp. 3d 1064 (D. Minn. 2014)..........................................................................21, 22, 23

*Am. Sales Co., Inc. v. AstraZeneca AB*,
  No. 10 Civ. 6062, 2011 WL 1465786 (S.D.N.Y. Apr. 14, 2011)...........................................13

*Anderson v. Davis Polk & Wardwell LLP*,
  850 F. Supp. 2d 392 (S.D.N.Y. 2012) ....................................................................................3

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009)..................................................................................................20, 21

*Ashland Inc. v. Morgan Stanley & Co.*,
  652 F.3d 333 (2d Cir. 2011) ................................................................................................12

*Atuahene v. City of Hartford*,
  10 F. App'x 33 (2d Cir. 2001) ..............................................................................................13

*Bell Atlantic Corp. v. Twombly*,
  127 S. Ct. 1955 (2007)................................................................................................20, 21

*Cohen v. SAC Trading Corp.*,
  711 F.3d 353 (2d Cir. 2013) ..................................................................................................8

*Crigger v. Fahnstock & Co., Inc.*,
  443 F.3d 230 (2d Cir. 2006) ................................................................................................11

*Doe v. Del Rio*,
  241 FRD 154 (S.D.N.Y. 2006) ...............................................................................................5

*Doe v. Shakur*,
  164 FRD 359 (S.D.N.Y. 1996) ...............................................................................................4

*Greenberg v. Chrust*,
  198 F. Supp. 2d 578 (S.D.N.Y. 2002) ..................................................................................10

*O'Brien v. Nat'l Prop. Analysts Partners*,
  936 F.2d 674 (2d Cir.1991) ..................................................................................................10

*Oluch v. Orina*,
  101 F. Supp. 3d 325 (S.D.N.Y. 2015) .............................................................................22, 23

*Schlaifer Nance & Co. v. Estate of Andy Warhol*,
    119 F.3d 91 (2d Cir. 1997) ................................................................. 12

*Sealed Plaintiff v. Sealed Defendant*,
    537 F.3d 185 (2d Cir.2008) ................................................................. 4

*Stein v. World-Wide Plumbing Supply Inc.*,
    71 F. Supp. 3d 320 (E.D.N.Y. 2014) ................................................. 19

*U.S. v. Farhane*,
    634 F.3d 127 (2d Cir. 2011) ............................................................... 19

*United States v. Marcus*,
    487 F. Supp. 2d 289 (E.D.N.Y. 2007), *rev'd on other grounds*, 538 F.3d 97
    (2d Cir. 2008) ..................................................................................... 16

*Velez v. Sanchez*,
    693 F.3d 308 (2d Cir. 2012) ........................................................ 18, 19

*Wood v. Research Applied Associates*,
    328 F. App'x. 744 (2d Cir. 2009) ............................................. 9, 10, 20

**Statutes**

18 U.S.C. 1593A ........................................................................................ 19

18 U.S.C. 1594(a)-(c) ................................................................................. 19

18 U.S.C. § 1591 ................................................................................. *passim*

18 U.S.C. § 1591(e)(2) ............................................................................... 15

18 U.S.C. § 1592 ........................................................................................ 18

18 U.S.C. § 1595 ............................................................................ *passim*1

28 U.S.C. § 1391(b)(2) ............................................................................... 24

114 Stat. § 102(4) ........................................................................................ 7

114 Stat. § 102(5) ........................................................................................ 7

114 Stat. § 102(8) ........................................................................................ 7

Trafficking Victims Protection Act of 2000, Pub. L. 106-386, § 109(9), 114 Stat.
    1464, 1466 ........................................................................................... 7

**Other Authorities**

CPLR 302(a)(2) .................................................................................................................24

Fed. R. Civ. P.  9(b) .................................................................................................8, 9, 10, 11

Fed. R. Civ. P. 10(a) .................................................................................................1, 4

Fed. R. Civ. P. 12(b)(2) and (6) .................................................................................................1

Fed. R. Civ. P. 12(f) .................................................................................................1, 3

Defendants Jeffrey Epstein ("Epstein") and Lesley Groff ("Groff") (collectively "Defendants") move, pursuant to Fed. R. Civ. P. 9(b), 12(b)(2) and (6), to dismiss the First Amended Complaint ("FAC") filed by plaintiff Jane Doe ("Plaintiff"). Exh. A.

The FAC represents the Plaintiff's second unsuccessful bite at the apple. On January 26, 2017, Plaintiff filed her original complaint in this matter ("Complaint"). Exh. B. On May 15, 2017, and at the suggestion of the Court, the Defendants served a letter on Plaintiff identifying a wide range of deficiencies warranting dismissal of the Complaint ("Deficiency Letter"). Exh. C. On June 5, 2017, Plaintiff filed the FAC – without fixing the deficiencies cited in the Deficiency Letter.

Indeed, just like the Complaint that it replaced, the FAC should be dismissed because the FAC: (a) fails to state a claim under 18 U.S.C. § 1595 ("Section 1595"), which is the sole claim asserted by Plaintiff; (b) relies on a claim which is barred by the statute of limitations; (c) fails to allege personal jurisdiction over Defendants; and (d) improperly lays venue in the Southern District of New York. The FAC should be dismissed with prejudice.

The FAC also repeats a laundry list of immaterial, impertinent and scandalous allegations about Epstein which were contained in the Complaint and should be stricken from the FAC pursuant to Fed. R. Civ. P. 12(f) in the event that it is not dismissed in its entirety.

Plaintiff should also be required to amend the caption of this case to reflect her identity pursuant to Fed. R. Civ. P. 10(a), because she has not satisfied the requirements for proceeding anonymously and, importantly, because she has publicly identified herself by name as the plaintiff in this action in a letter to the editor published in the New York Times.

## BACKGROUND

At its heart, the FAC fails because it chronicles a sexual relationship between two consenting adults and then, ten years after the relationship ended, tries to shoehorn that relationship into a statutory scheme prohibiting sex trafficking that simply does not apply. Plaintiff alleges that she was a South African citizen who lived briefly in New York from October 2006 through May 2007.  FAC ¶¶ 3, 34, 64.  During a three month portion of that brief period, Plaintiff claims to have engaged in a sexual relationship with Epstein, perceiving him to be a man of "wealth and influence" who could take care of her.  FAC ¶ 38.  According to the FAC, Epstein did take care of her, providing her with a comfortable lifestyle, including an apartment on the Upper East Side of Manhattan, access to a car service and a cell phone.  FAC ¶ 52.

Plaintiff left New York and returned to her father's home in South Africa in January 2007.  FAC ¶ 55.  She then traveled back to New York on her own accord in February 2007.  FAC ¶ 61.  Plaintiff left the United States again in May 2007, also on her own accord and without the involvement of defendants, and this time "did not return" to the United States.  FAC ¶ 64.  However, ten years later, after the expiration of any conceivable statute of limitations period, and in a moment of stunning opportunism, Plaintiff now sues for violation of anti-trafficking law, allegedly because Epstein did not help the Plaintiff to gain admission to the Fashion Institute of Technology ("FIT") and advance her career.

The FAC should be dismissed with prejudice because Plaintiff plainly is not a victim of sex trafficking and because the anti-trafficking law clearly is not meant to regulate, let alone prohibit, the consensual adult relationship alleged here.  Moreover, the FAC fails to state a claim

under Section 1595, advances a claim barred by the statute of limitations, fails to allege personal

jurisdiction over Defendants, and improperly lays venue in the Southern District of New York.

## ARGUMENT

### A.   Allegations Regarding the Prior Proceedings Should Be Stricken

The allegations set forth in paragraphs 11 through 33 of the FAC relating to state and

federal investigations of Epstein, including his prior guilty plea in Florida, referred to herein as

the "Prior Proceedings," are scandalous, harassing, and entirely immaterial to Plaintiff's claim.

All of the allegations relating to the Prior Proceedings should be stricken from the FAC.  Under

Fed. R. Civ. P. 12(f), a "court may strike from a pleading ... any ... immaterial, impertinent, or

scandalous matter."  *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 416

(S.D.N.Y. 2012).  "An allegation is impertinent or immaterial when it is neither responsive nor

relevant to the issues involved in the action."  *Id.* "'Scandalous' generally refers to any allegation

that unnecessarily reflects on the moral character of an individual or states anything in repulsive

language that detracts from the dignity of the court."  *Id.*

The allegations in the FAC relating to the Prior Proceedings should be stricken from the

FAC, pursuant to Rule 12(f).  First, these allegations are immaterial to this action because the

Prior Proceedings did not involve Plaintiff; the matters giving rise to the Prior Proceedings

occurred more than a year before Plaintiff moved to New York in 2006.  FAC ¶ 24.  Plaintiff's

counsel conceded during the April 6, 2017 court conference ("April 6 Conference") that Plaintiff

had nothing to do with the Prior Proceedings.  Plaintiff has dragged the Prior Proceedings into

the FAC simply to paint Epstein in a poor light and divert attention from the glaring deficiencies

of her claim.

Second, the allegations of the Prior Proceedings are scandalous, and described by

Plaintiff with the breathless language of tabloid publications, lacking both substance and cited

sources. See FAC at ¶ 11 ("Defendant Epstein is widely recognized…") and ¶ 22 ("Defendants Epstein and Maxwell have been known …,"). Finally, these allegations create a substantial risk that a jury might infer that Epstein is liable in the instant matter simply because of the alleged Prior Proceedings. Indeed, Plaintiff's decision to rely on these allegations reveals this lawsuit for what it is – an opportunistic gambit by the Plaintiff to extort a settlement out of Epstein.

**B.**    **Plaintiff Should Be Required To Proceed In Her Name**

The Federal Rules of Civil Procedure requires that "[t]he title of [a] complaint must name all the parties." Fed. R. Civ. P. 10(a). "This requirement, though seemingly pedestrian, serves the vital purposes of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188–89 (2d Cir.2008). The use of pseudonyms is not allowed except in limited circumstances, balancing the interests of the party seeking anonymity, the public interest to know and the opposing parties' right to confront the accuser. *Id.*

Courts have required an anonymous plaintiff to proceed in their own names under circumstances similar to those alleged in this action. In *Doe v. Shakur*, 164 FRD 359 (S.D.N.Y. 1996), the plaintiff alleged that she was sexually assaulted by the rapper Tupac Shakur. The Court denied the plaintiff's request to proceed anonymously, explaining:

> First, plaintiff has chosen to bring this lawsuit. She has made serious charges and has put her credibility in issue. Fairness requires that she be prepared to stand behind her charges publicly.
>
> Second, this is a civil suit for damages, where plaintiff is seeking to vindicate primarily her own interests. This is not a criminal case where rape shield laws might provide some anonymity to encourage victims to testify to vindicate the public's interest in enforcement of our laws.
>
> Third, Shakur has been publicly accused. If plaintiff were permitted to prosecute this case anonymously, Shakur would be placed at a serious disadvantage, for he would be required to

> defend himself publicly while plaintiff could make her accusations from behind a cloak of anonymity.
>
> Finally, the public has a right of access to the courts. Indeed, lawsuits are public events and the public has a legitimate interest in knowing the facts involved in them. Among those facts is the identity of the parties.

*Id.* at 36.   Similarly, a plaintiff who alleged sexual molestation and abuse cannot proceed anonymously without a sufficient showing of particularized harm to the plaintiff if anonymity is not allowed.   *Doe v. Del Rio*, 241 FRD 154 (S.D.N.Y. 2006) (plaintiff alleging sexual abuse by police required to proceed in her actual name, in that her therapist report fails to establish a link between public disclosure of plaintiff's name and alleged harm).

Here, Plaintiff has not satisfied these requirements.   In fact, Plaintiff has publicly identified herself by name as the plaintiff in this action in a letter she wrote to the New York Times.   Specifically, she identified herself by her legal name and stated that she is "the plaintiff in *Jane Doe 43 v. Jeffrey Epstein, Ghislane Maxwell, Sarah Kellen, Lesley Groff and Natalya Mayshev*."   The letter was published on November 15, 2017.   Exh. D.   Since Plaintiff never satisfied the requirements to proceed anonymously in the first instance and has now publicly identified herself, she should be required to amend the caption to reflect her own name.

## C.      The FAC Fails to State a Claim

The FAC, like the Complaint it replaces, fails to plead facts sufficient to sustain a claim under Section 1595, which provides for civil liability for violations of 18 U.S.C. § 1591 and other enumerated statutes.   The version of Section 1591(a) in effect in 2006-07 (when the events alleged in the FAC purportedly occurred) provided that:

> "whoever knowingly … recruits, entices, harbors, transports, provides, or obtains by any means a person … knowing that force, fraud, or coercion … will be used to cause the person to engage in a commercial sex act … shall be punished as provided in subsection (b)."

5

The FAC fails to establish the elements of a Section 1591(a) violation for at least the following six reasons. First, the statute does not apply to the alleged relationship between the Plaintiff and Epstein or the alleged conduct. Second, the FAC fails to adequately plead that the Defendants used "fraud" to cause Plaintiff to engage in a commercial sex act. Third, the FAC fails to allege that the Defendants used "coercion" to cause Plaintiff to engage in a commercial sex act. Fourth, the FAC fails to establish that any alleged fraud or coercion "caused" the Plaintiff to engage in a commercial sex act. Fifth, the FAC fails to adequately plead that Groff "knew" that the Plaintiff would be caused by "fraud" or "coercion" to engage in a commercial sex act. Finally, the FAC fails to meet the *Twombly/Iqbal* standard for pleading any claim in federal court.

All six of these points should be read in the context of one major deficiency in the FAC – the Plaintiff has elected to provide the Court with no information about her personal, educational and professional background. There is nothing in the FAC about the Plaintiff's age, maturity, level of education, or prior employment experience. Without these factual allegations, the Court is left with little context to consider when evaluating the Plaintiff's allegations of fraud and coercion, and when considering whether the overall narrative described by the Plaintiff is even plausible.

**1.  Section 1591 Does Not Cover The Alleged Conduct**

In enacting Section 1591, Congress explained that "[t]he purposes of this division are to combat *trafficking in persons,* a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment *of traffickers,* and to protect their victims." Trafficking Victims Protection Act of 2000, Pub. L. 106-386, § 109(9), 114 Stat. 1464, 1466 (emphasis added). It noted that:

> Traffickers lure women and girls into their networks through false
> promises of decent working conditions at relatively good pay as
> nannies, maids, dancers, factory workers, restaurant workers, sales
> clerks, or models.

*Id.* § 102(4), 114 Stat. at 1466.  The traffickers "buy children from poor families and sell them

into prostitution or into various types of forced or bonded labor." *Id.*  They "often transport

victims from their home communities to unfamiliar destinations." *Id.* § 102(5), 114 Stat. at 1466.

Trafficking is "increasingly perpetrated by organized, sophisticated criminal enterprises" and is

"the fastest growing source of profits for organized criminal enterprises worldwide." *Id.* §

102(8), 114 Stat. at 1467.  These sort of descriptions do not apply to what is alleged in this

action, which is at most (according to the FAC and the evidence provided by the Plaintiff) a

dispute between an adult woman and a boyfriend over an unenforceable promise.  Simply put,

the Plaintiff was not a victim of sex trafficking.

First, there are no allegations that "traffickers lured [Plaintiff] into their network by false

promises" of a job.  Instead, without the involvement of any of the Defendants, Plaintiff traveled

to the United States on her own volition.  She then voluntarily associated herself with the

Defendants and engaged in sexual activity with Epstein because, according to her, she was given

an Upper East Side lifestyle and she perceived that Epstein could provide her with some

advantage in gaining entrance to an institution of higher learning. These factual allegations do

not demonstrate that she was a victim, much less a victim of sex trafficking requiring the

protection of Section 1591, a criminal statute.

Second, to the extent that the Plaintiff alleges that Epstein made promises to her that were

not fulfilled in a timeframe that Plaintiff expected or wanted (no matter how unreasonable), these

sorts of issues are a matter for resolution between these two adults who allegedly entered into an

adult relationship.   When enacting Section 1591, Congress did not evidence any intention to legislate the private relationship between two consenting adults.

In short, Plaintiff's voluntary relationship with Epstein, which she allegedly entered into so as to gain advantage for herself, was not one to which Section 1591 was ever designed to apply.

## 2.   **The FAC Fails to Plead Fraud**

Plaintiff's claim that the Defendants used "fraud" to cause her to engage in a commercial sex act does not satisfy the pleading requirements for claims sounding in fraud.

### a)   The FAC Fails to Satisfy Rule 9(b)

Plaintiff bases her Section 1595 claim on the Defendants' supposed fraudulent statements and, as a result, the heightened pleading standards set forth in Fed. R. Civ. P 9(b) apply.  As the Second Circuit has explained, where a claim is based on predicate acts involving fraud, the plaintiff must state the fraud with particularity pursuant to Rule 9(b).  *Cohen v. SAC Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013) (Rule 9(b) "standard also applies to allegations of fraudulent predicate acts supporting a RICO claim").

As the Second Circuit explained this standard:

> Rule 9(b) requires that, in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. To satisfy the pleading requirements of Rule 9(b), a complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. …
>
> [A]lthough Rule 9(b) permits knowledge to be averred generally, we have repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent.  Essentially, while Rule 9(b) permits scienter to be demonstrated by inference, this must not be mistaken for license to base claims of fraud on speculation and conclusory allegations. An ample factual basis must be supplied to support the charges.

8

*Wood v. Research Applied Associates*, 328 F. App'x. 744, 747 (2d Cir. 2009) (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir.1991)).

The fraud allegations in the FAC simply do not meet this pleading standard. Indeed, they are premised on the implausible theory that Plaintiff, an apparently educated and sophisticated adult, met complete strangers and was duped into an agreement to engage in commercial sex with one of them by vague promises of admission to FIT. In her own words, Plaintiff's allegations of fraud boil down to this: Epstein allegedly "confirmed to Plaintiff that he would use his wealth and influence" to have Plaintiff admitted into the FIT and to advance her career, but had no intention of doing so. FAC ¶¶ 38, 53, 58-64. Indeed, the FAC only alleges that Epstein "confirmed" this representation, and that Groff "confirmed and reiterated this promise to Plaintiff many times." FAC ¶¶ 38, 53.

These allegations do not satisfy Rule 9(b) because they fail to adequately specify when and where the allegedly fraudulent statements were made, how (if at all) the alleged statements were fraudulent, and that these statements were made with the requisite intent to defraud. First, the FAC fails to allege with particularity "where and when" the allegedly fraudulent statements were supposedly made. For example, there is no allegation as to when Epstein supposedly made his promise about FIT or where he made this promise. FAC ¶ 38. The assertion against Groff is equally bare. Instead of providing particulars, the FAC merely states that Groff supposedly "repeated and confirmed" Epstein's promise sometime during the period between "October 2006 and May 2007." *Id*. The bald assertion that Groff "told" Plaintiff that "Epstein would advance Plaintiff's education" is bereft of any details as to when this happened, where they were, or the circumstances as to why and how Plaintiff would even speak with Groff, a stranger to her, regarding Epstein's alleged promises of an FIT education and career advancement. FAC ¶ 53.

The FAC falls short of the basic fairness requirement, since Defendants are entitled to know when and where they supposedly made fraudulent statements, especially given that Plaintiff's claim is based on events that occurred over ten years ago.

Second, the FAC fails to show how the alleged promises about Plaintiff's prospects for admission to FIT, if made at all, were fraudulent.  The FAC merely states in conclusory terms that the statements were "knowingly false" and "not acted upon."  FAC ¶ 53.  However, there are no factual allegations to support the assertion that the statements were false when made. Plaintiff's allegations that the Defendants did not act on the alleged promises about FIT are insufficient to show that the representations were false when made.  *Greenberg v. Chrust*, 198 F. Supp. 2d 578, 583 (S.D.N.Y. 2002) ("failure to fulfill a promise to perform future acts is not grounds for a fraud action").

Finally, the FAC fails to provide any factual basis, let alone an "ample factual basis," that would give rise to the "strong inference of fraudulent intent" required to plead a fraud claim in satisfaction of Rule 9(b).  *Wood*, 328 F. App'x at 747; *O'Brien*, 936 F.2d at 676.  The allegation that Epstein had no intention of following through on his alleged promises to assist Plaintiff in gaining admission to FIT or her career advancement is merely conclusory, and does not satisfy the requirements of Rule 9(b).  *Greenberg*, 198 F.Supp.2d at 583 ("fraudulent intent cannot be inferred merely from the non-performance of a party's representations").

Indeed, Plaintiff has alleged no facts to support the contention that Epstein did not perform as he allegedly promised.  To the contrary, the factual allegations state that Epstein promised -- and provided -- generous support to Plaintiff, including "living quarters at 301 East 66th Street" on the Upper East Side of Manhattan, "a car service for Plaintiff to use as needed" and a "cell phone."  FAC ¶ 52.  The FAC further alleged that Epstein encouraged Plaintiff to fill

out an admission application to FIT.  FAC ¶ 59.  These specific factual allegations are wholly inconsistent with Plaintiff's conclusory assertion that Epstein had no intention of helping Plaintiff to gain admission to FIT.  Accepting the "factual" allegations as true, they tend to demonstrate that Epstein provided the promised benefits to her, and was working with Plaintiff to gain admission to FIT.  There is no factual assertion that demonstrates any prior intention of Epstein to withhold support in the specific areas of Plaintiff's education or career advancement.

The FAC provides no particulars as to any timeframe in which Plaintiff was to be admitted to FIT.  Nor does it provide any particulars as to whether and when Plaintiff submitted her application necessary for admission.  Thus, even if Plaintiff was not admitted to attend FIT by the time she left the United States in May 2007, it does not demonstrate that Epstein did not help.  It simply means that Plaintiff failed to gain admission before she left.  In sum, the FAC fails to allege facts sufficient to infer that Epstein would not follow through on the alleged promises of assistance regarding Plaintiff's admission to FIT.

As to Groff, there is no factual allegation of fraudulent intent at all or that Groff knew that Plaintiff was engaged in a sexual relationship with Epstein in exchange for the alleged promises.  In sum, the FAC fails to meet the pleading standards required under Rule 9(b) with respect to every element required to establish that Epstein and Groff committed a fraud, and should therefore be dismissed.

   b)  The FAC Fails for Lack of Reasonable Reliance

In order to state a claim sounding in fraud, among other things, a plaintiff must also plead facts to establish that she reasonably relied on the alleged misrepresentations.  *Crigger v. Fahnstock & Co., Inc.*, 443 F.3d 230, 234 (2d Cir. 2006).  The FAC does not meet this basic requirement.  It merely states in conclusory terms that "Plaintiff reasonably relied" on the alleged misrepresentations (FAC ¶ 53) without providing any factual support for this conclusion.  To the

contrary, the allegations in the FAC support just the opposite conclusion.  According to the FAC, at the time the statement was made about Plaintiff's prospects for admission to FIT, the Plaintiff barely knew Epstein – she had only just met Epstein through yet another person whom she barely knew.  FAC ¶¶ 36, 38.  That such a stranger would offer to "use his wealth and influence to have Plaintiff admitted to" FIT or a similar institution in exchange for sexual favors would cause any reasonable person, especially under the circumstances alleged in the FAC, to question, rather than rely on, such a promise.

The vagueness of the promise, including that there was no timeframe as to when the promised admission to FIT was to occur, should also have caused an educated and worldly person such as Plaintiff to cast further doubt on the alleged promise, instead of relying on it wholesale as alleged here.

Moreover, the FAC fails to allege facts from which the Plaintiff might have reasonably concluded that Epstein had the ability "to have Plaintiff admitted to" FIT and that her admittance was a "done deal."  FAC ¶¶ 38, 59.  For example, the FAC fails to allege that Epstein was associated in any way with FIT, rather asserting that he merely "had contacts at FIT."  FAC ¶ 60. Such bare allegations are insufficient.  *Ashland Inc. v. Morgan Stanley & Co.*, 652 F.3d 333, 338 (2d Cir. 2011) (dismissing complaint where plaintiff could not have reasonably relied on defendant); *Schlaifer Nance & Co. v. Estate of Andy Warhol*, 119 F.3d 91, 98 (2d Cir. 1997) ("circumstances may be so suspicious as to suggest to a reasonably prudent plaintiff that the defendant's representations may be false, and that the plaintiff cannot reasonably rely on those representations").

In sum, the FAC contains no allegations concerning any diligence or investigation by Plaintiff into the credibility of any of the statements supposedly made to her.  Instead, she alleges

12

that she trusted wholesale any and all statements told to her by complete strangers in a foreign country, and contends on that basis she reasonably relied on their promises of a guaranteed education at a particular institution and a successful career.  Plaintiff's allegation of reliance, let alone reasonable reliance, is simply implausible.

c)   The FAC Impermissibly Lumps All Defendants Together

The FAC also engages in rampant "group pleading."  It repeatedly attributes the same conduct and/or statement to all or multiple defendants without identifying which individual defendant engaged in the alleged conduct or made the alleged statement.  Such group-pleading does not satisfy the basic requirement of Rule 8 that a complaint must provide "specification as to the particular activities by any particular defendant." *Am. Sales Co., Inc. v. AstraZeneca AB*, No. 10 Civ. 6062, 2011 WL 1465786, at *5 (S.D.N.Y. Apr. 14, 2011); *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (dismissing complaint because plaintiff "lump[ed] all the defendants together and provided[ed] no factual basis to distinguish their conduct").

Defendants in their Deficiency Letter advised Plaintiff of this defect.  In response, Plaintiff simply inserted the phrase "each of" before the word "defendants" as if that would cure the defect and somehow better identify the conduct of the different defendants.  See FAC ¶¶ 38, 52, 53, 61, 63 and a comparison of these same paragraphs as set forth in the Complaint.  Exh. E.

A small sampling of the allegations of the FAC which repeatedly and impermissibly lump all Defendants together amply demonstrates the insurmountable defects in the FAC.  First, the FAC alleges that "Defendants recruited Plaintiff into their sexual enterprise," without identifying which defendant was involved in the alleged recruitment and what individual action each defendant allegedly took.  FAC ¶¶ 34.  Second, the FAC alleges that "Defendants sent Plaintiff … to South Africa to recruit" without specifying which defendant supposedly "sent" Plaintiff.  FAC ¶ 55.  Third, the FAC alleges that "Defendants Maxwell, Kellen and Groff each

13

also confirmed and reiterated this promise to Plaintiff many times," but without specifying which of these defendants actually did so or where and when each of the defendants made the alleged statements.   FAC ¶ 38.   Fourth, the FAC alleges that the "Defendants[] telling Plaintiff that Epstein would use his connections to have her admitted to FIT," but again without specifying which defendant did the "telling" or where and when that occurred.  FAC ¶ 40.  Fifth, the FAC alleges that "in addition to their requiring Plaintiff to provide Defendant Epstein with sex acts, each of the Defendants continued to pressure her to lose excessive amounts of body weight and offered her no opportunity to decline or resist their instructions."  FAC ¶ 63.  Yet, the FAC does not identify which defendants allegedly "required" Plaintiff to provide sex acts, "pressure[d]" her to lose excessive weight, or offered Plaintiff no opportunity to decline or resist these alleged demands.

By engaging in this pattern of improper group pleading, the FAC fails to state a legally sufficient claim against any one of the Defendants.

### 3.   The FAC Fails to Plead Coercion

The FAC fails to allege that the Defendants used "coercion" to cause the Plaintiff to engage in a commercial sex act.  The statute defines coercion to include the following conduct:

(A)   threats of serious harm to or physical restraint against any person;

(B)   any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or

(C)   the abuse or threatened abuse of law or the legal process.

18 U.S.C. § 1591(e)(2).  The FAC simply fails to provide factual allegations to support any of these three definitions of coercion.

First, the allegations of coercion in the FAC are not specific and are wholly conclusory. *See, e.g.*, FAC ¶ 48.  The FAC does not allege a single specific factual instance where Epstein or Groff made a "threat[] of serious harm to or physical restraint against" the Plaintiff.  Indeed, the

FAC speaks of only one occasion where Plaintiff allegedly suffered unspecified "verbal abuse and threats" and, as a result, "attempted to escape from Defendant Epstein's private island." FAC ¶ 49. This single allegation taken as true does not establish that Plaintiff was subject to a threat of serious harm. The fact that the Plaintiff was allegedly "returned" to the house on the island does not demonstrate that she was subject to "physical restraint" and there is nothing alleged in the FAC that demonstrates that this isolated incident had anything to do with whatever sexual activity Plaintiff claims she engaged in with Epstein.

Second, the FAC fails to establish that there was a "scheme, plan, or pattern" to cause Plaintiff to believe that she would be seriously harmed or restrained. Indeed, the FAC is devoid of factual allegations concerning threats of physical harm, as discussed above. And, with respect to physical restraint, the FAC alleges that Plaintiff traveled freely within the United States and abroad, and was provided with living quarters of her own on the Upper East Side of Manhattan as well as a car service and cellphone. FAC ¶¶ 45, 52, 55, 64.

Plaintiff has not provided any factual allegations that any of the defendants held her immigration documents in order to prevent her movement, prevented her from traveling, or had any power to affect her ability to travel to or from the United States. To the contrary, the FAC alleges that she traveled to and from the United States as she wished. She admits that she freely "refused to perform the recruitment assignment" allegedly "demanded" by Epstein to find young females to serve in "sexual servitude" while she was in South Africa. FAC ¶ 56. Yet, she was able to come back to the United States.

Third, a withdrawal of support to gain admission to FIT or career advancement, or refusal to provide living quarters on the Upper East Side or a car service, does not constitute "threats of serious harm." A withdrawal of such support would simply mean that Plaintiff would no longer

have the desired lifestyle or assistance for potential educational or career advancement, as to which she had neither a legal right nor moral claim to obtain from Epstein.

Similarly, the supposed threat by Maxwell and Epstein that "they had the ability to make sure that Plaintiff would not obtain formal education or modeling agency contracts if she failed to provide sexual favors" is no threat at all.  FAC ¶ 41.  Plaintiff is not alleged to be a gullible person with diminished capacity, uneducated, or inexperienced socially.  It is implausible for Plaintiff or any other reasonable person to perceive this as a realistic threat or to believe that defendants had such omnipotent ability.  The pleading standard is not lowered simply because Epstein is alleged to be "rich and powerful."

Fourth, the FAC offers no factual support that the Defendants engaged in any "abuse or threatened abuse of the law or legal process" required by the statute.

### 4.  **The FAC Fails to Plead a Causal Link**

The FAC fails to plead that the Defendants' alleged fraudulent and coercive conduct "caused" the Plaintiff to engage in a commercial sex act, as required under Section 1591.  *United States v. Marcus*, 487 F. Supp. 2d 289, 306-07 (E.D.N.Y. 2007), *rev'd on other grounds*, 538 F.3d 97 (2d Cir. 2008) (a violation of Section 1591 requires that a "commercial sex act … be a product of force, fraud or coercion.").

Indeed, the FAC should be fairly read to evidence that the Plaintiff, then an adult woman, sought and engaged in a consensual sexual relationship with Epstein, an unmarried adult man, on her own accord.  Her allegations of receiving financial support amount to nothing more than the claims of an adult girlfriend who received financial support from someone with whom she was in a romantic relationship.  When she became dissatisfied with that relationship and decided to terminate it, as would be expected of any similar relationship, the financial support she received based on that relationship terminated as well.  Whatever unfulfilled promises about an education

16

at FIT and unwelcome criticism of her appearance that Plaintiff claims to have experienced, the FAC makes clear that her sexual acts were not the product of those two events.

Finally, the sex acts alleged in the FAC are not "commercial sex" acts, much less sex acts in violation of Section 1591, a criminal statute.  If they were, a significant percentage of the population likely would have unwittingly engaged in commercial sex and committed a crime in violation of the statute.  As demonstrated in Point C.1. above, the kind of relationship between Plaintiff and Epstein alleged here does not violate the anti-trafficking statute.  No crime was committed here.

### 5.  The FAC Fails To Allege Knowledge Against Groff

The FAC fails to allege facts which establish that Groff engaged in any conduct "knowing that force, fraud, or coercion … will be used to cause [the Plaintiff] to engage in a commercial sex act," as required in Section 1591.  Here, there are no specific factual allegations showing that Groff knew that the Plaintiff was engaged in a sexual relationship with Epstein, much less that Groff knew that Plaintiff was engaged in commercial sex caused by fraud or coercion.  At best, the allegations show that Groff performed legitimate secretarial functions such as making travel arrangements.  FAC ¶ 51.

Plaintiff's conclusion in the FAC that Groff had knowledge is without factual support, and merely parrots the statutory language.  FAC ¶ 40 ("knew", "knowingly").  There are simply no facts to show Groff knew of the alleged private relationship between Plaintiff and Epstein or that Epstein did not intend to fulfill his alleged promises.  The conclusory allegations against Groff are insufficient to show that she had the "knowledge" as required under Section 1591.

### 6.  The FAC Fails to Allege Any Predicate Acts

Plaintiff's principal response to the Deficiency Letter (which Plaintiff appears to have largely ignored during her preparation of the FAC) was to add to the FAC other supposed

17

criminal violations which Plaintiff now asserts support her Section 1595 claim.  None of these new allegations tip the scale; the FAC is still insufficiently drafted as a matter of law.

a)  The FAC Fails to State a Violation of Section 1592

Plaintiff added a claimed violation of 18 U.S.C. § 1592 and alleges that the defendants "concealed, removed, confiscated, and possessed Plaintiff's passport and associated immigration documents."  FAC ¶ 69.  Plaintiff alleges that this occurred in the course of violating Section 1591, and that it occurred "to prevent, restrict, attempt to restrict without lawful authority, Plaintiff's liberty to move or travel, in order to maintain the sexual services of Plaintiff, while Plaintiff was a victim of a severe form of sex trafficking."  *Id.*

This claim is utterly without factual support and without merit.  First, as described, above, the FAC simply fails to establish a violation of Section 1591.  Second, the FAC is utterly devoid of facts supporting the notion that the defendants ever held her passport against her will. The FAC acknowledges that she traveled to and from South Africa on her own schedule without interference or control by the Defendants.  Third, there is no factual allegation supporting the requisite statutory element that her passport was withheld in order to force her into commercial sex.  Notably, and as to Groff, the FAC does not even mention that Groff played any role involving her passports.

b)  The FAC Fails to State a Violation of Section 1593A

Plaintiff also added a claimed criminal violation of 18 U.S.C. 1593A as a basis for a Section 1595 claim.  FAC ¶ 70.  This statute, however, was enacted in December 2008, after the events alleged in the FAC had occurred.  It therefore has no application here.  *Velez v. Sanchez*, 693 F.3d 308, 325 (2d Cir. 2012) ("there is a well-established presumption against the retroactive application of legislation, including amendments creating a private cause of action").  In any event, the FAC fails to allege facts constituting a violation section 1593A, which criminalizes

18

those who knowingly participate in or benefit from a venture in contravention of Section 1592 and 1595. Because the FAC fails to state a violation of Sections 1592 and 1595, as demonstrated above, there cannot be a violation of Section 1593A.

      c)  <u>The FAC Fails to State a Violation of Sections 1594(a)-(c)</u>

      In a failed attempt to provide another basis for a Section 1595 claim, Plaintiff also asserts that Defendants committed a crime in violation of 18 U.S.C. 1594(a)-(c). As of the time during the events in question, section 1594(a) criminalized any "attempt" to violate Section 1591, and Sections 1594(b) and (c) specified the relevant punishments for violations of various related statutes. For the reasons that the FAC fails to state a violation of Section 1591, and indeed any violation of the anti-trafficking statutes, Plaintiff has failed to state a violation of Section 1594(a). Plaintiff does not allege an unsuccessful violation of the anti-trafficking statutes. She alleges instead, albeit insufficiently and in conclusory fashion only, that Defendants succeeded in making her a victim of the crime of sex trafficking. Moreover, the FAC has failed to allege the requisite elements necessary to establish an attempted crime. *U.S. v. Farhane*, 634 F.3d 127, 145 (2d Cir. 2011) ("attempt requires proof that a defendant (a) had the intent to commit the object crime and (b) engaged in conduct amounting to a substantial step towards its commission"); *Stein v. World-Wide Plumbing Supply Inc.*, 71 F. Supp. 3d 320, 330 (E.D.N.Y. 2014) ("a claim of attempt requires plaintiff to allege that defendants had the intent to commit the underlying crime"). Here, there are no factual allegations in the FAC to support the contention that Defendants intended to violate the anti-trafficking statutes and, as demonstrated above, Defendants did not take steps, let alone substantial steps, to violate the anti-trafficking statutes.

                 *        *        *

The FAC therefore fails to plead a predicate violation under these statutes.  Moreover, as discussed in Point C.1. above, the anti-trafficking statutes were not enacted to address the consensual adult relationship alleged here between Plaintiff and Epstein.

**D.      The FAC Fails to Meet the *Twombly/Iqbal* Standard**

The FAC not only fails to meet the stringent pleading standards applicable to fraud based claims, it also fails to meet the basic pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).  Under these two decisions, as explained and applied by the Second Circuit:

> [A] complaint must contain sufficient factual matter, accepted as true, to
> state a claim to relief that is plausible on its face. … Where a complaint
> pleads facts that are merely consistent with a defendant's liability, it stops
> short of the line between possibility and plausibility ....

*Wood*, 328 F. App'x. at 746-747 (quoting *Iqbal*, 129 S. Ct. at 1949).  Here, at best, the FAC merely parrots the statutory elements of a Section 1595 claim regarding fraud and coercion without specifically alleging the factual basis for those elements.  The FAC, taken as a whole, does not plead a plausible claim that Plaintiff was a victim of sex trafficking in violation of criminal statutes entitling her to civil relief pursuant to Section 1595.  Instead, the FAC presents the Plaintiff as a consenting adult engaged in a voluntary relationship which provided the Plaintiff with a remarkably comfortable lifestyle and the prospects of help with her FIT application.  This is hardly the sort of relationship that the sex trafficking statute was designed to address.

The FAC should therefore be dismissed with prejudice for failing to meet the plausibility standard under *Twombly* and *Iqbal*, even in her second attempt to do so.

E.     **The Claim Is Barred by the Statute of Limitations**

Plaintiff's claim is time-barred under either (a) the four-year statute of limitations applicable to claims that arose before the 2008 statutory amendment that extended the limitations period to ten years or (b) even the current ten-year statute of limitations period.

Plaintiff's claim is barred by the four-year statute of limitations. According to the FAC, the conduct giving rise to the claim allegedly occurred between October 2006 and April 2007, and Plaintiff "left the United States" in May 2007 and "did not return." FAC ¶¶ 34, 64. This action was not commenced until January 26, 2017, more than four years after any of the events alleged in the FAC occurred. Plaintiff's claim is therefore time-barred. *Abarca v. Little*, 54 F. Supp. 3d 1064, 1068 (D. Minn. 2014). As the Court stated in *Abarca,* a claim under Section 1595 had a four-year of statute of limitations when originally enacted. The statute was amended in December 2008 and the limitations period was extended to ten years. *Id.* However, "Congress did not expressly state or otherwise indicate that the [statute's] limitations period applies retroactively." *Id.* The plaintiff in *Abarca*, like Plaintiff here, filed the Section 1595 claim after the statute was amended to provide for a ten-year statute of limitations. Applying the presumption against retroactive legislation, the Court in *Abarca* determined that the ten-year statute of limitation did not apply because the alleged wrongful conduct occurred before the statute of limitations was amended. *Id.* at 1069. The Court therefore applied the four-year statute of limitations and dismissed the Section 1595 claim because it was filed more than four years after the alleged wrongful acts. *Id.*[1]

---

[1]  B*ut see Oluch v. Orina*, 101 F. Supp. 3d 325, 330 (S.D.N.Y. 2015) (applying a ten-year statute of limitations)*.*

Here, all events alleged in the FAC ended in 2007, before the 2008 amendment extending the limitations period from four to ten years was enacted.  As a result, the four-year statute of limitations applies.  Plaintiff's claim, filed in January 2017 and more than four years after the events described in the FAC, is time-barred.

Even if the ten year statute of limitations applies, Plaintiff's claim is still time-barred. Plaintiff admits that when she returned home to South Africa in January 2007, she believed that the Defendants were engaged in illegal conduct, were victimizing women and could no longer be trusted.  For example, in the FAC Plaintiff alleges that she "knew" she was being asked to recruit "female models" from South Africa who would not be placed in legitimate positions, but would instead "be forced into sexual servitude."  FAC ¶ 56; *see also*, Cplt. ¶ 51.  Clearly, by January 2007, Plaintiff could no longer claim to be relying on Defendants' representations about, for example, gaining admission to FIT, because, according to her own allegations, she did not believe what she was being told by the Defendants.  She was also free and safe with her father and in her own country.  FAC ¶ 55.  As plainly demonstrated by Plaintiff's deliberate refusal to comply with Defendants' alleged recruitment request, FAC ¶ 56, and her subsequent unimpeded return to New York in February 2007, Plaintiff was then under no compulsion to follow orders and no longer did so.  Thus, based on Plaintiff's own allegations in the FAC, any arguable fraud or coercion terminated in January 2007, and the statute of limitation began to run no later than that time.  *Oluch v. Orina*, 101 F. Supp. 3d 325, 330 (S.D.N.Y. 2015) (Section 1595 claim accrued when plaintiff first left defendant's home); *Abarca*, 54 F. Supp. 3d at 1070 (Section 1595 claim accrued when plaintiff traveled home to Mexico and had "physical freedom"). Because Plaintiff's claim admittedly turns on whether she was defrauded or coerced, the statute

of limitations period expired before this action was filed on January 26, 2017, more than ten years after she left New York in January 2007.

Since Plaintiff's claim accrued no later than January 2007, and as early as late 2006, the allegations concerning the period subsequent to her returns to the United States are irrelevant. To the extent that those events could be considered, the assertions that Defendants defrauded her or coerced Plaintiff into commercial sex when she returned to the United States in February 2007 are wholly insufficient as a matter of law. She merely alleges, again without providing specific facts, that Defendants wanted her to continue the prior relationship and "continue[d] to repeatedly make false representations . . . that she would be admitted to FIT." FAC ¶¶ 61, 64. But Plaintiff concedes, however, that before hearing these "false representations" she had already concluded that Epstein could not be trusted at all. Based on these facts, Plaintiff cannot establish that she reasonably relied on anything she was told by the Defendants after she returned to New York in February 2007.

She has not alleged any continued association with Defendants. For example, she does not allege that she continued to live in the apartment provided by Epstein or whether she had established new relationships or moved in with someone completely unrelated to Defendants. She also does not allege the reasons for or purposes of her return to New York from her home country. The purposeful absence of these factual allegations renders her claim that she was subject to fraud and fraud utterly baseless.

F.    <u>The Court Does Not Have Jurisdiction Over Defendants</u>

Other than an alleged ownership of real estate in New York by Epstein, the FAC alleges no present connection of the Defendants to New York. As a result, personal jurisdiction over the Defendants would have to be based on tortious conduct allegedly committed in New York. CPLR 302(a)(2). As explained below, however, there are insufficient allegations of

tortious conduct during the limitations period upon which Plaintiff can base personal jurisdiction, even if the ten year limitations period were to apply, which Defendants maintain it does not.

Because this action was filed on January 26, 2017, all of the conduct alleged to have occurred before February 2007 falls outside of the ten year limitations period. The FAC does not allege conduct after Plaintiff left for South Africa in January 2007 that is sufficient to state a claim under Section 1595. The allegations in the FAC concerning this period merely track the statutory language but without providing the necessary factual support. The FAC, therefore, fails to establish that the Court has personal jurisdiction over Epstein and Groff.

**G.      Venue Is Improperly Laid in the Southern District of New York**

For the same reasons that the Court lacks personal jurisdiction over the Defendants, the Southern District of New York is not the proper venue for this action. The applicable venue statute, 28 U.S.C. § 1391(b)(2), requires that "a substantial part of the event or omission giving rise to the claim occurred" within the Southern District of New York. This fundamental element is not met here. The conduct alleged occurred outside of the statute of limitations period and cannot form the basis of either a claim or venue.

## CONCLUSION

For all of the reasons set forth, this action should be dismissed with prejudice.

Dated: November 21, 2017

Respectfully submitted,

By: _____

Michael C. Miller
Justin Y.K. Chu
Michael A. Keough
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900
mmiller@steptoe.com
jchu@steptoe.com

*Attorneys for Defendants*
Jeffrey Epstein & Lesley Groff

25