**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT NEW YORK**
--------------------------------------------------------x

JANE DOE 43,

                                        17-cv-00616-JGK

                Plaintiff,

vs.

JEFFREY EPSTEIN, GHISLAINE
MAXWELL, SARAH KELLEN, LESLEY
GROFF, AND NATALYA MALYSHEV,

                Defendant.

--------------------------------------------------------x


## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT SARAH KELLEN'S MOTION TO DISMISS

John E. Stephenson, Jr.
 (*admitted pro hac vice*)
Jonathan D. Parente
 (*pro hac vice forthcoming*)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia  30309
(404) 881-7000
john.stephenson@alston.com
jonathan.parente@alston.com

Alexander S. Lorenzo
ALSTON & BIRD LLP
90 Park Avenue
New York, New York  10016
(212) 210-9400
alexander.lorenzo@alston.com

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 1

APPLICABLE LAW ........................................................................................................... 4

ARGUMENT ....................................................................................................................... 5

I.      Plaintiff has failed to state a claim that Ms. Kellen violated Section 1591. ........... 5

        A.      The Act does not cover the type of consenting-adult relationship alleged. ................................................................................................. 6

        B.      The Amended Complaint fails to meet the *Twombly*/*Iqbal* pleading standards. ................................................................................................. 7

        C.      Plaintiff cannot plausibly allege that Ms. Kellen had the requisite knowledge under Section 1591. ............................................................. 10

II.     The Amended Complaint does not state a Section 1592 claim. .......................... 14

III.    The claims against Ms. Kellen are all time-barred. ............................................. 15

IV.    This Court is not a proper forum for Plaintiff's action. ....................................... 17

CONCLUSION ................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Abarca v. Little,
    54 F.Supp.3d 1064 (D. Minn. 2014) .................................................................16, 17

Am. Sales Co. v. AstraZeneca AB,
    No. 10 Civ. 6062, 2011 WL 1465786 (S.D.N.Y. Apr. 14, 2011) ................................8

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ............................................................................................ passim

Atuahene v. City of Hartford,
    10 F. App'x 33 (2d Cir. 2001) .......................................................................................9

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007) ...............................................................................................4, 13

See Allison v. Round Table Inv. Mgmt. Co., LP,
    447 F. App'x 274 (2d Cir. 2012) ...................................................................................1

Elias v. City of New York,
    No. 10–CV–5495, 2010 WL 5475809 (E.D.N.Y. Dec. 30, 2010) ................................9

Greenberg v. Christ,
    198 F.Supp.2d 578 (S.D.N.Y. 2002) ..........................................................................12

Harris v. Mills,
    572 F.3d 66 (2d Cir. 2009) ............................................................................................5

Kelsey v. Goldstar Estate Buyers Corp.,
    No. 3:13-CV-00354-HU, 2014 WL 1155253 (D. Or. Mar. 21, 2014) ..........................8

Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.,
    No. 10-CV-4124, 2013 WL 6816174 (W.D. Ark. Dec. 24, 2013) ..............................14

Lentell v. Merrill Lynch & Co.,
    396 F.3d 161 (2d Cir. 2005) ..........................................................................................4

Lunkes v. Yannai,
    882 F. Supp. 2d 545 (S.D.N.Y. 2012) ..........................................................................7

Martin v. City of New York,
    No. 07 Civ. 7834, 2008 WL 1826483 (S.D.N.Y. Apr. 23, 2008) ..................................9

*O & G Carriers, Inc. v. Smith*,
    799 F. Supp. 1528 (S.D.N.Y. 1992)........................................................8

*Oluch v. Orina*,
    101 F.Supp.3d 325 (S.D.N.Y. 2015)..............................................16, 17

*Rosner v. Bank of China*,
    No. 06 CV 13562, 2008 WL 5416380 (S.D.N.Y. Dec. 18, 2008)............10

*San Leandro Emergency Med. Grp. v. Philip Morris Co.*,
    75 F.3d 801 (2d Cir. 1996)..........................................................10

*St. Louis v. Perlitz*,
    No. 3:13-CV-1132, 2016 WL 1408076 (D. Conn. Apr. 8, 2016).................5

*United States v. Corley*,
    No. 14-1709, 2017 WL 549021 (2d Cir. Feb. 9, 2017) .............................7

*United States v. Martinez*,
    621 F.3d 101 (2d Cir. 2010)..........................................................7

*United States v. Todd*,
    627 F.3d 329 (9th Cir. 2010) .......................................................14

*Velez v. Sanchez*,
    693 F.3d 308 (2d Cir. 2012)........................................................15

*Weinstein Co. v. Smokewood Entm't Grp.*,
    664 F. Supp. 2d 332 (S.D.N.Y. 2009)..............................................8

*Wood ex rel. U.S. v. Applied Research Assocs., Inc.*,
    328 F. App'x 744 (2d Cir. 2009) ...................................................11

**RULES**

Fed. R. Civ. P. 8.................................................................................8

Fed. R. Civ. P. 9(b) ...........................................................................11

Fed. R. Civ. P. 12(b)(6)........................................................................4

Fed. R. Civ. P. 12(f)............................................................................3

**STATUTES**

Victims of Trafficking and Violence Protection Act of 2000,
    18 U.S.C. § 1591, *et seq.*........................................................ passim

18 U.S.C. § 1591 ............................................................................ passim

18 U.S.C. § 1592 ....................................................................................................14

18 U.S.C. § 1593A ................................................................................................15

18 U.S.C. § 1594 ....................................................................................................14

18 U.S.C. § 1595 ................................................................................................5, 16

**OTHER AUTHORITIES**

H.R. Conf. Rep. 106-939 (2000)..............................................................................6

## INTRODUCTION

The Amended Complaint represents Plaintiff's second (unsuccessful) attempt to state a claim that Sarah Kellen—Jeffrey Epstein's personal assistant—violated federal sex-trafficking laws. As contemplated by the Court's directives, Kellen sent a pre-motion letter that identified and discussed the initial Complaint's fatal flaws. Plaintiff responded with her Amended Complaint, presumably in an effort to cure its shortcomings. But the Amended Complaint remains legally deficient—failing for all the same reasons as the initial Complaint.

Among other problems, the Amended Complaint's allegations (i) stem from a consensual, adult relationship that is beyond the scope of the Victims of Trafficking and Violence Protection Act, 18 U.S.C. § 1591, *et seq.*, (ii) are insufficient to state a claim against Kellen personally because, among other defects, they fail to plausibly allege that Kellen had the requisite actual knowledge for a statutory violation, (iii) highlight that any theoretical claim that Plaintiff might have otherwise had is barred by the applicable statute of limitations, and (iv) reveal that this Court is not the proper forum. Plaintiff has no legally viable claim, and especially no claim against Kellen. Having failed twice to state a claim, the case against Kellen must be dismissed.

## BACKGROUND[1]

In October 2006, Plaintiff met Defendant Jeffrey Epstein. (Am. Compl. ¶ 34.) Plaintiff was then an adult woman over the age of 18. There are no allegations that she was uneducated, inexperienced in the world, or had anything less than full mental capacity. Epstein was older than her—already in his mid-fifties. (*Id.* ¶ 11.) He was unmarried. And he was wealthy (a successful hedge-fund manager worth more than a billion dollars). (*Id.* ¶¶ 11, 60.)

---

[1] For purposes of this motion only, the factual allegations in the Amended Complaint are accepted as true. *See Allison v. Round Table Inv. Mgmt. Co., LP*, 447 F. App'x 274, 275 (2d Cir. 2012).

Soon after they met, the two entered into a consensual relationship. (Am. Compl. ¶ 43.) Epstein agreed to provide—and did provide—Plaintiff with a cell phone, a car service, and an apartment in the Upper East Side of Manhattan. (*Id.* ¶ 52.) They engaged in sexual acts "dozens of times" at his "townhouse in New York and on his private island in the U.S. Virgin Islands." (*Id.* ¶ 45.)

According to the Amended Complaint, Epstein "confirmed" to Plaintiff "that he would use his wealth and influence to have [her] admitted into the Fashion Institute of Technology (known as 'F.I.T.') in New York City or into a similar institute of higher learning offering a curriculum of fashion industry training." (Am. Compl. ¶ 38.) Other defendants, including some of Epstein's employees, allegedly "confirmed and reiterated this promise." (*Id.*) Plaintiff further claims that Epstein and Defendant Ghislaine Maxwell told her that "they also had the ability to make sure that she would obtain no formal education or modeling agency contract if she failed to provide the sexual favors desired." (*Id.* ¶ 41.)

In January 2007, Plaintiff left New York and flew to South Africa. (Am. Compl. ¶ 38.) That is where she is originally from (*id.* ¶ 3) and where her parents lived (*id.* ¶ 58). According to the allegations, Plaintiff was there on a "recruitment assignment" to find a South African model that Epstein could hire as an assistant, but she chose not to complete that assignment. (*Id.* ¶¶ 55-56.) By her own account, "based upon Plaintiff's experience," she "did not believe the requested model would be placed in a legitimate position of employment of Defendant Epstein." (*Id.* ¶ 56.)

In February 2007, Plaintiff nevertheless decided to return to New York. (Am. Compl. ¶ 61.) Epstein and Maxwell allegedly confirmed again their commitment to "help

Plaintiff be admitted to F.I.T. or a comparable college." (*Id.* ¶ 61.) But according to the Amended Complaint, they "failed and refused to perform" that promise. (*Id.* ¶ 62.) [2]

By May 2007, Plaintiff had once again left the United States—this time for good. (Am. Compl. ¶ 64.)

Nearly a decade later, on January 26, 2017, Plaintiff brought this lawsuit under the Victims of Trafficking and Violence Protection Act. (Dkt. No. 1.) Claiming that false promises "induce[d] and coerce[d]" her to have sex with Epstein, the Amended Complaint asserts human-trafficking claims against Epstein, Maxwell, and four other individuals. (Am. Compl. ¶ 68.) Among the named defendants is Epstein's former personal assistant Sarah Kellen. Kellen maintained Epstein's schedule and also handled various travel arrangements, which allegedly included flights for Plaintiff on commercial airlines and Epstein's private jet. (*Id.* ¶¶ 15, 51.) [3]

---

[2] To be sure, Plaintiff does not allege that she applied to F.I.T. (or a similar institute), that she was qualified for admission, or—if she did apply—that her application was denied.

[3] Kellen joins Defendants Epstein and Groff's request that paragraphs 11-33 of the Amended Complaint should be stricken under Rule 12(f). (*See* Dkt. No. 80, at pp. 3-4.) Those paragraphs assert scandalous, harassing, and immaterial allegations about unrelated proceedings, including Epstein's earlier guilty plea in Florida. The claims *there* involved events leading up to a 2005 criminal investigation in that State. By contrast, the allegations *here* took place in 2006 (not before 2005), relate to an adult relationship (no allegations about a minor), and occurred in New York and the Virgin Islands (not Florida). For these same reasons, Plaintiff's initial Complaint acknowledged that she did not claim to be a victim in connection with the Florida criminal proceedings. (*See, e.g.*, Dkt. No. 1, ¶ 29.)

On May 15, 2017, Kellen sent a pre-motion letter identifying the many deficiencies in the initial Complaint. (Declaration of John E. Stephenson, Exhibit A.) In response, on June 5, 2017, Plaintiff elected to file her Amended Complaint, which is the subject of this motion to dismiss.

## APPLICABLE LAW

### A. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). There must be more than the "mere possibility of misconduct (*Iqbal*, 556 U.S. at 679): The allegations must "nudge[] the[] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Courts will draw reasonable inferences in the plaintiff's favor but need not accept as true "conclusions of law or unwarranted deductions of fact." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 174-75 (2d Cir. 2005). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*

### B. The Victims of Trafficking and Violence Protection Act

The Victims of Trafficking and Violence Protection Act of 2000, 18 U.S.C. § 1591, *et seq.*, criminalizes certain activities related to an enterprise that engages in commercial sex trafficking

of children or deceived adults.  In particular, broken down into elements, the applicable version of

Section 1591(a)(1) declares that:

> **[1]** Whoever **[2]** knowingly -- **[3]** in or affecting interstate or foreign commerce . . ., **[4]** recruits, entices, harbors, transports, provides, or obtains by any means **[5]** a person; **[6]** knowing that **[7][a]** force, fraud, or coercion . . . will be used to cause the person to engage in a commercial sex act, or **[b]** that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, **[8]** shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a)(1) (2006).[4]

Section 1595 gives a sex-trafficking victim the right to bring a civil action against the

perpetrator who violated the Act's criminal provisions.  18 U.S.C. § 1595(a).

## ARGUMENT

**I.      Plaintiff has failed to state a claim that Ms. Kellen violated Section 1591.**

The sex-trafficking case against Kellen fails to state a claim, for at least three reasons:

First, the consensual, adult relationship at issue is outside the scope of conduct meant to be

regulated by the Victims of Trafficking and Violence Protection Act.  Second, the allegations fall

short measured against the *Twombly*/*Iqbal* pleading standards.  Third, Plaintiff cannot plausibly

allege that Kellen possessed the actual knowledge that would be required for a sex-trafficking

claim under Section 1591.

---

[4] Plaintiff's claims stem from alleged conduct in 2006 and 2007, so the statute in effect at that time governs the analysis here.  Applying later amendments to this statute impermissibly risks expanding defendants' liability for past conduct.  *See St. Louis v. Perlitz*, No. 3:13-CV-1132, 2016 WL 1408076, at *3 (D. Conn. Apr. 8, 2016).

**A.      The Act does not cover the type of consenting-adult relationship alleged.**

Plaintiff and Epstein, as consenting adults, voluntarily engaged in sexual activity. Their private relationship and the ultimate differences they encountered are beyond the aims of the Victims of Trafficking and Violence Protection Act—falling outside the scope of conduct that Congress intended to regulate and prohibit.

Kellen incorporates by reference—and expressly adopts—the arguments on this point from Defendants Epstein and Groff's November 21, 2017 Memorandum of Law. (*See* Dkt. No. 80, at pp. 6-8.) In short, Congress passed Section 1591 of the Act to "combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children." H.R. Conf. Rep. 106-939 (2000). It is about ending trafficking and forced commercial sex acts by women who were lured into the United States by means of fraud. *Id.*

That is not this case. Plaintiff already lived in New York City before she met Epstein, apparently having moved there for reasons completely unrelated to these Defendants. Plaintiff was not a victim "lured" into this Country by human traffickers. She voluntarily entered into a relationship with Epstein among other reasons because—in her estimation—it might bring the advantage of helping her get into college. There were other benefits, too: "living quarters . . . a car service for Plaintiff to use as needed; [and] a cell phone." Plaintiff was not "caused" to engage in commercial sex acts by way of "fraud." Her relationship with Epstein had the hallmarks of the not uncommon arrangement in which an older male offers support to a younger female companion. (Declaration of John E. Stephenson, Exhibit B.) That Epstein allegedly did not deliver on one

promise as quickly as Plaintiff might have preferred cannot turn this into a violation of federal sex-trafficking laws.[5]

## B.     The Amended Complaint fails to meet the *Twombly/Iqbal* pleading standards.

Plaintiff's purported claims do not meet the *Twombly/Iqbal* pleading requirements. The allegations lack necessary factual support and improperly lump all five Defendants together.

Focusing on the allegations that can be construed as directed at Kellen, many simply recite Section 1591's legal conclusions and statutory buzzwords. For instance, in Paragraph 51, the Amended Complaint appears to allege that Defendants Groff, Maxwell, and Kellen "worked in concert with one another to recruit, procure, entice, and otherwise cause many other females to engage in commercial sex acts, through their use of threats, fraud, and coercion." (Am. Compl. ¶ 51.) By way of further illustration, Paragraph 20—which should not have been included in the first place, and relates only to the criminal proceedings in Florida that, as Plaintiff admits, have no connection to her—asserts that "Defendants Epstein and Maxwell, with help from assistants,

---

[5] A survey of decisions involving the Victims of Trafficking and Violence Protection Act confirms that the allegations here bear little resemblance to the facts in those cases. *See, e.g.*, *United States v. Martinez*, 621 F.3d 101, 103 (2d Cir. 2010) (defendant "induced a fourteen-year old ninth-grader to work for him as a prostitute"; when "using two eighteen-year old girls as prostitutes," he "raped both of them" and "held them against their will and exploited their addiction to heroin"); *Lunkes v. Yannai*, 882 F. Supp. 2d 545 (S.D.N.Y. 2012) (defendant allegedly lured victims "using websites designed to match women seeking work as au pair with families in need of such workers" and "deceived them into illegally entering the United States, where he proceeded to effectively imprison them in his house, sexually abuse them, and demand unpaid domestic services"); *United States v. Corley*, No. 14-1709, 2017 WL 549021 (2d Cir. Feb. 9, 2017) (defendant recruited minors to work for him as prostitutes, advertising the victims online).

associates and underlings, recruited and procured hundreds of girls" and that "such recruitment and procurement included fraud, coercion, threats, intimidation, fear, the threat of coercion, and a combination of these and similar tactics." (*Id.* ¶ 20.) These assertions "do not allege facts": "They are simply a regurgitation of [Section 1591's] wording woven together with conclusory statements." *Kelsey v. Goldstar Estate Buyers Corp.*, No. 3:13-CV-00354-HU, 2014 WL 1155253, at *5-6 (D. Or. Mar. 21, 2014). Plaintiff's formulaic recitation of the elements— "[n]aked assertions devoid of further factual enhancement" (*Iqbal*, 556 U.S. at 678)—will not do. *See also Weinstein Co. v. Smokewood Entm't Grp.*, 664 F. Supp. 2d 332, 338 (S.D.N.Y. 2009) ("The tenet that a court must accept as true all of the allegations in a complaint is inapplicable to legal conclusions.") (quoting *Iqbal*).

At the same time, the Amended Complaint repeatedly and improperly lumps all Defendants together. Plaintiff alleges, for example, that "*Defendants* recruited Plaintiff into their sexual enterprise." (Am. Compl. ¶ 34.) Later, she alleges that "*Defendants* all participated in arranging for Plaintiff to be transported" (*id.* ¶ 45); "*Defendants* further used possession and control of Plaintiff's passport" (*id.* ¶ 49); and "*Defendants* provided living quarters for Plaintiff . . . a car service . . . a cell phone" (*id.* ¶ 52). Such group-pleading runs afoul of Rule 8, which requires "'specification' as to the particular activities by any particular defendant . . . ." *Am. Sales Co. v. AstraZeneca AB*, No. 10Civ.6062, 2011 WL 1465786, at *5 (S.D.N.Y. Apr. 14, 2011); *O & G Carriers, Inc. v. Smith,* 799 F. Supp. 1528, 1538 (S.D.N.Y.1992) (dismissing claims because of "repeated undifferentiated grouping of defendants so that it is impossible to tell what each individual defendant is accused of doing").

To survive a motion to dismiss, Plaintiff must "indicate clearly the defendants against whom relief is sought and the basis upon which the relief is sought against the particular

defendants." *Martin v. City of New York*, No. 07 Civ. 7834, 2008 WL 1826483, at *1 (S.D.N.Y. Apr. 23, 2008). But that did not happen. Instead, Plaintiff asserts allegations generally against *all* Defendants—betraying the pleading standard's purpose to put Kellen on notice as to the specific allegations she need defend against. *See Atuahene v. City of Hartford,* 10 F. App'x 33, 34 (2d Cir. 2001) (holding that allegations "failed to differentiate among the defendants, alleging instead violations by 'the defendants'"); *Elias v. City of New York,* No. 10–CV–5495, 2010 WL 5475809 (E.D.N.Y. Dec. 30, 2010) (plaintiff failed to give defendants fair notice of claims where complaint "attribute[d] discrimination, retaliation, and disparate treatment generally to 'Defendants'").

Plaintiff's lumping of Defendants is not only impermissible but also implausible. Taken literally, her allegations would claim that all five Defendants recruited Plaintiff to have sex with Epstein, and that each of the five then provided her an apartment, a driver, and a mobile phone. It does not make sense. Plus, some of the allegations that refer broadly to "Defendants" are later clarified and narrowed so as to specifically *exclude* Kellen. For instance, the Amended Complaint first states that "Defendants recruited Plaintiff" (Am. Compl. ¶ 34), but the next paragraph details how it was Defendant Natalya Malyshev that allegedly "approached and recruited Plaintiff." (*Id.* ¶ 35.) While Plaintiff's allegations suggest that the "Defendants inflicted serious emotional and psychological harm on Plaintiff as a means of coercing her to continue engaging in commercial sex acts" (*id.* ¶ 57), the surrounding lines elaborate that this portion of the Amended Complaint relates to only *some* of the Defendants—having nothing to do with alleged conduct by Kellen.

Plaintiff's allegations lack factual detail, state little more than legal conclusions, and impermissibly lump "Defendants" together. Because the Amended Complaint falls short under *Twombly/Iqbal*, Plaintiff has failed to state a claim.

**C.      Plaintiff cannot plausibly allege that Ms. Kellen had the requisite knowledge under Section 1591.**

The Amended Complaint does not plausibly allege that Ms. Kellen had the requisite knowledge. For this reason alone, any potential claim against Kellen is subject to dismissal.

To state a claim under 18 U.S.C. § 1591, Plaintiff must allege that Kellen performed one of the enumerated trafficking acts while "knowing" that "force, fraud, or coercion" would be used to cause Plaintiff to engage in a commercial sex act. The upshot? Even if Plaintiff could allege that Kellen "transported" her, and even if we assume that it was for purposes of a "commercial sex act," Plaintiff would *still* need to allege that Ms. Kellen *knew* that "force, fraud, or coercion" would cause her to have sex with Epstein. This she has not done.[6]

1.      The purported "fraud" claim.

Plausible actual-knowledge allegations demand factual content. *See Rosner v. Bank of China*, No. 06 CV 13562, 2008 WL 5416380, at *5 (S.D.N.Y. Dec. 18, 2008), *aff'd*, 349 F. App'x 637 (2d Cir. 2009) ("[W]hile the element of actual knowledge may be alleged generally, the plaintiff still must accompany that general allegation with allegations of specific facts that give rise to a strong inference of actual knowledge regarding the underlying fraud"); *see also San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Co.*, 75 F.3d 801, 812 (2d Cir. 1996) ("[P]laintiffs allege no facts supporting their assertion that defendants had knowledge…[n]or do plaintiffs offer anything but conclusory allegations to support their

---

[6] In the alternative, Section 1591 allows for liability where a defendant instead acts "knowing" that the person who "will be caused to engage in a commercial sex act" has "not attained the age of 18 years." But that portion of the statute's text cannot apply here: Plaintiff *is*, and at all relevant times *was*, over the age of 18.

contention that defendants knew").  And yet Plaintiff's assertions here are conspicuously void of specific facts.  For context, in the initial Complaint, there were *no* allegations (express or implied, plausible or not) that Kellen knew that the other Defendants might use force, fraud, or coercion to cause Plaintiff to engage in commercial sex with Epstein.  After Kellen pointed out the deficiency in her May 15, 2017 pre-motion letter, Plaintiff elected to file the Amended Complaint.  In the revised pleading, Plaintiff now alleges that Ms. Kellen "*knew* that Plaintiff was actually being recruited for sexual purposes" and "*knowingly* made false representations to ensure that Plaintiff would cooperate in fulfilling Epstein's sexual desires."  (Am. Compl. ¶ 40.)  But Plaintiff cannot solve the problem by adding the conclusion that Kellen "knew" that fraud would be used to make Plaintiff perform sex acts, or weaving in the blanket statement that Kellen all the while acted "knowingly."

At most, the allegations might support an inference that Kellen would have known that Plaintiff was "being recruited for a sexual purpose" and that Kellen "confirmed and reiterated" promises about Epstein's ability to help with Plaintiff's education.  (Am. Compl. ¶¶ 38, 40.)  But that still would not make for a plausible inference that Kellen *knew* that any fashion-school-related representations might have been false.  Said another way, there is no basis (alleged, or otherwise) to infer that Kellen acted *knowing* of others' fraudulent intent—that Epstein or others never meant to make good on promises to help Plaintiff gain admission into FIT or a similar school.[7]

_____

[7] To the extent the Amended Complaint can be construed as asserting that Kellen herself "repeated" false representations, Plaintiff has failed to plead fraud with the requisite particularity required by Rule 9(b).  *See* Fed. R. Civ. P. 9(b).  She does not allege when, where, or how Kellen allegedly "confirmed and reiterated" or "repeated" others' alleged fraudulent promises to Plaintiff. Nor are there allegations to detail the statements attributed to Kellen.  *Wood ex rel. U.S. v. Applied*

And the allegations that *have* been made are such that the only plausible inference is that Kellen expected Epstein to follow through on his commitments. The few specific allegations in the Amended Complaint confirm that Kellen's understanding would have been that Epstein intended to keep any promises of assistance. Plaintiff's allegations confirm that Epstein provided Plaintiff with a cell phone, car service, and even an Upper East Side apartment. (Am. Compl. ¶ 52.) He supposedly "continued to provide Plaintiff with things of value" as their relationship progressed. (*Id.* ¶ 62.) This establishes that Epstein made good and delivered on earlier promises. How could Kellen know whether Epstein intended to deliver on these first three promises, but not his fourth? The Complaint does not say.[8]

That Epstein did not ultimately follow through on this last commitment is not sufficient to show that the alleged representations about F.I.T. were false when made, and certainly insufficient to show that Ms. Kellen knew of any falsity or fraudulent intent. *See Greenberg v. Christ*, 198 F.Supp.2d 578, 583 (S.D.N.Y. 2002) ("[F]ailure to fulfill a promise to perform future acts is not grounds for a fraud action" and "fraudulent intent cannot be inferred merely from the non-performance of a party's representations"). Slapping a "knowing" label here and there throughout the Amended Complaint does not cure its deficiencies. There is no mention of a conversation, agreement, or any significant interaction between Epstein and Kellen on the subject of the alleged

_____

*Research Assocs., Inc.*, 328 F. App'x 744, 747 (2d Cir. 2009) ("[I]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

[8] Plaintiff also alleges that Kellen told Plaintiff that Epstein had used his wealth and influence to advance Kellen's own career. (Am. Compl. ¶ 53.) But Epstein *did* help Kellen. This makes it even less plausible that Kellen had reason to think that anyone was using "fraud" to force Plaintiff to engage in a commercial sex act.

fraud.  Plaintiff herself concedes that certain so-called "underlings" participated in the alleged "scheme" "wittingly *and unwittingly*."  (Am. Compl. ¶ 19) (emphasis added).  The "mere possibility of misconduct" is decidedly not enough.  *Iqbal*, 556 U.S. at 679.

There are no allegations to "nudge" Plaintiff's knowledge-based claim against Kellen "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  In the end, Kellen had no reason to know whether Epstein or others subjectively intended to fulfill the educational promise to Plaintiff.

## 2.     The purported "coercion" claim.

Nor are there plausible allegations that Kellen knew that some "coercion" would be used to cause Plaintiff to have sex with Epstein.  The purported coercive statements are attributed primarily to "Epstein and Maxwell."  Kellen's name is not uttered in connection with any of those claims.  For example, Paragraph 41 states that "Maxwell and Epstein also threatened Plaintiff that, while they had the ability to advance her education and career, they also had the ability to make sure that she would obtain no formal education or modeling agency contract if she failed to provide the sexual favors desired."  (Am. Compl. ¶ 41.)  Kellen is not alleged to have participated in or been aware of such "threats."   Again in Paragraph 48, "Defendants Epstein and Maxwell intimidated, threatened, humiliated and verbally abused Plaintiff in order to coerce her into sexual compliance . . . and [to] continue performing the demanded commercial sex activity."  (*Id.* ¶ 48.) Only "these Defendants" (*id.* ¶ 48)—not Kellen—are mentioned as having alleged involvement in the so-called coercion.

Plaintiff does not allege that Kellen repeated or confirmed the alleged threats, or that she knew that any threats might be used to cause Plaintiff to engage in a commercial sex act.  Thus,

where the fraud-based allegations against Kellen are deficient for lack of knowledge, the allegations about coercion are even worse.

Plaintiff cannot invoke the civil remedy under Section 1595 since she does not and cannot plausibly allege that Kellen knew that "force, fraud, or coercion" would be used to cause Plaintiff to engage in a commercial sex act. Without the requisite knowledge, Plaintiff might be able to allege that Kellen engaged in conduct that other people might not look favorably upon, or possibly even conduct that is prohibited by some other statute. But she cannot state a claim for relief under *this* statute. *See United States v. Todd*, 627 F.3d 329, 335 (9th Cir. 2010) ("Where a defendant engages in sex trafficking without the use of force, fraud, or coercion, or where children are not involved, his conduct is criminalized by a different set of statutes."); *see also Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*, No. 10-CV-4124, 2013 WL 6816174, at *16 (W.D. Ark. Dec. 24, 2013) (dismissing Section 1595 civil claim where defendants may have violated other sex-related statutes but not Section 1591). Without knowledge, there is no Section 1591 claim against Kellen.[9]

## II.    The Amended Complaint does not state a Section 1592 claim.

Section 1592 makes it unlawful to "knowingly destroy, conceal, remove, confiscate, or possess any actual or purported . . . government identification document, of another person" during the commission of trafficking activities. 18 U.S.C. § 1592(a). Plaintiff parrots back the language from this statute. Indeed, for the first time in the Amended Complaint, Plaintiff makes conclusory statements that Defendants "took possession of Plaintiff's passport" and "used possession and

---

[9] For similar reasons, Plaintiff's effort to add a claim that Defendants violated Section 1594(a) (Am. Compl. ¶ 71)—separately prohibiting "attempted" violations of Section 1591—must also fail.

control of Plaintiff's passport" to coerce her into performing sexual acts. (Am. Compl. ¶¶ 45, 49, 54, 69.)

Here again, Plaintiff fails to provide any specific facts to make a plausible claim. When did the Defendants take her passport? Did they take it from her without her knowledge? With force? Or did she willingly hand it over? What was the purported reason for which they had her passport? How long did they hold her passport? And how did the Defendants "use possession and control" of the passport to cause her to perform sexual acts? The allegations give no answers. Instead, they merely state conclusions pulled directly from the language of the statute. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (quoting *Iqbal*).

To the extent Plaintiff means to plead a Section 1592 violation, any such claim is inadequate as a matter of law.[10]

## III.    The claims against Ms. Kellen are all time-barred.

Plaintiff has no claim against Kellen for the reasons outlined above. In all events, any theoretical cause of action against Kellen would be barred by the applicable statute of limitations.

In 2008, the Act was amended to give victims ten years, rather than four years, to bring a private action against perpetrators under the civil-remedy provision. *See* 18 U.S.C. § 1595(c)(1)

---

[10] Nor can there be any claim based on Section 1593A. (Am. Compl. ¶ 70.) That provision has no application here since it was first enacted in December 2008, after all of the alleged acts had been completed. *Velez v. Sanchez*, 693 F.3d 308, 325 (2d Cir. 2012) (describing "well-established presumption against" retroactive amendments). Regardless, there are no plausible allegations that Kellen violated Section 1593A, which today criminalizes those who knowingly participate in or benefit from a venture in contravention of Section 1592 and 1595(a).

(as amended in 2008) ("No action may be maintained under this section unless it is commenced not later than . . . 10 years after the cause of action arose").  Here, the alleged events had all ended by 2007—before the 2008 amendment—so the four-year period still applies.  *See Abarca v. Little*, 54 F.Supp.3d 1064, 1068 (D. Minn. 2014) (holding that four-year limitations period applies where Section 1595 claim stems from pre-2008 conduct); *but see Oluch v. Orina*, 101 F.Supp.3d 325, 330 (S.D.N.Y. 2015) (applying amendment retroactively).  Since Plaintiff filed suit well outside of the four-year window, this action is time-barred.

But even if the ten-year statute of limitations applied, the claims against Kellen would still be barred.  There is no allegation that Kellen committed any of the statute's enumerated acts (e.g., recruiting, transporting) that constitute "trafficking" since January 26, 2007—the start of the ten-year period leading up to this lawsuit.  That should end the inquiry.

In reality, the limitations period on Plaintiff's Section 1595 claim commenced *no later* than January 2007 and expired *before* the Complaint was filed on January 26, 2017.  Kellen hereby incorporates by reference and adopts the arguments in Defendant Epstein and Groff's November 21, 2017 Memorandum of Law addressing this issue.  (*See* Dkt. No. 80, at pp. 21-23.)

In short, January 2007 marks when Plaintiff first left the United States.[11]  The allegations confirm that, by then, Plaintiff's eyes were open:  She was aware of and had already realized the Defendants' so-called fraudulent "scheme."  That is why Plaintiff "deliberately refused to perform the recruitment assignment" in South Africa—i.e., "she knew that the requested female model would not be placed in a legitimate position of employment with Defendant Epstein."  (Am. Compl. ¶ 56.)  Plaintiff thus cannot claim to have been relying on any fraudulent representation

---

[11] Notably, there is no allegation to suggest that this occurred on or after January 26, 2007.

about FIT that came after January 2007.  Plus, by this point, she was at home with her parents in South Africa.  She was on another continent, thousands of miles away, and beyond the reach of the Defendants, so any alleged coercion over her also necessarily ended in January 2007.  *See, e.g.*, *Abarca*, 54 F. Supp.3d 1064, 1070 (holding that Section 1595 claim arose when plaintiff traveled home to Mexico during "extended absences from defendants" with "physical freedom to seek legal advice and assistance"); *Oluch v. Orina*, 101 F. Supp. 3d 325, 330 (S.D.N.Y. 2015) (Section 1595 claim accrued when plaintiff first exited the defendant's home).  By any measure, this action is time-barred because Plaintiff filed suit more than ten years after her cause of action arose.

## IV.    This Court is not a proper forum for Plaintiff's action.

Even if Plaintiff could somehow articulate a viable and timely claim—again, she cannot— this case should not proceed in the Southern District of New York.  The allegations are insufficient to establish that this Court has personal jurisdiction over the Defendants.  And for similar reasons, this District is an improper venue.  For brevity, and to avoid duplication, Kellen incorporates by reference—and expressly adopts—Defendants Epstein and Groff's arguments on these two issues. (*See* Dkt. No. 80, at pp. 23-24.)

<u>**CONCLUSION**</u>

For these reasons, the claims against Kellen should be dismissed in their entirety.


Dated:     Atlanta, Georgia
           November 21, 2017


                                          By: <u>/s/John E. Stephenson, Jr.</u>
                                              John E. Stephenson, Jr.
                                               (*admitted pro hac vice*)
                                              Jonathan D. Parente
                                               (*pro hac vice forthcoming*)
                                              ALSTON & BIRD LLP
                                              1201 West Peachtree Street

Atlanta, Georgia  30309
(404) 881-7000
john.stephenson@alston.com
jonathan.parente@alston.com

Alexander S. Lorenzo
ALSTON & BIRD LLP
90 Park Avenue
New York, New York  10016
(212) 210-9400
alexander.lorenzo@alston.com

*Counsel for Defendant*
*Sarah Kellen*