# Exhibit A

# ALSTON&BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, GA  30309-3424

404-881-7000
Fax: 404-881-7777
www.alston.com

John E. Stephenson, Jr.              Direct Dial: 404-881-7697              Email: john.stephenson@alston.com

May 15, 2017

**VIA EMAIL AND U.S. MAIL**

Brad Edwards, Esq.
Farmer, Jaffe, Weissing, Edwards,
  Fistos & Lehrman, P.L.
425 North Andrews Ave., Suite 2
Fort Lauderdale, FL  33301

Re:    *Doe 43 v. Epstein*, *et al.*, No. 1:17-CV-00616 (S.D.N.Y.)

Dear Brad:

As contemplated by the Court's directives at the initial conference, and in accordance with the parties' May 12, 2017 stipulation, I write on behalf of defendant Sarah Kellen to identify what we believe are deficiencies in the Complaint.  The claims against Ms. Kellen should be dismissed for the reasons outlined below.

At the outset, the entire Complaint—including all claims against all Defendants—is subject to dismissal based on the defects described in Michael Miller's letter dated today.  That correspondence was sent on behalf of defendants Jeffrey Epstein and Lesley Groff, but the many grounds for dismissal set out in the letter also apply to any claim against Ms. Kellen:

- The Complaint's allegations improperly lump together all "Defendants" and also improperly lump together various statutory provisions (Miller Letter at 6, 10-11);

- The purported "fraud"-based claims under 18 U.S.C. § 1591 are legally insufficient: These allegations fall short under the heightened standards applicable under Rule 9(b), and Plaintiff has failed to adequately allege the requisite "fraudulent intent" or "reasonable reliance" (*id.* at 3-6);

- Section 1591 was never intended to address or regulate the type of consenting-adult relationship at issue in the allegations (*id.* at 7);

- Plaintiff also has not pleaded a legally viable theory under Section 1591's "coercion" prong (*id.* at 8-9);

- The Complaint fails to plausibly allege the requisite "commercial" sex act—much less one "caused" by "force, fraud, or coercion" (*id.* at 9-10);

May 15, 2017
Page 2

- The Complaint merely parrots back various statutory elements and does not state a plausible claim that Plaintiff—an adult of sound mind who voluntarily entered into a consensual relationship—was the victim of a criminal sex-trafficking offense (*id.* at 11);

- Plaintiff's claims are all barred by the applicable statute of limitations under Section 1595 (*id.* at 12-13); and

- The allegations highlight independent jurisdictional and venue defects that are alone fatal (*id.* at 13-14).

Mr. Miller's letter effectively details and gives notice of these and other deficiencies, so for the sake of efficiency, we join in his entire letter and incorporate by reference the arguments, authorities, and citations that he sets out more fully.[1] Beyond that, however, I write separately to emphasize a few select issues that apply with particular force in the case of Ms. Kellen, given the specific allegations that have (and have not) been made against her.

<u>The Complaint fails to state a claim against Ms. Kellen.</u>

The lack of factual content in the allegations and improper lumping of Defendants underscores that Plaintiff has not, and cannot, state a claim against my client. There are hardly any allegations about Ms. Kellen. She is identified by name only a handful of times in the 20-page Complaint. And most of the allegations that could even arguably be construed as directed at Ms. Kellen simply recite Section 1591's legal conclusions and statutory buzzwords—e.g., "recruited," "procured," "fraud," or "coercion." (*See, e.g.*, Comp. ¶ 21; *see also Kelsey v. Goldstar Estate Buyers Corp.*, No. 3:13-CV-00354-HU, 2014 WL 1155253, at *5-6 (D. Or. Mar. 21, 2014) ("They do not allege facts. They are simply a regurgitation of [Section 1591's] wording woven together with conclusory statements . . . .").) One allegation vaguely references some "verbal abuse and threats" that seem to be attributed to several individuals, including Ms. Kellen, but the Complaint does nothing to describe who said what or what the alleged comments might have related to. (*Id.* ¶ 46.) That is not enough to state a plausible claim that Ms. Kellen violated the criminal sex trafficking provisions at issue. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'").

The dearth of facts and allegations directed toward Ms. Kellen makes the Complaint's repeated and improper lumping of all "Defendants" together particularly egregious. Plaintiff alleges, for example, that "<u>Defendants</u> recruited Plaintiff" (Compl. ¶ 33) and later that "<u>Defendants</u> provided" Plaintiff with an apartment, a car service, a cell phone, and other consideration (*id.* ¶ 49). This type of group pleading runs afoul of Rule 8, which requires "specification" as to "the particular activities by any particular defendant." *See Am. Sales Co. v. AstraZeneca AB*, No. 10Civ.6062, 2011 WL 1465786, at *5 (S.D.N.Y. Apr. 14, 2011). Courts routinely dismiss claims that "fail[] to differentiate among the defendants, alleging

---

[1] I also fully agree with Mr. Miller's position that paragraphs 12 through 32 contain a host of allegations that are unproven, irrelevant, and prejudicial in this action. They should be removed or stricken under Rule 12(f).

May 15, 2017
Page 3

instead violations by 'the defendants'" (*Atuahene v. City of Hartford,* 10 F. App'x. 33, 34 (2d Cir. 2001)), and that "attribute" alleged acts "generally to 'Defendants.'" *Elias v. City of New York,* No. 10–CV–5495, 2010 WL 5475809 (E.D.N.Y. Dec. 30, 2010).

The lumping of all Defendants is not only impermissible but also implausible:  Taken literally, the allegations would claim that *all* five Defendants recruited Plaintiff and that *each* of the five then provided her with an apartment, a phone, and a car.  Plus, certain allegations that refer to acts of "the Defendants" collectively are later narrowed by Plaintiff in a way that specifically *excludes* Ms. Kellen.  (*Compare* Compl.  ¶ 34 *with* ¶ 35.)  As currently drafted, the Complaint fails to put Kellen on sufficient notice of the allegations against her.

The Complaint also fails to state a claim against Ms. Kellen under Section 1595 because Plaintiff has not alleged—much less plausibly alleged—that Kellen had the requisite knowledge under the underlying criminal provisions.  *Iqbal*, 556 U.S. at 678 ("a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").  Section 1591 requires that Plaintiff allege, among other things, that Ms. Kellen (i) "recruit[ed], entice[d], harbor[ed], transport[ed], provide[d], or obtain[ed]" Plaintiff and (ii) that Kellen did so "knowing that force, fraud, or coercion . . . w[ould] be used to cause [Plaintiff] to engage in a commercial sex act."  18 U.S.C. § 1591(a) (effective July 26, 2006).  Even assuming that Plaintiff has alleged the other elements—again, she has not— the claims against Ms. Kellen would *still* fail because the Complaint does not allege that Kellen *knew* that force, fraud, or coercion would be used to cause Plaintiff to engage in a commercial sex act.[2]

Plaintiff's allegations about Ms. Kellen's involvement in the purported fraud are impermissibly vague and in all events insufficient.  The Complaint alleges only that Ms. Kellen "confirmed" the promise of others that Mr. Epstein could use his influence to get her into a fashion institute. (Compl. ¶ 37.)  The allegation is woefully deficient under Rule 9(b), and more generally, it is not at all clear what it means for Kellen to have allegedly "confirmed this promise."  Either way, there are no allegations that Kellen knew that the alleged promises might have been false—i.e., that some other individual(s) did not subjectively intend to perform and make good on their alleged educational promise.  The absence of this critical knowledge allegation is especially problematic because, by Plaintiff's own allegations, Mr. Epstein had consistently followed through on various other alleged promises to Plaintiff. (Compl. ¶ 49.)  The allegations as pleaded are not enough to "nudge[] the[] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

As far as the alleged coercive conduct, the Complaint does not even mention Ms. Kellen's name or otherwise attempt to connect Kellen to the alleged intimidation or threats made by other individuals that supposedly "coerced [Plaintiff] into sexual compliance." (Compl. ¶ 45.)  It is not alleged that Ms. Kellen repeated or confirmed such coercive threats.  There is no reason alleged (or otherwise) why Ms. Kellen would have had the requisite

---

[2] For the avoidance of doubt, as discussed above and as described in Mr. Miller's letter, among other things, Plaintiff has not sufficiently alleged (i) fraud, (ii) coercion, (iii) a "commercial" sex act, or (iv) the requisite causal link that fraudulent or coercive conduct produced the alleged sex acts.

May 15, 2017
Page 4

knowledge of the alleged coercive statements.  *See Iqbal*, 556 U.S. at 679 (explaining that the "mere possibility of misconduct" is not enough).

Without knowledge, there is no claim against Ms. Kellen.

Plaintiff's claims are time-barred.

Any theoretical claim that Plaintiff might have against Ms. Kellen would be barred by the applicable statute of limitations.  The alleged events, as relating to *any* of the Defendants, took place in 2006 and 2007.  Because Plaintiff did not file suit until January 26, 2017—more than four years after the alleged events—this entire action is time barred.  *See Abarca v. Little*, 54 F. Supp. 3d 1065 1068 (Minn. 2014) (holding that four-year statute of limitations applies because the alleged unlawful conduct occurred prior to the 2008 amendment of Section 1595).

Even if Plaintiff could claim the benefit of the ten-year limitations period, Plaintiff's claim against Ms. Kellen would *still* be barred.  First, each of the allegations about Ms. Kellen took place in the 2006 calendar year before Plaintiff first left for South Africa.  Even accepting the allegations as true, the Complaint shows that Ms. Kellen did not do anything in 2007—i.e., within the ten-year period leading up to the filing of this lawsuit.

As important, Plaintiff cannot plausibly allege that any alleged fraud or coercion attributable to any of the Defendants caused her to engage in sex acts after she left the United States in January 2007.  By that time, she was at home with her parents in South Africa—thousands of miles away, and by her own allegations, she was already alert as to the alleged fraud and coercion and had refused to perform the acts demanded of her.  (Compl. ¶ 51.)

\* \* \*

If you would like to discuss any of these issues, please do not hesitate to reach out.


Sincerely,

John E. Stephenson, Jr.