hbs2doeA

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
     JANE DOE 43,
 3
                   Plaintiff,              New York, N.Y.
 4
              v.                           17 Civ. 616(JGK)
 5
     JEFFREY EPSTEIN, et al,
 6
                   Defendants.
 7   ------------------------------x
                                           November 28, 2017
 8                                         3:45 p.m.

 9   Before:

10                   HON. JOHN G. KOELTL,

11                                         District Judge

12

13                        APPEARANCES

14   PAUL G. CASSELL (via telephone)
          Attorney for Plaintiff
15
     EDWARDS POTTINGER LLC
16        Attorneys for Plaintiff
     BY:  STAN POTTINGER
17
     STEPTOE & JOHNSON, LLP
18        Attorneys for Defendant Epstein
     BY:  MICHAEL C. MILLER
19
     ALSTON & BIRD, LLP
20        Attorney for Defendant Kellen
     BY:  ALEXANDER S. LORENZO
21

22   ALSO PRESENT:

23   SHER TREMONTE, LLP
          Attorneys for Interested Party
24        Haddon Morgan & Foreman, P.C.
     BY:  KIMO S. PELUSO
25
```

hbs2doeA

1          (Case called)

2          MR. CASSELL:  Good afternoon, your Honor.  This is

3     Paul Cassell, from Salt Lake City, Utah, on behalf of Sarah

4     Ransome, Jane Doe 43.

5          THE COURT:  Good afternoon.

6          MR. POTTINGER:  Good afternoon, your Honor.  Stan

7     Pottinger, also for plaintiff Sarah Ransome.

8          MR. PELUSO:  Good afternoon, your Honor.  Kimo Peluso,

9     Sher Tremonte, for interested party Haddon, Morgan & Foreman.

10          THE COURT:  Hold on one second, please.

11          (Pause)

12          THE COURT:  Thank you.

13          Who else?

14          MR. LORENZO:  Good afternoon, your Honor.  Alex

15     Lorenzo, Alston & Bird, for defendant Sarah Kellen.

16          MR. MILLER:  Good afternoon, your Honor.  Mike Miller,

17     from the law firm of Steptoe & Johnson, for Jeffrey Epstein and

18     Lesley Groff.

19          THE COURT:  Jeffrey Epstein and?

20          MR. MILLER:  Lesley Groff, G-R-O-F-F.

21          THE COURT:  All right.

22          You are all here because I received a letter from

23     Mr. Peluso, on behalf of the Haddon Morgan firm, objecting

24     essentially to the fact that I have approved alternative

25     service on Ms. Maxwell by serving Haddon Morgan, and then I got

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

3

hbs2doeA

1    a letter memo in opposition by Mr. Edwards.

2            So what do the parties want to do at this point?

3    Mr. Peluso?

4            MR. PELUSO:  Yes, your Honor.  Thank you.

5            THE COURT:  You say that, as I read your papers,

6    Ms. Maxwell can be served in London.  Where in London?

7            MR. PELUSO:  I don't know, your Honor, that she can be

8    served in London.  The point as to her London residence was

9    that plaintiffs are aware of at least one residence where they

10   haven't attempted service, which goes --

11           THE COURT:  I'm sorry?  The plaintiffs are aware of

12   what?

13           MR. PELUSO:  Plaintiff's counsel is aware of at least

14   one residence where they hadn't even attempted service.  But

15   really the broader point is they hadn't attempted service at

16   all.  And we found the plaintiff's original *ex parte*

17   application to your Honor was based on the representation that

18   Ms. Maxwell was avoiding service and that service had been

19   attempted; and, in actuality, plaintiff's counsel never

20   attempted service.

21           THE COURT:  What is the address that you say they

22   should have tried in London?

23           MR. PELUSO:  I don't know the address offhand, your

24   Honor, but --

25           THE COURT:  You must be able to get that.

hbs2doeA

 1          MR. PELUSO:  Yes, your Honor, we can provide that.

 2     Plaintiff's counsel already has that, and I believe they have

 3     conceded they already have that, from discovery that was not

 4     confidential from the other action before Judge Sweet.

 5          THE COURT:  I thought that they actually disputed

 6     that.

 7          MR. PELUSO:  No, your Honor.  I think there was some

 8     confusion.  We may have cited to the wrong document on the

 9     docket.  They disputed that there was any issue as to her New

10     York home, which in fact had been sold.  She could not be

11     served in New York.  They conceded in their papers that another

12     issue that was subject to discovery was, I believe the way they

13     put it, a flat in London associated with Ms. Maxwell.  Their

14     point was that the events that were relevant to the flat in

15     London happened in 2001/2002.  So it was too old for them to

16     attempt service there.  I don't really follow the argument, but

17     that was the point.  They were not disputing that they are

18     aware of a residence associated with Ms. Maxwell in London.

19          THE COURT:  But so they are unaware of any address at

20     which she could be served, then.  You say that that is no

21     longer a current address.

22          MR. PELUSO:  No, your Honor.  They said that it is not

23     a current address.  I don't know where Ms. Maxwell lives today.

24     I'm not here to report to the court that I know an address

25     where she can be found.  What we are here today on is our

1    application that her law firm, from the prior action, should

2    not be inserted into the middle of this by accepting service.

3            THE COURT:  I understand that, but some of your

4    arguments appear to be supportive of an effort avoid service.

5    I know you say that they didn't really try very hard before

6    making the application to me.  Why don't I simply extend the

7    time to serve for another 60 days or 30 days, a reasonable

8    time?  They appear to have been making a record, even if it

9    wasn't made before the fact, of repeatedly asking your client's

10   firm for a way to get ahold of Ms. Maxwell, all of that

11   unsuccessful, even though your client has recently appeared on

12   behalf of Ms. Maxwell before Judge Sweet.  Right?

13           MR. PELUSO:  That is correct, your Honor.  The case

14   itself was settled, but there have been some post-judgment

15   issues.

16           THE COURT:  Right.  You relied on the fact that the

17   case in which your client had represented Ms. Maxwell was over;

18   and then, lo and behold, your client shows up representing

19   Ms. Maxwell in this district, so still has the relationship

20   with Ms. Maxwell, enough to be able to appear in this district.

21           MR. PELUSO:  Your Honor, we have never taken the

22   position that the Haddon Morgan firm cannot reach Ms. Maxwell.

23   Our point was they decline to accept service, which law firms

24   are requested to accept service on behalf of their clients all

25   the time.  Often they say yes, often they say no.  I don't

hbs2doeA

1    think the court would suggest any wrongdoing with either

2    answer.  But obviously a law firm can't accept service if their

3    client won't authorize it.

4              THE COURT:  They can't accept service if they are not

5    specifically authorized by the client to accept service.

6              MR. PELUSO:  Correct, your Honor.

7              THE COURT:  On the other hand, if the court ordered

8    for alternative service that they can be served and that that

9    will be sufficient notice to the client of service, then they

10   can accept service.  In fact, they have to accept service,

11   right?

12             MR. PELUSO:  Yes.  If the court orders the law firm

13   to, then the law firm becomes a vehicle of service.  And it is

14   not the passive kind, where the court orders publication or

15   something like leaving it where the party who is attempted to

16   be served is known to frequent.  It is actually requiring the

17   law firm to take affirmative acts.  And that is the aspect of

18   the order that we raise a strong issue with, especially in a

19   case like this, your Honor, where this is the second plaintiff

20   in a series of allegations that there are dozens of others, no

21   defendant should be put to the choice of appearing in the first

22   case and thereby de facto having an agent for service of

23   process for all future cases.  The conscription of the law

24   firm of the party for that purpose carries with it some

25   important implications, and that is why we are bringing this

hbs2doeA

1   application.

2          THE COURT:  There would still have to be personal

3   service, personal jurisdiction over the defendant.  The only

4   thing that service accomplishes is notifying the defendant of

5   the existence of the lawsuit and providing the defendant with

6   the opportunity to raise all defenses, including the lack of

7   personal jurisdiction.  The service should be fairly

8   straightforward if it is reasonably calculated to give notice

9   to the defendant.

10          Now, I can understand your position that the plaintiff

11  didn't act sufficiently diligently originally to get ahold of

12  Ms. Maxwell and went too quickly to your firm, to your client.

13  I can understand all of that.  On the other hand, the plaintiff

14  then puts in all of this correspondence in which they beg you,

15  your client, to accept service, and they get stonewalled.  And

16  yet, lo and behold, they appear in this district on behalf of

17  Ms. Maxwell and appear able to contact the client in order to

18  take positions on the client's behalf.  So one wonders whether

19  all of this is simply a procedural delay.

20          I realize from the papers that there have been lots of

21  motions in the other case, and I suspect that there will be

22  lots of motions before me, but this shouldn't be a difficult

23  procedure in order to provide sufficient notice to Ms. Maxwell.

24          What am I missing?

25          MR. PELUSO:  Your Honor, I think that the -- what I

1     would push back against is the idea that the record they have

2     developed shows diligence that warrants alternative service.

3     What they have shown is they asked a law firm to accept service

4     or provide the address information for their client.  And they

5     have put in a record now that they asked that many, many times.

6     But that's all they did.  They asked the same question many

7     times, which lawyers are free to say no to.  And I would submit

8     that it would be an unusual extension of the CPLR provisions

9     for alternative service to grant alternative service merely

10    because a law firm declined to accept service and declined it

11    several times.  That is not the basis for the process that

12    brings a party before the powers of the court.

13         THE COURT:  It is not only that, but they appear to

14    have come up against a blank wall for an address for

15    Ms. Maxwell.  All of this presumably goes away if your client

16    simply said, Here is an address, here is a physical address,

17    here is an e-mail address, we would prefer that you contact the

18    client directly rather than us.  But there is nothing like

19    that.  Your client would be free to provide any of that

20    information, but there is no indication here that your client

21    has provided either a physical or an e-mail address for

22    Ms. Maxwell, right?

23         MR. PELUSO:  I don't believe there is anything to that

24    effect in the record before your Honor.  I also don't believe

25    there is any representation by plaintiff that they don't have

hbs2doeA

1    an e-mail address for Ms. Maxwell.  I don't know what they

2    would say to your Honor about what information they have.  But

3    we know that they have a London address that they didn't

4    attempt service on.

5        THE COURT:  You say it is not a good address, I

6    thought.

7        MR. PELUSO:  No.  I don't know.  I do not know whether

8    she is there today.  My understanding is that they had -- my

9    understanding is that either she doesn't have a permanent

10   physical address in the United States or I can say that my

11   client doesn't know one for her.  They don't have a way -- they

12   don't have a mailing address for her or physical address for

13   her.  I'm not denying that the Haddon Morgan firm can get in

14   touch with her, but I don't know what the situation is in the

15   London address.  In the cases where courts allow alternative

16   service, normally if you have an address, you go there, you

17   attempt service, you talk to the neighbors, before skipping all

18   of that and going to service through a law firm that has not

19   been authorized to accept service by their client.  And I don't

20   think we would take issue with your Honor's suggestion of

21   extending the time for them to attempt service in another way.

22   Our application is to get the law firm out of it.  The law firm

23   should be free to decline accepting service without that being

24   seen as somehow stonewalling.

25        THE COURT:  If I gave them another 30 days to make the

1    record, why at the end of 30 days would I not authorize service

2    on Haddon Morgan as, if no other address comes up, either a

3    physical address or e-mail address, Haddon Morgan has shown an

4    ability to contact the plaintiff and, quite recently, to appear

5    on behalf of the plaintiff in the court.  That would then

6    appear to be reasonably calculated to give notice to

7    Ms. Maxwell.  Why wouldn't that be right?

8             MR. PELUSO:  That would certainly be a stronger

9    application, your Honor, or service may be successful in other

10   ways.  But the notion of Haddon Morgan going along with service

11   on the current record and potentially becoming the agent for

12   service of process for this client for this district in however

13   many cases they are going to bring is not something that makes

14   sense for the law firm to accept without bringing this

15   application for the court to reconsider the ruling.

16             THE COURT:  Okay.  You have certainly diligently

17   opposed the ruling, so let me listen to the plaintiff

18   presumably.

19             MR. PELUSO:  Thank you, your Honor.

20             MR. CASSELL:  Yes.  Thank you, your Honor.  This is

21   Paul Cassell on behalf of Sarah Ransome.

22             I know you have had a chance to review our pleadings,

23   so let me just highlight a few things that I think are

24   important here.

25             First, it is important to understand that this

1      posture that the motion comes to you on is a motion for

2      reconsideration, and so it is the burden of Haddon Morgan to

3      show some reason to change the outcome that is in play right

4      now.

5              We made two procedural points in our opposition,

6      neither of which have been responded to.  The first is that the

7      court lacks standing to hear from Haddon Morgan as to why there

8      is some defect in the service on defendant Maxwell.  They don't

9      have an interest, they haven't alleged any injury, certainly

10     not a particularized injury of the kind that would be

11     sufficient to create Article III standing, and so the motion to

12     reconsider should be denied for that reason alone.

13             A second concern is timeliness.  Ordinarily we

14     wouldn't make a point out of a few days, but I think your Honor

15     has the sense of what's going on here.  This appears to be a

16     delay tactic designed to keep this case from getting off the

17     ground, and not because there is some meritorious concern, but

18     simply because there are procedural objections that could be

19     raised for proceduralism's sake.

20             We would call to your Honor's attention that you

21     granted our motion for alternative service on September 29.  We

22     in fact served Haddon Morgan on October 9, and yet the

23     opposition or the motion for reconsideration, I guess I should

24     say, was not timely filed.  It came in on October 30, and here

25     we are, you know, four weeks later, or something, litigating.

1    It is simply not timely, and the court should deny it for that

2    procedural reason as well.

3         But let me turn to the merits, and I think your Honor

4    has already made many of the points that I would want to make.

5    We have -- it wasn't simply a matter of developing a record.

6    We were trying to avoid embroiling the court in any service

7    issues which, as you know from the e-mails, we were told by

8    Haddon Morgan that Ms. Maxwell is not permanently settled.

9    That's a direct quote.  "I do not believe she has a permanent

10   residence."  Those were the representations that we were given.

11   And so we ran into, as I think your Honor pointed out, a brick

12   wall or blank slate.  We didn't know how to proceed.

13        Now we have heard from the other side there should

14   have been a bunch of due diligence or prior attempts to serve.

15   In our original motion to the court, we cited this court's

16   decision in *Securities and Exchange Commission v. HGI* that

17   says:  Look, a plaintiff has to show a practicability of

18   service, but there is no requirement of proof of due diligence

19   or actual prior attempts to serve a party.  That's a quote from

20   a 1999 decision of this court.

21        So I didn't hear anything this afternoon that

22   suggested there was a lack of impracticability, which of course

23   was the basis for the court granting our motion.  The only

24   thing we have heard about is that we should have gone hither

25   and yon through London trying to serve Ms. Maxwell there.

hbs2doeA

1   Interestingly, though, you will recall that the Haddon Morgan

2   firm filed their letter motion and they cited a newspaper

3   article that said Ms. Maxwell is a British socialite.  Well,

4   that same article -- again, this is what the other side was

5   filing -- says that she has been based in the United States

6   since 1999.

7            Now, it is true that we are aware of a client who in

8   2001 was in a flat in London that appeared to be connected with

9   Ms. Maxwell and was sexually abused, but that was 16 years ago.

10  And I guess what the other side is suggesting is that we should

11  go through the Hague Convention, follow procedures there, chase

12  after this flat, and see if somehow that changes things.  We

13  cited in our papers that we provided to your Honor last week a

14  previous decision from this court saying, look, going through

15  the Hague Convention just takes so long and creates such

16  significant expense that that in and of itself can be a showing

17  of impracticable.

18            So there isn't any reason, I would submit, for

19  extending things for 30 or 60 days to make us chase through

20  London and spend what I think would be thousands of dollars, if

21  not tens of thousands of dollars, on foreign process service.

22  Again, we would be willing to spend time and money and the

23  court's time and energy if there was some substantive concern

24  here, but this is all designed, as your Honor pointed out, to

25  make sure that Ms. Maxwell knows about the lawsuit.  Well, I

1    think she was just a few doors down from where your Honor is

2    sitting right now with attorneys actually litigating an issue

3    relating to confidentiality of documents in this lawsuit.  So

4    that provides, I would think, ample basis for the court to

5    conclude that she already knows about the lawsuit.  All we are

6    trying to do is to simply effect service here, get the case

7    moving forward, and then she can raise whatever concerns she

8    wants.  We submit that there has been no showing sufficient to

9    justify the court reconsidering its earlier ruling on all these

10   things.

11             THE COURT:  Mr. Cassell, a couple of things.  You say

12   that she was just a few doors down.  Her lawyers were here.

13   Any reason to believe that she was here?

14             MR. CASSELL:  No.  I'm sorry if I said she was.  She

15   was there through counsel, and we would submit that that is

16   effectively constructively appearing before your Honor, because

17   the litigation in front of Judge Sweet involved confidentiality

18   connected to this particular case.

19             THE COURT:  Yes, but that is stretching it just a bit.

20             The other item is that it appeared -- and you can

21   correct me if I am wrong -- that all of the e-mail

22   correspondence about service was something that occurred after

23   the Haddon Morgan firm was served, or was it before?

24             MR. CASSELL:  It is both before and after.  It was

25   back as far as February of this year that we were trying to

1    work through the firm.  We followed up again in March.  If I

2    have the chronology right, we followed up again in May.  And

3    then just as recently as November 7, we realize your Honor's

4    time is valuable, we said, Look, we don't want to burden the

5    court with this issue, if you can just give us something to

6    follow up on.  We sent that e-mail on November 7 and, to my

7    knowledge, here we are three weeks later and have not received

8    any response from the Haddon Morgan firm.  So we have tried to

9    do what we could to make contact through the Haddon Morgan

10   firm.

11           THE COURT:  My problem here, Mr. Cassell, is simply

12   not wanting to have the possibility of an error in service at

13   the outset of the case when the error, it would seem to me,

14   could be easily corrected if, in fact, there were error.

15           The motion for reconsideration says, in essence,

16   Judge, you didn't have a sufficient record before to you say

17   that service was really impracticable.  The plaintiff has

18   attempted to come forward now with all of this subsequent

19   information, none of which really was before you at the time.

20   I plainly have the ability, irrespective of the standing of

21   Haddon Morgan or the timeliness of the application, to

22   reconsider my own order and to extend the time for service in a

23   way that assures that there can't be any error.

24           Now, Haddon Morgan has gone quite far, and you have

25   gone quite far in showing the impracticability of service on

1    Ms. Maxwell and indeed the stonewalling of efforts to find an

2    address or an e-mail address for Ms. Maxwell, but none of that

3    was in the record before me at the time that I authorized

4    service on Haddon Morgan as an alternative means of service.

5          Now, if Ms. Maxwell chooses to start the litigation

6    this way before me, not a good way to begin litigation, but so

7    be it.  Motions over effective service are seldom made because

8    so easily cured, and at the end of the day, the effect of

9    motions like this is simply to chip away at parties'

10   credibility.  If any parties wishes to start this way, so be

11   it.

12         I want to make sure that everything I do in the case

13   is right.  I am somewhat persuaded by the argument that the

14   showing of impracticability at the outset left something to be

15   desired in view of everything that has been presented to me

16   since then.

17         You are welcome to respond to all of that.  My

18   inclination is simply to extend the time to serve on

19   Ms. Maxwell until January 5, at which time the plaintiff can

20   indicate that service has been made or apply for alternative

21   service.  If there is an application for alternative service,

22   any response should be filed quickly, by January 12, and I will

23   decide it on those papers.

24         Haddon Morgan has already protectively sought an

25   extension of time to move or answer for 60 days, so when does

hbs2doeA

1    that expire?

2            MR. CASSELL:  That expires, I believe, within -- after

3    21 days after this particular motion has been resolved.

4            THE COURT:  No reason that I shouldn't -- I assume

5    that these procedural matters will be disposed of soon after

6    January 12, so --

7            MR. CASSELL:  Your Honor, could I be heard just

8    briefly on the time frame that you are contemplating there?

9            THE COURT:  By all means.

10           MR. CASSELL:  I am not an expert in the Hague

11   Convention but I am informed by others that a 60- to 90-day

12   timeline is the minimum amount of time for service through the

13   Hague Convention.  The timeline that you are setting up might

14   work if we were chasing after someone in Manhattan, but we are

15   chasing after someone in a foreign country.

16           A related point is the issue of cost.  This is going

17   to cost tens of thousands -- I'm sorry, thousands of dollars,

18   if not tens of thousands of dollars, to attempt to do this and,

19   as you know, Sarah Ransome lacks resources here.  So I think

20   your Honor was making a point that this is not a good way to

21   start the litigation for Ms. Maxwell.  I submit that they will

22   be returning to their offices high-fiving because they have

23   required someone who lacks resources to spend thousands and

24   thousands of dollars simply attempting to effect service in a

25   situation where, as of last week, they had lawyers in the

1    Southern District of New York actually litigating an issue

2    related to the very issues that we are talking about.  So we

3    would ask that those factors be considered.

4         And related to that, Haddon Morgan obviously has

5    contact information for Ms. Maxwell.  They could be directed by

6    your Honor to provide all the contact information that they

7    have to us in an effort to minimize those costs.  So those

8    sorts of things, we would submit, should be considered by your

9    Honor in looking at the motion to reconsider.

10        We realize that we did not make as extensive a record

11   as we could have in initial pleading, but I do think that our

12   initial pleading said that it was implausible, here is why.  We

13   didn't burden the court with all of the e-mails and other

14   things at that time.  So if the question is whether the record

15   was sufficiently developed, then I would submit it's much more

16   developed today and you could simply deny the motion to

17   reconsider based on the record that you have today; or if your

18   Honor would feel more comfortable in terms of avoiding any

19   error, you could give us the opportunity to re-serve Haddon

20   Morgan now in light of the new record that we have developed,

21   and you could grant the alternative service motion based on the

22   record as it exists this afternoon.

23        THE COURT:  Mr. Peluso.

24        MR. PELUSO:  Yeah.  Your Honor, I don't want to advise

25   plaintiff on how to proceed, but I would suggest that they

1    examine the Hague Convention, they examine Article 10, they

2    examine those countries that have opted in to Article 10 and

3    determine whether service on a UK address can be accomplished

4    by registered mail before making representations that this

5    process will cost their client thousands of dollars and take 60

6    to 90 days.  And if they look into those things and want to

7    make those representations, they can.  I suspect if they look

8    into those things, they will not.

9            I also just have to take issue with the suggestion

10   that we had stonewalled them by refusing to provide an e-mail

11   address.  There was electronic discovery in the earlier case.

12   They certainly have e-mails belonging to Ms. Maxwell.  I don't

13   think we heard any representation to the contrary.  I don't

14   know what those e-mail addresses are.  I suspect plaintiff's

15   counsel knows a lot more about Ms. Maxwell's e-mails than we

16   do.  No one is suggesting from my client any relief that will

17   add months to this process or cost thousands of dollars to

18   Ms. Maxwell by any means.

19           THE COURT:  Mr. Cassell, Mr. Peluso suggests, first,

20   that there is an easier way of service under the Hague

21   Convention in Great Britain, but that of course depends upon

22   having an address in Great Britain.  He suggests that you

23   actually probably in discovery, which I believe you are able to

24   access with the recent order of Judge Sweet, have access to

25   electronic communications that were copied to Ms. Maxwell.

hbs2doeA

1          Finally, what you were suggesting of supplementing the

2     record of what could have been given to me at the outset or

3     could be given to me now can all be raised at the end of the

4     month or before with a renewed application for alternative

5     service if in fact this matter has not been resolved before

6     then.  If in fact you are right that all of this information

7     shows that it is impractical to serve Ms. Maxwell, then

8     presumably there are alternative means of notice to

9     Ms. Maxwell.  Among those would possibly be Haddon Morgan and

10    service by an e-mail address.

11          Finally, I decide every motion in an effort to be

12    right.  It is the parties who have to deal with whether I am

13    right or not.  All I have to do is to decide every motion in

14    the best way that I can and leave to all of you whatever the

15    consequences of that are.

16          It would be not the best way to start off the case for

17    a plaintiff to say, well, we may not have made the showing to

18    you that we could have or should have made, but blow through

19    it, Judge, live with it.  I don't do that.  I try to decide

20    every case in the best way that I can.  And it seems to me

21    clear that you won't have to spend thousands of dollars in

22    order to effect service, but you do have to have made the

23    diligent inquiries to attempt service before going to the

24    alternative method of service.  What that involves, I don't

25    know at the moment, but that is really up to the parties.

1          MR. CASSELL:  Your Honor, perhaps could I ask one

2     question of opposing counsel?  Because I think this might be

3     one way of cutting through all this.  Let me just tell you what

4     the one question would be.  Isn't it true that Ms. Maxwell

5     already has notice of this lawsuit?

6          THE COURT:  Well, Haddon Morgan can answer if they

7     want.

8          MR. PELUSO:  I honestly don't know, your Honor.  I

9     suspect someone at Haddon Morgan can answer that.  I could find

10    out, but I don't think that is service, your Honor.

11         MR. CASSELL:  That's the whole purpose of why we are

12    here, your Honor.  And, frankly, I think that is one of the

13    reasons why Haddon Morgan is not appearing in front of you

14    today, but has hired sort of a surrogate, if you will, so there

15    is a plausible deniability, or whatever the phrase would be.

16    Perhaps one way to proceed would be to ask Haddon Morgan that

17    question through counsel that's here today and if they respond

18    that, yes, Ms. Maxwell does indeed have notice of the lawsuit,

19    at that point I would assume that that amply protects any

20    record or shows that all of these hearings and motions and so

21    forth are much ado about nothing, and we could then move with

22    service through Haddon Morgan, since it accomplished the goal

23    that it was designed to accomplish.

24         THE COURT:  That is not right, actually.  The fact

25    that the defendant has notice, if you will, of the lawsuit

1    doesn't substitute for service of the summons and complaint.

2    True that alternative service is meant to provide notice --

3    and, again, the parties can correct me if I am wrong -- but it

4    doesn't simply dispose of the requirement for service of the

5    summons and complaint.

6         MR. CASSELL:  But our limited point, your Honor -- I

7    appreciate the clarification there, but our limited point was

8    that the alternative service motion is designed to provide

9    notice reasonably calculated under all of the circumstances to

10   apprise interested parties of the pendency of the action.  And

11   if that apprisal function has already been accomplished, to

12   even have to spend one additional dollar or one additional

13   month tracking things down through London is energy and time

14   and money being expended for no purpose whatsoever,

15   particularly where -- I agree that the summons and so forth

16   should be provided to Ms. Maxwell, but no one is disputing that

17   that will take more than a few seconds on a keyboard for Haddon

18   Morgan to forward it along to their client.

19        THE COURT:  Okay.  Well, where I was was I will extend

20   the time for service on Ms. Maxwell until January 5, at which

21   point the plaintiff can either file proof of service or an

22   application for alternative service.  And just so that there is

23   no question, the application for alternative service, whatever

24   you believe is most appropriate for alternative service should

25   also be filed, because they have appeared for a limited purpose

1    on Haddon Morgan.

2              Any response can be filed by January 12.

3              The time to move or answer is 30 days after service in

4    response to the court's decision on service.  That will not

5    lose us much time.

6              Any other deadlines or procedural tasks that I should

7    deal with in this order?

8              MR. MILLER:  Your Honor, Mike Miller for Jeffrey

9    Epstein and Lesley Groff.

10             We are scheduled to file a supplemental motion to

11   dismiss within seven days of the issuance of a confidentiality

12   or protective order in this case.  We have a draft of it that

13   we will be circulating to the parties hopefully tomorrow or the

14   day after.  I guess the only question from a scheduling

15   perspective is whether it makes sense to stay motion practice

16   on the balance of the case until after the service issue is

17   resolved.  We are content to go either way, subject to the

18   court's pleasure on the issue, but I just point that out.  That

19   could result in motion practice happening sequentially rather

20   than simultaneously.

21             THE COURT:  Mr. Cassell, do you want the rest of the

22   defendants to answer or move to dismiss without waiting for

23   Ms. Maxwell?

24             MR. CASSELL:  Yes, your Honor.

25             THE COURT:  I thought that would be the response,

hbs2doeA

1      so --

2                    MR. MILLER:  That's fine, your Honor.

3                    THE COURT:  -- that motion schedule stands.

4              Okay.

5                    MR. CASSELL:  Mr. Pottinger may want to step in on

6      this, but we would like to file a single response to all of the

7      supplemental and various motions to dismiss coming in from the

8      various defendants, so we would ask for an opportunity to

9      respond with one single response 14 days after all of the new

10     information comes in from the various defendants.

11                   THE COURT:  I assume for everyone but Ms. Maxwell.

12                   MR. CASSELL:  Yes, your Honor.

13                   THE COURT:  It seems reasonable to me.  Consolidated

14     response by the plaintiff 14 days after the supplemental papers

15     by the defendants.

16              And then the reply?

17                   MR. MILLER:  Your Honor, we respectfully request 14

18     days after we receive the response for the reply brief.  And I

19     say that without knowing how that lands in terms of holidays,

20     towards the end of December.

21              Could I suggest this?  Rather than set dates right now

22     for the response and the reply, I can tell you, on behalf of

23     the clients I represent -- and I suspect it is true for the

24     other defendants -- that we won't object to a briefing schedule

25     that consolidates the motions other than Maxwell's, but perhaps

hbs2doeA

1    we could meet and confer on that issue and submit a proposed

2    schedule to the court once we have a protective order issued

3    from the court.

4                THE COURT:  That's fine by me.

5                Mr. Cassell?

6                MR. CASSELL:  That sounds like an excellent approach.

7    We agree.

8                THE COURT:  Okay.  So submit the proposed schedule to

9    me.

10                Anything else?  All right.  Good afternoon all.

11                MR. CASSELL:  Thank you, your Honor.

12                THE COURT:  Sure.

13                MR. PELUSO:  Thank you, your Honor.

14                MR. MILLER:  Thank you, your Honor.

15                              oOo

16

17

18

19

20

21

22

23

24

25