**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SARAH RANSOME[1]

     *Plaintiff*,

             v.

JEFFREY EPSTEIN, GHISLAINE MAXWELL,
SARAH KELLEN, LESLEY GROFF and
NATALYA MALYSHEV,

     *Defendants*.

---

No. 17 Civ. 00616 (JGK)

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

Sigrid McCawley
BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Boulevard
Suite 1200
Fort Lauderdale, FL 33301

---

[1] Plaintiff originally filed this action under the pseudonym "Jane Doe 43," but is now proceeding under her real name.

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ....................................................................................................... 1

BACKGROUND .......................................................................................................... 4

ARGUMENT ............................................................................................................... 6

I.      THE FACTS AND BACKGROUND REGARDING THE PRIOR PROCEEDINGS
        ARE PROPER AND SHOULD NOT BE STRICKEN.............................................. 6

II.     MS. RANSOME HAS PROPERLY PLED A CLAIM FOR VIOLATIONS OF THE
        SEX TRAFFICKING STATUTE....................................................................... 9

        A.      Ms. Ransome Has Successfully Pled Fraud and/or Coercion ................................ 9

        B.      Ms. Ransome Has Properly Pled a Causal Link .................................... 13

        C.      Ms. Ransome Has Successfully Alleged Knowledge Against Defendants
                Groff and Kellen ............................................................... 14

        D.      Ms. Ransome Has Specifically Alleged Reasonable Reliance ........................... 15

        E.      Ms. Ransome Has Successfully Alleged Predicate Acts and Violation of
                Sections 1592, 1593A, and 1594(a)-(c) ................................................ 16

        F.      The Amended Complaint Meets the *Twombly/Iqbal* Pleading Standards ........... 18

III.    MS. RANSOME'S CLAIM IS WELL WITHIN THE STATUTE OF LIMITATIONS . 22

IV.     THIS COURT HAS JURISDICTION OVER THE DEFENDANTS ........................... 27

V.      VENUE IS PROPERLY LAID IN THE SOUTHERN DISTRICT OF NEW YORK..... 29

VI.     THE COURT SHOULD IGNORE MATERIAL OUTSIDE THE COMPLAINT IN
        RULING ON THE MOTION TO DISMISS ................................................... 29

VII.    IF NECESSARY, MS. RANSOME ALSO RENEWS HER REQUEST FOR
        JURISDICTIONAL DISCOVERY .............................................................. 30

CONCLUSION............................................................................................................ 32

CERTIFICATE OF SERVICE ...................................................................................... 33

i

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

<u>Cases</u>

*Abarca v. Little,*
  54 F. Supp. 3d 1064 (D. Minn. 2014)....................................................................... 22

*Anderson v Davis Polk & Wardwell LLP,*
  850 F. Supp. 2d 392 (S.D.N.Y. 2012)......................................................................... 8

*Ashcroft v. Iqbal,*
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)....................................... 18

*Ashland Inc. v. Morgan Stanley &Co.,*
  652 F.3d 333 (2d Cir. 2011)..................................................................................... 16

*Atuahene v. City of Hartford,*
  10 F. App'x 33 (2d Cir. 2001).................................................................................. 20

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)....................................... 18

*Bill Diodato Photography LLC v. Avon Prod., Inc.,*
  No. 12 CIV. 847 RWS, 2012 WL 3240428 (S.D.N.Y. Aug. 7, 2012) ..................... 29

*Crigger v. Fahnstock & Co., Inc.,*
  443 F.3d 230 (2d Cir. 2006)..................................................................................... 15

*D'Attore v. City of New York,*
  No., 10 CIV 6646, 2013 WL 1180395 (S.D.N.Y. Mar. 15, 2013) ......................... 21

*Elias v. City of New York,*
  No. 10–CV–5495, 2010 WL 5475809 (E.D.N.Y. Dec. 30, 2010)........................... 20

*Fonte v. Bd. of Managers of Cont'l Towers Condo.,*
  848 F.2d 24 (2d Cir. 1988)....................................................................................... 29

*Geldzahler v. New York Med. Coll.,*
  663 F. Supp. 2d 379 (S.D.N.Y. 2009)...................................................................... 23

*Greenberg v. Chrust,*
  198 F. Supp. 2d 578 (S.D.N.Y. 2002)...................................................................... 11

*Heskiaoff v. Sling Media, Inc.,*
  No. 17-1094-CV, 2017 WL 5632078 (2d Cir. Nov. 22, 2017)................................ 18

*Hudak v. Berkley Grp., Inc.*,
  No. 3:13-CV-00089-WWE, 2014 WL 354676 (D. Conn. Jan. 23, 2014) ............................... 19

*I.B. Trading, Inc. v. Tripoint Glob. Equities, LLC*,
  No. 17-CV-1962 (JGK), 2017 WL 5485318 (S.D.N.Y. Nov. 15, 2017) .............................. 6, 9

*In re Enterprise Mortgage Acceptance Co., LLC Sec. Litig.*,
  391 F.3d 401 (2d Cir. 2004) ................................................................................................... 22

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  643 F. Supp. 2d 562 (S.D.N.Y. 2009) ...................................................................................... 29

*Kopec v. Coughlin*,
  922 F.2d 152 (2d Cir.1991) ...................................................................................................... 23

*Lama v. Malik*,
  192 F. Supp. 3d 313 (E.D.N.Y. 2016) ...................................................................................... 22

*Martin v. City of New York*,
  No. 07 CIV. 7384 (DC), 2008 WL 1826483 (S.D.N.Y. Apr. 23, 2008) .................................. 20

*Nagelberg v. Meli*,
  No. 17 CIV. 2524 (LLS), 2017 WL 5201446 (S.D.N.Y. Oct. 27, 2017) .................................. 9

*Precision Assocs., Inc. v. Panalpina World Transp., (Holding) Ltd.*,
  No. CV-08-42 JG VVP, 2013 WL 6481195 (E.D.N.Y. Sept. 20, 2013) .................................. 20

*Schlaifer Nance & Co. v. Estate of Andy Warhol*,
  119 F.3d 91 (2d Cir. 1997) ....................................................................................................... 16

*Schramm v. Krischell*,
  84 F.R.D. 294 (D. Conn. 1979) .................................................................................................. 7

*Tardibuono-Quigley v. HSBC Mortg. Corp. (USA)*,
  No. 15-CV-6940 (KMK), 2017 WL 1216925 (S.D.N.Y. Mar. 30, 2017) ............................... 20

*Townes v. City of New York*,
  176 F.3d 138 (2d Cir. 1999) ..................................................................................................... 21

*United States v. Marcus*,
  487 F. Supp. 2d 289 (E.D.N.Y. 2007) ................................................................................... 9, 12

*United States v. Paris*,
  No. CR 03:06-CR-64(CFD), 2007 WL 3124724 (D. Conn. Oct. 24, 2007) ........................... 12

*Vassilatos v. Ceram Tech Int'l, Ltd.*,
  92 Civ. 4574, 1993 WL 177780 (S.D.N.Y. May 19, 1993) ..................................................... 23

**Statutes**

18 U.S.C. § 1591 ................................................................................................. *passim*

18 U.S.C. § 1591(a)(2) ....................................................................................... 12

18 U.S.C. § 1591(e)(3) ....................................................................................... 13

18 U.S.C. § 1595 ................................................................................................. 21

**Rules**

Fed. R. Civ. P. 9(b) ............................................................................................. 9

Fed. R. Civ. P. 12(b) ........................................................................................... 9

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 6

Fed. R. Civ. P. 12(f) ........................................................................................... 6

Plaintiff Sarah Ransome ("Ms. Ransome"), by and through her undersigned counsel, opposes Defendants' Motions to Dismiss[2], and states as follows.

## INTRODUCTION

Ms. Ransome brings a one-count cause of action against Defendants Jeffrey Epstein, Ghislaine Maxwell, Sarah Kellen, Lesley Groff, and Natalya Malyshev (collectively, the "Epstein Defendants" or "Defendants") for engaging in commercial sex trafficking in violation of 18 U.S.C. §1591. The Epstein Defendants insultingly belittle the significant abuse by labelling the trafficking Ms. Ransome endured as a "consensual relationship" between a "young woman" and an "older man." There was nothing "consensual" about the coercion and abuse that Ms. Ransome suffered at the hands of convicted sex offender Jeffrey Epstein and his enablers. The fact that Ms. Ransome suffered in silence for many years and finally mustered the courage to speak out against her abusers should be applauded, not condemned. Going many steps too far, Defendants also claim that Ms. Ransome's trafficking by Epstein was not a "commercial sex act" because ███████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████ Epstein Mot. to Dismiss at 19. Epstein and his enablers' acts were not ███████ – they were malicious and calculated, and knowingly intended to cause Ms. Ransome to engage in commercial sex acts. Remember, Ms. Ransome was not Mr. Epstein's first victim. As alleged in the Amended Complaint:

> "[i]n 2005, Defendant Epstein and numerous co-conspirators within the venture and enterprise were subjects of a Palm Beach, Florida Police Department criminal investigation which revealed that Defendant Epstein has engaged in sexual activities with dozens of young teenage school children. Each child identified in that particular investigation was lured into Defendant Epstein's Palm Beach

---

[2] Plaintiff responds to Defendants' Motion to Dismiss [DE 80 and 83] and Supplemental Motion to Dismiss [DE 104, 105 and 111] together in this consolidated response.

mansion with a promise that she would receive money from providing him with a body massage, although once there, each young female was made to engage in sexual acts in order to receive the promised compensation…The United States Attorney's investigation continued from 2006 through September 2007 at which time a Non-Prosecution Agreement was signed between Jeffrey Epstein and the United States Attorney's Office deferring federal prosecution of Defendant Epstein and his numerous co-conspirators, including Defendants Kellen and Groff, each named by the Federal Government as co-conspirators for identified federal sex crimes against more than 30 minors."

*See* McCawley Decl. at Exhibit 1, Am. Compl. at ¶¶ 24-26.  As explained in the Amended Complaint, Epstein had perfected a scheme of recruiting young females for illegal sexual purposes for himself and his business associates.  One of the most remarkable facts of this case is the timing of the Defendants' abuse of Ransome; Epstein and his co-conspirators, including Kellen and Groff, knew they were being investigated by State and Federal authorities in Florida for the commission of serious sex offenses against dozens of minor children at the same time they brazenly continued their trafficking scheme to victimize Ransome.  Epstein's attorneys were in mid-negotiations with Federal Prosecutors while Epstein was committing new sex offenses against Ransome, and the United States Attorney's Office for the Southern District of Florida had already uncovered how the scheme of recruiting victims operated.

 Defendants' system worked by having the recruiters "inform target victims that Epstein possessed extraordinary wealth, power, resources and influence; that he was a philanthropist who would help female victims advance their careers and lives; and that the recruits needed only to provide Epstein with body massages in order to avail themselves of his financial assistance and influence.  In fact, however, these representations were fraudulent.  The young females were actually required to perform intimate sexual acts at the Defendants' direction and the Defendants did not help nor intend to help advance the victims' careers."  *See* McCawley Decl. at Exhibit 1 at ¶ 16.  And, as further alleged in the Amended Complaint: "[t]he Defendants, led primarily by

Defendants Epstein and Maxwell, fulfilled Epstein's compulsive need for sex with young females by preying on their personal, psychological, financial and related vulnerabilities.  The Defendants' tactics included promising the victims money, shelter, transportation, gifts, employment, admission into educational institutions, educational tuition, protection and other things of value in exchange for sex.  Defendants also took possession of the victims' passports to coerce compliance with their demands.   Defendants also trafficked young females to Epstein's friends and acquaintances in order to secure financial and other benefits as well as social, educational and business connections."  *Id.* at ¶ 18.

Ms. Ransome was recruited in the same way as so many of the victims that came before her.  As explained in the Amended Complaint, "[b]eginning in approximately October 2006 and continuing through April 2007, Defendants recruited Plaintiff into their sexual enterprise by fraudulently promising to use their connections and resources to secure her admission to an institution of higher education at the expense of Defendant Epstein."  *Id.* at ¶ 34.  The promises were followed by threats. As alleged in the Amended Complaint: "Maxwell and Epstein also threated Plaintiff that, while they had the ability to advance her education and career, they also had the ability to make sure that Plaintiff would not obtain formal education or modeling agency contracts if she failed to provide the sexual favors desired by Defendant Epstein or abide by the instructions give her by Defendants Epstein, Groff, Kellen and Maxwell."  *Id.* at ¶ 41.  Epstein repeatedly required Ms. Ransome to engage in sexual acts during the massages "and made it known to Plaintiff that further sex would be required in order for her to obtain assistance he promised her and to avoid Defendants' threatened retaliation against her if Plaintiff did not perform as demanded."  *Id.* at ¶ 43.

In ruling on a motion to dismiss, the Court must take all allegations in the Amended Complaint as true and all inferences are drawn in favor of the plaintiff in determining whether she has stated a cause of action. Ms. Ransome has properly pled all elements of her claim under 18 U.S.C. § 1595, and the associated underling statutes.  Defendants have not met the standard for a motion to dismiss.  Accordingly, Defendants' motions to dismiss should be denied in its entirety.

## **BACKGROUND**

As alleged in detail in the Amended Complaint, Epstein, alongside Maxwell, Kellen, Groff, and Malyshev, recruited and trafficked hundreds of young women in an elaborate sex trafficking venture and enterprise.  Through Epstein's considerable means, wealth, and power, he sexually abused these women for his own sexual desires and further trafficked some of them to his powerful friends and other individuals. Ms. Ransome was one of these victims, having been recruited into Epstein's sexual enterprise in October 2006.  Malyshev, one of Epstein's many recruiters, met Ms. Ransome and introduced her to Epstein. Malyshev "described [Epstein] as a wealthy philanthropist who regularly used his wealth, influence and connections to help financially poor females like Plaintiff achieve their personal and professional goals and aspirations."  *See* McCawley Decl. at Exhibit 1, Am. Compl. at ¶ 36.  Epstein, as well as Maxwell, Kellen, and Groff, told Ms. Ransome that Epstein would use his wealth and influence to have Ms. Ransome admitted into the Fashion Institute of Technology (F.I.T.) – in exchange for Ms. Ransome's providing massages. Ms. Ransome relied on Defendants' representations. As the Amended Complaint states, "[b]etween October 2006 and May 2007, Defendants Maxwell, Kellen, and Groff each also confirmed and reiterated this promise to Plaintiff many times, each telling Plaintiff that Epstein would use his wealth and connections to advance Plaintiff's education."  *Id*. at ¶ 38.  Further, "Epstein and the other Defendants represented to Plaintiff in manners that were persuasive, credible, and reasonable

4

to Plaintiff, as they would have been to any other person similarly situated, that they had the political, business, financial, social, educational, and other influence and connections sufficient to arrange for and insure her admission into F.I.T. or a similar school of higher learning." *Id.* at ¶ 40.

However, with the Defendants' promise came a terrible price. From October 2006 to in and around April/May 2007, the Epstein Defendants sexually abused and trafficked Ms. Ransome. She was instructed to provide "body massages" for Epstein in New York and in the Virgin Islands, which were converted into a sexual act each time. As pled in the Amended complaint, "Defendant Maxwell frequently controlled the assignment, or 'rotation,' of Plaintiff and the other young females concerning the time, place and manner of the sex acts they were told to provide to Defendant Epstein. Defendant Maxwell also gave instructions on how to perform certain sexual techniques on Epstein. Defendants Maxwell and Epstein also required Plaintiff to engage in sex acts with other females." *Id.* at ¶ 47. While Defendants coerced her into continued sexually compliance with false promises of a formal education, they also threatened her that they had the ability to hurt her and ensure that she would not receive an education if she did not comply. Ultimately, Defendants made good on their threats. They verbally abused her, physically restrained her when she tried to escape from Epstein's island, confiscated her passport, pressured her to lose weight to the point of malnutrition ("she underwent a diet and lowered her body weight from 57 kilograms (approximately 125 pounds) to 52 kilograms (approximately 114 pounds)" (*See* McCawley Decl. at Exhibit 1 at ¶ 57)), and refused to help her get admitted into F.I.T. or any other school. Indeed, "Defendants inflicted serious emotional and psychological harm on Plaintiff as a means of coercing her to continue engaging in commercial sex acts with Epstein and others." *Id.*

In May 2007, Ms. Ransome fled from the United States in order to get away from Epstein and the other Defendants. As alleged in the Amended Complaint, "[i]n and after May 2007,

Defendants actively concealed and covered up what they had done to Plaintiff and other similarly situated females. Defendant's cover-up included efforts to intimidate witnesses who might provide corroborating testimony to Plaintiff as well as destruction of documents and other evidence regarding what they had done." *Id*. at ¶ 65.

## ARGUMENT

"In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the Amended Complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiffs' favor. The Court's function on a motion to dismiss is 'not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient.'   The Court should not dismiss the Amended Complaint if the plaintiffs have stated 'enough facts to state a claim to relief that is plausible on its face.'   'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"   *I.B. Trading, Inc. v. Tripoint Glob. Equities, LLC*, No. 17-CV-1962 (JGK), 2017 WL 5485318, at *1 (S.D.N.Y. Nov. 15, 2017) (internal citations omitted).

## I.   THE FACTS AND BACKGROUND REGARDING THE PRIOR PROCEEDINGS ARE PROPER AND SHOULD NOT BE STRICKEN.

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████   *Id.*   On the contrary, the Defendants have not met the standard to strike, and Ms. Ransome has properly included these contextually necessary facts in her Amended Complaint.

A court will only strike pleadings if the material is "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f). "Such motions are not favored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation. If there is any doubt as to the possibility of relevance, a judge should err on the side of denying a Rule 12(f) motion, especially if the presence of the material at issue does not prejudice the moving party." *Schramm v. Krischell*, 84 F.R.D. 294, 299 (D. Conn. 1979) (denying motion to strike).

Here, Ms. Ransome has properly included allegations that are directly relevant to her claim of sex trafficking. Paragraphs 11 through 33 of her Amended Complaint are crucial to pleading the circumstances surrounding her trafficking, and the coercion and force whereby the Defendants trafficked her. These allegations explain how Epstein uses his wealth and power to sexually abuse young girls, and how his co-Defendants helped recruit them. These allegations are relevant to the extent that they show the Defendants' modus operandi for trafficking and sexually abusing girls in their criminal enterprise, of which Ms. Ransome was a direct victim. These facts demonstrate knowledge and motive of the Defendants as well as demonstrate that the Defendants were indeed an operating group of co-conspirators who had operated in concert as such for years. As stated in the Complaint, they show that "[b]y the time Plaintiff was recruited into victimization, each Defendant had years of experience perfecting methods of coercion, understanding Epstein's requirements, and becoming more loyal to the continuance and survival of the venture and enterprise." *See* McCawley Decl. at Exhibit 1, Am. Compl. at 32. There is no prejudice to the Defendants and the allegations have probative significances, as they are part and parcel of Ms. Ransome's sex trafficking claim.

As one illustration of the importance of these allegations to the case, the Amended Complaint alleges that Defendant Epstein, acting in concert with the other co-conspirators, took steps to conceal evidence from law enforcement authorities (*Id*. at ¶ 31) – evidence that presumably remains concealed from Ms. Ransome as well even today.  Ms. Ransome intends to argue at the trial in this case that, to the extent some evidence related to her trafficking may be missing, it is due to the criminal concealment of the Defendants.  The jury is entitled to know the circumstances that would have prompted the Defendant to take such extraordinary and criminal action – specifically, their fear of potential federal indictment.

As an additional illustration of the importance of these allegations, the Amended Complaint also alleges a continuing cover-up – extending beyond May 2007 – in which the Defendants attempted to "intimidate witnesses who might provide corroborating testimony to Plaintiff as well as destruction of documents and other evidence of what they had done."  *See* McCawley Decl. at Exhibit 1 at ¶ 65.  Here again, it is contextually necessary to explain why the Defendants would be intimidating witnesses and destroying documents, which is what the allegations about related criminal proceedings provide.

████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████ Here, the references to the former Epstein proceedings are certainly not taunts, but are crucial allegations to the circumstances of this case.  Accordingly, the Court should deny Defendants' motion to strike.

## II.   MS. RANSOME HAS PROPERLY PLED A CLAIM FOR VIOLATIONS OF THE SEX TRAFFICKING STATUTE

Ms. Ransome has properly pled a claim for violations under 18 U.S.C. § 1591 – which clearly covers the Epstein Defendants' conduct – and has pled in detail fraud, coercion, a causal link, knowledge, and predicate acts. Defendants have not met the standard for dismissal under Rule 12(b), and their motions to dismiss must be denied.

### A.   Ms. Ransome Has Successfully Pled Fraud and/or Coercion

Ms. Ransome has successfully pled fraud under the heightened standard under Fed. R. Civ. P. 9(b).  A complaint alleging fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *I.B. Trading,* 2017 WL 5485318, at *2 (denying motion to dismiss fraud claim) (internal citations omitted); *Nagelberg v. Meli*, No. 17 CIV. 2524 (LLS), 2017 WL 5201446, at *3 (S.D.N.Y. Oct. 27, 2017) (same).

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████  the sex trafficking statute covers any relationship that meets the elements of the statute, and labelling it as an ████████████████████████  does not change the fact that Ms. Ransome was sexually trafficked.

In *United States v. Marcus*, 487 F. Supp. 2d 289, 304 (E.D.N.Y. 2007), *rev'd on other grounds*, 538 F.3d 97 (2d Cir. 2008), the defendant was convicted under 18 U.S.C. § 1591 for acts of sex trafficking in what began as an adult, consenting relationship. He appealed his sentence and tried to argue that the sex trafficking statute was "never meant to regulate conduct that occurs within a domestic, intimate relationship." *Id.* at 304.  The court was unconvinced, finding this argument "nonsensical." *Id.*  It held that a commercial sex act is "quite broadly defined" under

9

the statute, and so long as the elements of the statute are present, the "mere existence of a past or present domestic, intimate relationship" does not preclude meeting the definition under the statute. *Id.*

Here, Ms. Ransome's relationship with Epstein is clearly covered under the sex trafficking statute, as she has pled that the nature of the relationship was based on fraud and coercion.  The Amended Complaint satisfies all of these elements in numerous paragraphs, including:

- "Malyshev introduced Plaintiff to **Defendant Epstein**, who **confirmed to Plaintiff that he would use his wealth and influence to have Plaintiff admitted into The Fashion Institute of Technology (known as "F.I.T.") in New York City or into a similar institute of higher learning offering a curriculum of fashion industry training**." *See* McCawley Decl. at Exhibit 1, Am. Compl. at ¶ 38 ((1) specifying fraudulent statement; (2) identifying speaker).

- "**Between October 2006 and May 2007**, **Defendants Maxwell, Kellen, and Groff** each also confirmed and reiterated this promise to Plaintiff many times, **each telling Plaintiff that Epstein would use his wealth and connections to advance Plaintiff's education**." *Id.* at ¶ 38 ((1) specifying fraudulent statement; (2) identifying speaker; (3) stating when statements were made).

- "More specifically, **each of the Defendants** last verified this information that **Epstein was using his connections to ensure Plaintiff was admitted  into F.I.T. in exchange for Plaintiff's continued sexual cooperation with Epstein** in **March or April of 2007**." *Id.*

- "These false and fraudulent representations included **Defendants' telling Plaintiff that Epstein would use his connections to have her admitted into F.I.T. or a similar institute, college, university or school of higher learning and provide her with employment opportunities**." *Id.* at ¶ 40 ((1) specifying fraudulent statement; (2) identifying speaker).

- "In furtherance of their venture and enterprise, Defendants provided living quarters for Plaintiff at **301 East 66th Street, New York, in the Southern District of New York**; a car service for Plaintiff to use as needed; a cell phone; and other valuable consideration in order to maintain Plaintiff's sexual compliance.  **Each of the Defendants** told Plaintiff she would obtain the benefits of a place to live and phone

10

and transportation as long as she remained compliant with their demands that she service Epstein sexually." *Id*. at ¶ 52 ((3) stating where statements were made).

- "The relationship between Plaintiff and Defendants Epstein and Maxwell was defined and characterized by **Defendant Epstein's** and **Defendant Maxwell's** frequent and persistent fraudulent representations that **they would provide Plaintiff with a formal education and career advancement if she provided sex to Defendant Epstein and others in the times, places and manners demanded by Defendants**. **Defendants Groff and Kellen** each also told Plaintiff that **Defendant Epstein would advance Plaintiff's education and career in order to coerce Plaintiff into sex**. **Defendant Kellen** told Plaintiff that Epstein had done the same for her career." *Id*. at ¶ 53 ((1) specifying fraudulent statement; (2) identifying speaker).

- "In fact, however, these representations were knowingly false, were not acted upon by Defendants, and were made by Defendants Epstein, Groff, Kellen, and Maxwell **solely for the purpose of maintaining Plaintiff's financial dependence on, emotional vulnerability to, and sexual compliance with Defendant Epstein's demands**. The other Defendants intentionally repeated these representations and intentionally made statements **designed to convince Plaintiff that the representations were true and could be relied upon**. These representations and statements were made to Plaintiff **in furtherance of the sex trafficking venture and enterprise for which they were each employed**." *Id*. at ¶ 53 ((4) explaining why statements were fraudulent).

- "All such representations, promises, and threats were made **solely for the purpose of coercing and otherwise inducing Plaintiff into prolonged sexual compliance**. Defendants knowingly benefitted financially and received things of value as a result of coercing and inducing Plaintiff into sexual compliance and otherwise participating in their illegal venture and enterprise." *Id.* ¶ 66 ((4) explaining why statements were fraudulent).

Accordingly, Ms. Ransome has satisfied the heightened pleading standard for fraud.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████ (internal citation omitted).  Here, Ms. Ransome

has pled Defendants' intent to deceive her and has given the specific reason for why:

> [The representations] … were not acted upon by Defendants, and were made by Defendants Epstein, Groff, Kellen, and Maxwell **solely for the purpose of maintaining Plaintiff's financial dependence on, emotional vulnerability to, and sexual compliance with Defendant Epstein's demands**.  The other Defendants intentionally repeated these representations and intentionally made statements designed to convince Plaintiff that the representations were true and could be relied upon.  These representations and statements were made to **Plaintiff in furtherance of the sex trafficking venture and enterprise for which they were each employed.**

*See* McCawley Decl. at Exhibit 1, Am. Compl. at ¶ 53.  This is far more than a naked assertion

that Defendants never intended to perform future acts, but it instead shows the specific reason why

Defendants had to lie to Ms. Ransome: to maintain her dependence on them for sexual compliance.

Accordingly, Ms. Ransome has successfully pled the existence of the intent not to perform as an

element of fraud.

████████████████████████████████████████████

██████████████████████████████ Under the sex trafficking statute,

Ms. Ransome need only show that Defendants used fraud **or** coercion in causing Ms. Ransome to

engage in commercial sex acts. *See* 18 U.S.C. § 1591(a)(2) ("… means of force, threats of force,

fraud, coercion … **or** any combination of such means will be used to cause the person to engage

in a commercial sex act …"); *United States v. Paris*, No. CR 03:06-CR-64(CFD), 2007 WL

3124724, at *12 (D. Conn. Oct. 24, 2007) (collecting cases) ("Force, fraud and coercion are

alternate means to accomplish a single element"); *United States v. Marcus*, 487 F. Supp. 2d 289,

308 (E.D.N.Y. 2007) (describing "force, fraud, or coercion" as single element of § 1591).

Nevertheless, Ms. Ransome has pled coercion in her Amended Complaint. The Amended

Complaint details how the Defendants coerced her with promises of an education, living quarters,

and other benefits "in order to coerce her into sexual compliance" and "as an inducement to provide sex." *See* McCawley Decl. at Exhibit 1 at ¶ 48, 50.  It also details how Defendants "threatened retaliation against her if Plaintiff did not perform as demanded" and "threatened Plaintiff with serious harm, as well as serious psychological, financial, and reputational harm, compelling Plaintiff to perform and continue performing the commercial sexual activity demanded by Defendants." *Id.* at ¶¶ 43, 48, 57.  And the Amended Complaint alleges that the Defendants "used possession and control of Plaintiff's passport to induce and coerce Plaintiff into performing sexual acts with Epstein and others." *Id.* at ¶ 45, *see also id.* at ¶ 51.  And the Amended Complaint alleges that "[d]uring many sexual encounters, Defendant Epstein gave Plaintiff no option, opportunity, or choice not to participate in the prescribed sexual acts." *Id.* at ¶ 46; *see also id.* at ¶ 57.  There can be no doubt that Ms. Ransome has properly pled coercion as defined by the sex trafficking statute.

### B.      Ms. Ransome Has Properly Pled a Causal Link

Ms. Ransome has properly pled a causal link between Defendants' fraudulent and coercive acts and Ms. Ransome engaging in commercial sex acts.

> Through these and other actions, the Defendants intended to cause, and did cause, Plaintiff to believe that failure to perform the actions they requested would result in physical restraint and potential harm to her person, as well as harm to her reputation, employability, and stable state of mind.

*See* McCawley Decl. at Exhibit 1 at ¶ 49. In order for Ms. Ransome to benefit, and continue benefitting from Defendants' services and favors, Ms. Ransome had to keep providing commercial sex acts to Epstein. ██████████████████████████████ the Amended Complaint makes it more than clear that her sex acts were the direct result of fraudulent statements, coercion, and force.

██████████████████████████████████████████████████████

████████████████████████████████████████ "The term 'commercial

13

sex act' means any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3).  As pled in the Amended Complaint, Defendant Epstein's "sex acts were commercial in nature, because the Defendants promised to provide financial and other compensation to the females in exchange for providing sex acts to Epstein."  *See* McCawley Decl. at Exhibit 1 at ¶ 20.  Defendants' contentions otherwise are unavailing.

**C.    Ms. Ransome Has Successfully Alleged Knowledge Against Defendants Groff and Kellen**

As it pertains specifically to Defendants Groff and Kellen, Ms. Ransome has pled that Groff and Kellen not only had knowledge of Defendants' violations of the sex trafficking statute, but also made fraudulent and coercive promises to Ms. Ransome in order to have her engage in commercial sex acts:

- Between October 2006 and May 2007, Defendants Maxwell, **Kellen**, and **Groff** each also confirmed and reiterated this promise to Plaintiff many times, each telling Plaintiff that Epstein would use his wealth and connections to advance Plaintiff's education.  More specifically, **each of the Defendants** last verified this information that Epstein was using his connections to ensure Plaintiff was admitted into F.I.T. in exchange for Plaintiff's continued sexual cooperation with Epstein in March or April of 2007.  *See* McCawley Decl. at Exhibit 1, Am. Compl. at ¶ 38.

- All Defendants, including Maxwell, Epstein, **Groff** and **Kellen**, knew that Plaintiff was actually being recruited for sexual purposes, and each knowingly and deliberately made false representations to ensure that Plaintiff would cooperate in fulfilling Epstein's sexual desires.  *Id*. at ¶ 40.

- Defendants **Groff** and **Kellen** each also told Plaintiff that Defendant Epstein would advance Plaintiff's education and career in order to coerce Plaintiff into sex.  *Id*. at ¶ 53.

- Defendant **Groff** monitored Plaintiff's progress in losing weight and continued to communicate with Plaintiff about Plaintiff's application to be admitted into F.I.T. as part of the Defendants' ruse to coerce Plaintiff to return to the United States for sex.  Defendant **Groff** was aware of the coercion Epstein and Maxwell were applying to Plaintiff and acted to help further that coercion.  *Id*. at ¶ 57.

14

- As part of their scheme, Epstein and **Groff** told Plaintiff that she should fill out an application for admission to F.I.T., and supporting essay, and send it to Epstein for his review. (…) **Groff** also made the same representations to plaintiff on Epstein's behalf.  Plaintiff reasonably relied on these representations by Epstein and Groff. *Id*. at ¶ 59.

### D.    Ms. Ransome Has Specifically Alleged Reasonable Reliance

Ms. Ransome has specifically pled that she reasonably relied on Defendants' representations that they would help her get into F.I.T. if she complied with their sex trafficking scheme. ███████████████████████████████████████ ███████████████████████████████████████████ On the contrary, the entire Amended Complaint is brimming with allegations – which must be accepted as true – that explain why she reasonably relied on Defendants' representations.  *See* McCawley Decl. at Exhibit 1, Am. Compl. at ¶ 40 ("Plaintiff reasonably relied on these representations and had a credible basis for such reliance, including the credible representations of Epstein and the other Defendants that they possessed extensive political, business, financial, social, and educational influence and connections."); *see also id.* at ¶ 61.

Epstein and his cohorts are wealthy and powerful, both in how they present themselves and how they actually operate. *See* McCawley Decl. at Exhibit 1 at ¶¶ 11, 12, 16, 22, 36-38, 40.  Ms. Ransome has pled how they portrayed themselves as having the means both to get her into her dream school and make sure that she never gets in, contingent on her cooperation with their sex trafficking scheme. Defendant's contention that this is not reasonable is unpersuasive – powerful, wealthy men like Epstein have tremendous ability to accomplish what they desire using their power and wealth.  Accordingly, Ms. Ransome's allegations concerning reasonable reliance are properly pled.

15



. It is hard to imagine circumstances more different from those that

Ms. Ransome was subjected to.

### E. Ms. Ransome Has Successfully Alleged Predicate Acts and Violation of Sections 1592, 1593A, and 1594(a)-(c)

In addition to pleading violations under Section 1591, Ms. Ransome has also successfully

pled violations of Sections 1592, 1593A, and 1594(a)-(c) of the sex trafficking statute in her

Amended Complaint. She has pled: (1) that Defendants took her passport in order to coerce into

performing commercial sex acts (1592); (2) that Defendants received value in the form of financial

benefits from their knowing violations of 1592 and 1595(a) (1593); (3) that Defendants attempt to

violate 1591 (1594(a)); (4) that Defendants conspired to violate 1592 (1594(b)); and (5) that

Defendants conspired to violate 1591 (1594(c)).

For Section 1592, Ms. Ransome pled facts alleging that Defendants Epstein, Maxwell, and

Kellen, both individually and together, took possession of her passport, in Paragraphs 45, 49, 54,

and 69. Specifically:

- The **Defendants Epstein, Maxwell, and Kellen used possession and control of Plaintiff's passport** to induce and coerce Plaintiff into performing sexual acts with Epstein and others. *See* McCawley Decl. at Exhibit 1, Am. Compl. at ¶ 45.

- On one occasion, after suffering verbal abuse and threats by Defendants Epstein, Maxwell, and Kellen, Plaintiff attempted to escape from Defendant Epstein's private island. A search party led by Defendants Epstein and Maxwell located her and physically returned her to the main house on the island. Through these and other actions, the Defendants intended to cause, and did cause, Plaintiff to believe that failure to perform the actions they requested would result in physical restraint and potential harm to her person, as well as harm to her reputation, employability, and stable state of mind. **Defendants further used possession and control of Plaintiff's passport**, without lawful consent or authority, to restrict Plaintiff's liberty and thereby force her to provide sex to Epstein. *Id*. at ¶ 49.

- As part of the venture and enterprise, **Defendants Epstein, Maxwell, and Kellen took possession of Plaintiff's passport** when she was being trafficked by them, including when she travelled to Epstein's island in the U.S. Virgin Islands. The Defendants took possession of Plaintiff's passport in the course of sexually trafficking Plaintiff and with the intent to violate laws against sex trafficking, including 18 U.S.C. 1591 et. seq. The Defendants used their control of Plaintiff's passport in order to coerce compliance with their demands, including their demands that Plaintiff have sex with Epstein and others. *Id*. at ¶ 54.

For Section 1593A, Ms. Ransome pled facts alleging that all Defendants benefited financially from participating in the sex trafficking venture. *See* McCawley Decl. at Exhibit 1, Am. Compl. at 70. ██████████████████████████████████████ ███████████████████████████████████ But the Defendants overlook the fact that the provision pertains not only to engaging in the underlying sexual events, but to retaining financial benefits. Thus, the statute provides that "[w]hoever knowingly benefits, financially or by receiving anything of value, from participation" in an illegal venture of the type at issue here has violated the applicable criminal chapter. The Amended Complaint alleges that the Defendants obtained financial and other benefits from their illegal enterprise "up to the present in some form or another." *See* McCawley Decl. at Exhibit 1 at ¶ 23; *see also id*. at ¶¶ 18, 30, 32, 66, 70 (all

alleging benefits to Defendants).  As an illustration, until the Defendants divest themselves of the gains from their illegal enterprise, they remain in violation of the law.  Such allegations are all that is required to survive a motion to dismiss.  ███████████████████████████

███████████████████████████████████████████████████████████

████████████████.  The Defendants also fail to recognize that violations of Section 1593A are civilly actionable by operation of 18 U.S.C. § 1595.

And, for Sections 1594(a)-(c), Ms. Ransome pled facts alleging that all Defendants attempted to traffic Ms. Ransome, and conspired to traffic her.  For example, allegations of conspiracy are repeated throughout the Amended Complaint.  *See* McCawley Decl. at Exhibit 1 at ¶¶ 10, 11, 19, 72, 73.  In addition, Ms. Ransome has alleged that it was part of the criminal enterprise for the Defendants to take the passports of young females to coerce compliance with their sexual demands (*Id*. at ¶ 18) and that "Defendants Epstein, Maxwell, and Kellen used possession and control of Plaintiff's passport to induce and coerce Plaintiff into performing sexual acts with others" (*Id*. at ¶ 45).  And in addition, Ms. Ransome has alleged that "Defendant Epstein's wealth, influence, power and connections were used by Defendants Maxwell, Kellen, and Groff, both as an inducement to provide sex (in exchange for promises of support to Plaintiff) and as a means of threatening punishment (in the event Plaintiff refused to comply with Defendants' instructions to provide sex to Epstein and others)."  *Id*. at ¶ 50.  For all these reasons – as well as the reasons explained above – Ms. Ransome has clearly stated a violation of Section 1594(a)-(c).

**F.**      **The Amended Complaint Meets the *Twombly*/*Iqbal* Pleading Standards**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

18

U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed.2d 929 (2007)); *Heskiaoff v. Sling Media, Inc.*, No. 17-1094-CV, 2017 WL 5632078, at *2 (2d Cir. Nov. 22, 2017) (Koeltl, J.).

For all the foregoing reasons in this section, Ms. Ransome's Amended Complaint clearly meets the basic pleading requirements from *Twombly*/*Iqbal* because every allegation she has pled is "plausible on its face."  She has sufficiently alleged facts to show that each of the Defendants has engaged in sex trafficking under the statute.

Furthermore, the Amended Complaint does not engage in any improper "group pleading." The Amended Complaint clearly states which Defendants engaged in which acts:

- "…Natalya Malyshev, was working to recruit young females for Epstein for sex when she approached and recruited Plaintiff."  *See* McCawley Decl. at Exhibit 1, Am. Compl. at ¶ 35.

- "Defendant Epstein, who confirmed to Plaintiff that he would use his wealth and influence to have Plaintiff admitted into The Fashion Institute of Technology (known as "F.I.T.") in New York City or into a similar institute of higher learning offering a curriculum of fashion industry training."  *Id*. at ¶ 38.

- "Defendant Maxwell told Plaintiff she would need to provide Defendant Epstein with body massages in order to reap the benefits of his and Maxwell's connections."  *Id*. at ¶ 39.

- "Defendants Groff and Kellen each also told Plaintiff that Defendant Epstein would advance Plaintiff's education and career in order to coerce Plaintiff into sex.  Defendant Kellen told Plaintiff that Epstein had done the same for her career."  *Id*. at ¶ 53.

- "…Defendants Epstein, Maxwell, and Kellen took possession of Plaintiff's passport when she was being trafficked by them, including when she travelled to Epstein's island in the U.S. Virgin Islands."  *Id*. at ¶ 54.

- "Defendant Groff was aware of the coercion Epstein and Maxwell were applying to Plaintiff and acted to help further that coercion."  *Id*. at ¶ 57.

The language of the Amended Complaint is clear: each and all of the Defendants committed violations of the sex trafficking statute against Ms. Ransome.  "Prior to discovery, plaintiff need

not explain the details of each defendant's role in the planning, funding, and executing defendants' alleged joint telemarketing scheme.  Nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant." *Hudak v. Berkley Grp., Inc.*, No. 3:13-CV-00089-WWE, 2014 WL 354676, at *4 (D. Conn. Jan. 23, 2014); *see also Tardibuono-Quigley v. HSBC Mortg. Corp. (USA)*, No. 15-CV-6940 (KMK), 2017 WL 1216925, at *8 (S.D.N.Y. Mar. 30, 2017) ("The Amended Complaint, although stating that the allegations pertain to 'Defendants' or 'Mortgage Defendants,' provides enough information to put PHH on notice of its alleged role in servicing Plaintiff's mortgage."); *c.f. Precision Assocs., Inc. v. Panalpina World Transp., (Holding) Ltd.*, No. CV-08-42 JG VVP, 2013 WL 6481195, at *12 (E.D.N.Y. Sept. 20, 2013), report and recommendation adopted, No. 08-CV-00042 JG VVP, 2014 WL 298594 (E.D.N.Y. Jan. 28, 2014).

██████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████. None of the Epstein Defendants, including Kellen, can claim that they are not on notice for the claims asserted against them.

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████ Her Amended Complaint, which is at issue for purposes of the motions to dismiss, clearly and plainly articulates her claim for damages.

███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

21

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████

### III.   MS. RANSOME'S CLAIM IS WELL WITHIN THE STATUTE OF LIMITATIONS

Ms. Ransome's claim is unquestionably within the statute of limitations, ██████████

███████████████████████████████████████████████████████ Ms.

Ransome's claim was still "live" in 2008 when the 2008 statutory amendment was enacted

extending the statute of limitations period to ten years.  Under Second Circuit case law, *see, e.g.,*

*In re Enterprise Mortgage Acceptance Co., LLC Sec. Litig.*, 391 F.3d 401, 405-06 (2d Cir. 2004),

this is sufficient to permit an extension of the statute of limitations.  Indeed, a district court within

this Circuit has specifically reached precisely this conclusion with regard to the statutory scheme

at issue here.  *See Lama v. Malik*, 192 F. Supp. 3d 313, 320-24 (E.D.N.Y. 2016) (court applying

ten-year limitations period under 18 U.S.C. § 1595, even though conduct occurred before 2008

amendment, because plaintiff's claim was still "live" in 2008). Accordingly, the ten-year statute

of limitations applies here, not the four-year limit.  ██████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████

Ms. Ransome's claim is well within the ten-year statute of limitations, as very specifically

alleged within the Amended Complaint.  For example, the Amended Complaint specifically

alleges that "each of the Defendants last verified this information that Epstein was using his

connections to ensure Plaintiff was admitted into F.I.T. in exchange for Plaintiff's continued sexual

cooperation with Epstein in March or April of 2007." *See* McCawley Decl. at Exhibit 1, Am. Compl. at ¶ 38. And the Complaint further alleges that, in February 2007, "in reliance on promises made by the Defendants, Plaintiff returned to New York City, in the Southern District of New York, and was promptly ordered by Defendant Maxwell to have sex with Defendant Epstein. Defendants Maxwell, Kellen, Groff, and Epstein each fraudulently promised Plaintiff again that her sexual compliance would be rewarded with admission to F.I.T. or a comparable college, a promise which they each knew to be false." *Id.* at ¶ 61. And finally, the Complaint also alleges an on-going cover-up of the criminal enterprise that occurred "[i]n and after May 2007." *Id.* at ¶ 65. Because Ms. Ransome filed her complaint on January 26, 2017, any one of these allegations of actions by the conspirators during February to May (and even later) in 2007 are alone is sufficient to satisfy the ten-year statute of limitations.

██████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████ It is, of course, well-settled law that, in deciding a motion to dismiss, "the Court must limit its analysis to the four corners of the complaint." *Geldzahler v. New York Med. Coll.*, 663 F. Supp. 2d 379, 386 (S.D.N.Y. 2009) (*citing Vassilatos v. Ceram Tech Int'l, Ltd.,* 92 Civ. 4574, 1993

WL 177780 at *5 (S.D.N.Y. May 19, 1993) (citing *Kopec v. Coughlin,* 922 F.2d 152, 154–55 (2d

Cir.1991)).[3]



---

[3]  The Court may also consider documents attached to complaint or incorporated in the complaint

by reference.  *Geldzahler*, 663 F. Supp. 2d at 386.  Those circumstances are not at issue here.



First, Ms. Ransome specifically alleges in her Amended Complaint that she was subject to abuse by the Defendants until she left the United States in May 2017.  For example, she has specifically alleged that "each of the Defendants last verified this information that Epstein was using his connections to ensure Plaintiff was admitted into F.I.T. *in exchange for Plaintiff's continued sexual cooperation with Epstein in March or April or 2007." See* McCawley Decl. at Exhibit 1, Am. Compl. at ¶ 38 (emphasis added).  Her complaint plainly alleges conduct that occurred during the statute of limitations period ten years before the filing of her complaint on January 26, 2007 – which is all that this Court needs to review in ruling on a motion to dismiss.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████

     Defendants are in control of this discovery but tellingly have failed to produce anything to establish their ████████ Indeed, as discussed below, Defendant Epstein has resisted being deposed on this very subject, which would immediately demonstrate that Ms. Ransome's allegations are all true. ████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████

     ████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████   *See* McCawley Decl. at Exhibit 1, Am. Compl. at 15.  Ms. Ransome has clearly

alleged sufficient facts to satisfy her statute of limitations obligations.

## IV.   THIS COURT HAS JURISDICTION OVER THE DEFENDANTS

This Court properly has jurisdiction over all of the Epstein Defendants, ██████████████

██████████████████████.  As pled in the Amended Complaint, Epstein has a 51,000 square

foot mansion located at 9 East 71st Street, New York, NY, in the Southern District of New York,

during the relevant time periods in the complaint, and used this residence "to facilitate the illegal

sex trafficking venture and enterprise described in this Complaint and in furtherance of the venture

and enterprise."  *Id.* at ¶ 12.  Plaintiff also pled that the Defendants' trafficking conduct occurred

in New York.  *Id.* at ¶¶ 20, 28, 45, 52, 55, 60, 61, 63, 76.  This trafficking conduct is specifically

alleged to have occurred in New York City, within the Southern District of New York, after

January 2007.  *Id.* at ¶ 61.  Further, while pleading residence is sufficient by itself to establish

jurisdiction, it is also noteworthy that Epstein has numerous businesses, corporations, and other

contacts in the Southern District of New York, including:

- Epstein Interests, 575 Lexington Avenue, New York, NY 10022
- Epstein Interests, 457 Madison Avenue, New York, NY 10022
- Guardian Life, 355 Lexington Ave Floor 11, New York, NY 10017
- J Epstein Foundation, 457 Madison Avenue, New York, NY 10022
- Milstein Properties, 201 E. 87th Street # 7C, New York, NY 10128
- NES LLC, 9 E. 71st Street, New York, NY 10021
- New York Strategy Group LLC, 457 Madison Avenue, New York NY 10022
- New York Strategy Group LLC 401K Plan, 457 Madison Avenue Floor 7, New York, NY 10022

- Nine East 71st Street Corporation, 575 Lexington Avenue, New York, NY 10022[4]

Further, Defendant Kellen has connections to the addresses of 457 Madison Avenue, New York, NY 10022. She also has a residence at 301 E. 66th Street, Apt. 10B, New York, NY 10065. This New York connection is alleged in the Amended Complaint.  *See* McCawley Decl. at Exhibit 1, Am. Compl. at ¶ 6 ("At all times material to this cause of action Sarah Kellen was a United States citizen, residing in New York, New York (within the Southern District of New York).").

And further, Defendant Groff has connections to New York – properly alleged in the Amended Complaint.  *Id.* at ¶ 8 ("At all times material to this cause of action Leslie Groff was a United States citizen, residing in New York, New York (within the Southern District of New York)."). Groff was actively employed by Epstein during the period that Ms. Ransome was being trafficked and is believed to still be employed by Defendant Epstein.

And Defendant Maxwell had a residence in New York for years before selling it in 2016. At all times material to the present case, Maxwell was living in New York and ████████ ████████████.  Maxwell's business, the Terra Mar Project, has its address in New York. And it is believed Maxwell still resides in New York.  Although she has refused to provide her address.  The Court is, of course, familiar with the difficulty in locating the elusive and peripatetic Ms. Maxwell from prior litigation associated with serving her with the Complaint in this case. But, for present purposes, it is enough to note that that the Amended Complaint alleged that "[a]t all times material to this cause of action Defendant Ghislaine Maxwell was residing in in New York, New York."  *See* McCawley Decl. at Exhibit 1 at ¶ 6.

---

[4] Plaintiff also maintains that a brief jurisdictional deposition of Epstein would establish both jurisdiction and venue, as explained in further detail *infra*.

Jurisdiction is plainly proper.

## V.   VENUE IS PROPERLY LAID IN THE SOUTHERN DISTRICT OF NEW YORK

Venue is also properly laid in the Southern District of New York because a substantial part of the acts, events, and omissions giving rise to this cause of action occurred in this District.  *Id.* at ¶ 9.  As pled in the Amended Complaint and referenced above, Epstein had a residence in the Southern District of New York during the relevant time periods in the complaint. He used this residence "to facilitate the illegal sex trafficking venture and enterprise described in this Amended Complaint and in furtherance of the venture and enterprise."  *Id.* at ¶ 12.  Plaintiff also pled that the Defendants' trafficking conduct occurred in New York City, revolving around this residence. *See* McCawley Decl. at Exhibit 1 at ¶¶ 20, 28, 45, 52, 55, 60, 61, 63, 76.  This trafficking conduct is specifically alleged to have occurred in New York City, within the Southern District of New York, after January 2007.  *Id. at* ¶ 61.  Venue is plainly proper – a fact that is underscore by Defendants' notable silence as to which judicial district they believe is a more appropriate venue.

## VI.   THE COURT SHOULD IGNORE MATERIAL OUTSIDE THE COMPLAINT IN RULING ON THE MOTION TO DISMISS

While the foregoing arguments make clear that the motion to dismiss borders on frivolous, Ms. Ransome specifically objects to all of the material outside of the Complaint to which Epstein refers.[5]  As counsel for the Epstein Defendants must well know, a motion to dismiss must be

---

[5] ███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████.  Should the Court decide not to consider material outside of the Complaint in deciding on the motions to dismiss, the Court is, of course, free to treat Plaintiff's use of the materials in the same way as the Defendants.  Ms. Ransome would also request the opportunity to

determined based on the allegations of the complaint – not other cherry-picked materials and unproved, disputed facts that the Defendants believe are useful to their case. *See, e.g., In re Giant Interactive Grp., Inc. Sec. Litig.*, 643 F. Supp. 2d 562, 573 (S.D.N.Y. 2009) (court not considering evidence outside of complaint in deciding motion to dismiss, denying motion) ("'[T]he evidence advanced by Defendants is not within the four corners of the Complaint, and cannot be considered here.'" (citing *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988)); *Bill Diodato Photography LLC v. Avon Prod., Inc.*, No. 12 CIV. 847 RWS, 2012 WL 3240428, at *4 (S.D.N.Y. Aug. 7, 2012), on reconsideration, No. 12 CIV. 847 RWS, 2012 WL 4335164 (S.D.N.Y. Sept. 21, 2012) ("A Rule 12(b)(6) motion to dismiss challenges only the face of the pleading. Thus, in deciding such a motion to dismiss, 'the Court must limit its analysis to the four corners of the complaint.'" (internal citations omitted)). Accordingly, the Court should not consider the outside-the-complaint materials, specifically the testimony and documents from the *Giuffre v. Maxwell* case. ███████████████████████████████

████████████████████████████████████

██████████████████████████████████████

████████████████████████████████.

## VII.   IF NECESSARY, MS. RANSOME ALSO RENEWS HER REQUEST FOR JURISDICTIONAL DISCOVERY

Ms. Ransome also wishes the record to be clear that, before the Court even considers granting the motion to dismiss, she would be entitled to jurisdictional discovery for the reasons articulated in her November 29, 2017, letter motion to the Court.  While the Court has indicated it

---

submit additional evidence including, but not limited to, an affidavit if the Court is going to look beyond the four corners of the Amended Complaint.

will determine the appropriate time for discovery to be conducted in this case, it remains readily

apparent that even a one-hour telephonic deposition of Epstein will immediate make clear that this

lawsuit is well-founded in all regards, including jurisdiction.

So that the record is clear, Ms. Ransome once again proffers questions that she would ask

as such a deposition and the anticipated answers she would receive from Epstein:

| QUESTION | ANTICIPATED ANSWER |
|---|---|
| Do you have a present connection with the Southern District of New York? | Either "yes" or invocation of Fifth Amendment. |
| Do you own or control corporations with locations in the Southern District of New York? | Either "yes" or invocation of Fifth Amendment. |
| Do you own apartments in the Southern District of New York? | Either "yes" or invocation of Fifth Amendment. |
| Do you currently own a residence in the Southern District of New York? | Either "yes" or invocation of Fifth Amendment. |
| Have you recently visited your residence in the Southern District of New York? | Either "yes" or invocation of Fifth Amendment. |
| Did you use your residence in the Southern District of New York to facilitate an illegal sex trafficking enterprise? | Either "yes" or invocation of Fifth Amendment. |
| How many girls and young women did you sexually trafficking in the Southern District of New York? | Either "dozens and dozens" or invocation of the Fifth Amendment. |
| Did you use your residence in the Southern District of New York to coerce Ms. Ransome into having sex with you? | Either "yes" or invocation of Fifth Amendment. |
| Did you make threats to Ms. Ransome to coerce her into have sex with you in your residence? | Either "yes" or invocation of Fifth Amendment. |
| Did you falsely and fraudulently promise things to Ms. Ransome in order to obtain sex from her? | Either "yes" or invocation of Fifth Amendment. |
| Did you make false and fraudulent representations to Ms. Ransome after January 31, 2017? | Either "yes" or invocation of Fifth Amendment. |
| Did you make any of the false and fraudulent representations in your residence in the Southern District of New York? | Either "yes" or invocation of Fifth Amendment. |
| Please state with particularity the fraudulent representations you made to Ms. Ransome to secure sex from her? | Either a particular description of the fraudulent representations or invocation of Fifth Amendment. |

31

Of course, because Epstein will have an opportunity to reply to this response, he can state on the record whether any of the anticipated answers that would be given at the deposition are in any way incorrect. And, of course, all of these anticipated answers make clear that this lawsuit will succeed once the Court denies the motion to dismiss.

## CONCLUSION

For all the foregoing reasons, the Court should deny Defendants' Motions to Dismiss in their entireties.

Dated: February 26, 2018

Respectfully submitted,

BOIES SCHILLER FLEXNER LLP

*/s/ Sigrid McCawley*
Sigrid S. McCawley (*Admitted Pro Hac Vice*)
Meredith Schultz (*Admitted Pro Hac Vice*)
Boies Schiller Flexner LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
(954) 356-0011

Bradley J. Edwards, Esq. (*Admitted Pro Hac Vice*)
Stanley Pottinger, Esq.
EDWARDS POTTINGER LLC
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
Tel: (954) 524-2820

Paul G. Cassell (*Admitted Pro Hac Vice*)
S.J. Quinney College of Law
University of Utah
383 University St.
Salt Lake City, UT 84112
(801) 585-5202[6]

---

[6] This daytime business address is provided for identification and correspondence purposes only and is not intended to imply institutional endorsement by the University of Utah for this private representation.

32

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on February 26, 2018, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system. I also certify that the foregoing document is being served to all parties of record via transmission of the Electronic Court Filing System generated by CM/ECF.

Kimo S. Peluso
Sher Tremonte, LLP
90Broad Street, 23rd Floor
New York, NY 10004
kpeluso@shertremonte.com
*Counsel for Haddon, Morgan & Foreman, P.C.*

Laura A. Menninger, Esq.
Jeffrey Pagliuca, Esq.
HADDON, MORGAN & FOREMAN, P.C.
150 East 10th Avenue
Denver, Colorado 80203
Email: lmenninger@hmflaw.com
          jpagliuca@hmflaw.com

John E. Stephenson, Jr.
Jonathan D. Parente
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
John.stephenson@alston.com
Jonathan.parente@alston.com

Alexander S. Lorenzo
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
alexander.lorenzo@alston.com
*Counsel for Defendant Sarah Kellen*

Michael Miller
Justin Y.K Chu
Michael A. Keough
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, NY 10036
mmiller@steptoe.com
jchu@steptoe.com
*Counsel for Defendants, Jeffrey Epstein and Lesley Groff*

*/s Sigrid McCawley*
      Sigrid McCawley