**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SARAH RANSOME[1]

     *Plaintiff*,

          v.

JEFFREY EPSTEIN, GHISLAINE MAXWELL,
SARAH KELLEN, LESLEY GROFF and
NATALYA MALYSHEV,

     *Defendants*.

---

No. 17 Civ. 00616 (JGK)

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT GHISLAINE MAXWELL'S MOTIONS TO DISMISS

Sigrid McCawley
BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Boulevard
Suite 1200
Fort Lauderdale, FL 33301

---

[1] Plaintiff originally filed this action under the pseudonym "Jane Doe 43," but is now proceeding under her real name.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

I.  THE FACTS AND BACKGROUND REGARDING THE PRIOR PROCEEDINGS ARE PROPER AND SHOULD NOT BE STRICKEN. ............................................................ 2

II.  MS. RANSOME HAS PROPERLY PLED A CLAIM FOR RELIEF FOR VIOLATIONS OF THE SEX TRAFFICKING STATUTE ....................................................................... 3

    A.  The Trafficking Victims Protection Act Applies to the Coercive and Abusive Conduct of Defendants ........................................................................................... 4

    B.  Ms. Ransome Has Not Improperly Lumped All Defendants Together in Violation of Rule of Civil Procedure 8. ................................................................................. 5

    C.  The Amended Complaint Meets the *Twombly*/*Iqbal* Pleading Standards ............. 7

    D.  Ms. Ransome Has Successfully Pled Fraud with Particularity ............................ 11

    E.  Ms. Ransome Has Specifically Alleged Reasonable Reliance ............................ 11

    F.  Ms. Ransome Has Properly Pled Coercion ......................................................... 11

    G.  Ms. Ransome Has Properly Pled a Causal Link .................................................. 13

    H.  Ms. Ransome Has Successfully Alleged Predicate Acts and Violation of Sections 1592, 1593A, and 1594(a)-(c) ............................................................................... 14

III.  MAXWELL'S ARGUMENTS CONCERNING FURTHER AMENDMENT OF THE COMPLAINT ARE UNAVAILING ............................................................................ 14

IV.  MS. RANSOME'S CLAIM IS WELL WITHIN THE STATUTE OF LIMITATIONS ............................................................................................................ 20

V.  THIS COURT HAS JURISDICTION OVER THE DEFENDANT MAXWELL .......... 23

VI.  VENUE IS PROPERLY LAID IN THE SOUTHERN DISTRICT OF NEW YORK ..... 24

CONCLUSION ................................................................................................................... 24

CERTIFICATE OF SERVICE .......................................................................................... 26

i

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                                      Page

*Abu Dhabi Commercial Banks v. Morgan Stanley & Co., Inc.*,
   651 F. Supp. 2d 155 (S.D.N.Y. 2009)...............................................................................7

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009)...........................................7

*Cruz v. Maypa*,
   773 F.3d 138 (4th Cir. 2014) ......................................................................................22

*Hudak v. Berkley Grp., Inc.*,
   No. 3:13-CV-00089-WWE, 2014 WL 354676 (D. Conn. Jan. 23, 2014) ..................6

*I.B. Trading, Inc. v. Tripoint Glob. Equities, LLC*,
   No. 17-CV-1962 (JGK), 2017 WL 5485318 (S.D.N.Y. Nov. 15, 2017)..........2, 11, 21

*Lama v. Malik*,
   192 F. Supp. 3d 313 (E.D.N.Y. 2016) .......................................................................21

*Landgraf v. USI Film Products*,
   511 U.S. 244 (1994).....................................................................................................21

*Martin v. City of New York*,
   No. 07-cv-7384 DG, 2008 WL 1826483 (S.D.N.Y. Apr. 23, 2008) ...........................7

*Oluoch v. Orina*,
   101 F.Supp.3d 325 (S.D.N.Y. 2015) .........................................................................22

*Precision Assocs., Inc. v. Panalpina World Transp., (Holding) Ltd.*,
   No. CV-08-42 JG VVP, 2013 WL 6481195 (E.D.N.Y. Sept. 20, 2013)....................6

*Schramm v. Krischell*,
   84 F.R.D. 294 (D. Conn. 1979) ...................................................................................3

*Tardibuono-Quigley v. HSBC Mortg. Corp. (USA)*,
   No. 15-CV-6940 (KMK), 2017 WL 1216925 (S.D.N.Y. Mar. 30, 2017) ..................6

*Twahir v. Village Care of New York, Inc.*,
   2011 WL 2893466 (S.D.N.Y July 12, 2011) .............................................................14

*United States v. Marcus*,
   487 F. Supp. 2d 289 (E.D.N.Y. 2007) ...................................................................5, 12

*United States v. Paris*,
    No. CR 03:06-CR-64(CFD), 2007 WL 3124724 (D. Conn. Oct. 24, 2007) .......................... 12

Regulations

18 U.S.C. § 1591 ................................................................................................................ 3, 5

18 U.S.C. § 1591(a) (2006) .................................................................................................... 4

18 U.S.C. § 1591(a)(2) .......................................................................................................... 12

18 U.S.C. § 1595 ........................................................................................................ 1, 14, 21

18 U.S.C. §§ 1592 .................................................................................................................. 2

18 U.S.C. §1593A .................................................................................................................. 2

18 U.S.C. §1594 ..................................................................................................................... 2

Fed. R. Civ. P. 9(b) ............................................................................................................... 11

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 14

Fed. R. Civ. P. 12(f) ............................................................................................................... 3

Rule 12(b) .............................................................................................................................. 4

Plaintiff Sarah Ransome ("Ms. Ransome"), by and through her undersigned counsel, opposes Defendant Ghislaine Maxwell's Motion to Dismiss, and states as follows.

## INTRODUCTION

The Court will recall that service of process issues have delayed this case for more than a year.  After Ms. Ransome served Ms. Maxwell's law firm (Haddon, Morgan and Foreman), the Haddon firm hired another law firm to attempt to avoid service (DE 69).   Now, it turns out that Ms. Maxwell is back to being represented by the very same counsel that Ms. Ransome originally tried to serve back a year ago in February, 2017.

After creating significant delay with her service of process objection, Defendant Maxwell now files  her own Motion to Dismiss, which in actuality is little more than a disguised sur-reply brief attempting to distinguish case law cited in Ms. Ransome's Opposition to Defendant Epstein and Groff's Motion to Dismiss.   But her arguments are just as misplaced as her co-defendants.

Defendant Maxwell cannot run away from the fact that Ms. Ransome's complaint properly alleges that Maxwell was the mastermind behind convicted sex offender Jeffrey Epstein's sex trafficking scheme.  Instead, Maxwell wrongfully attempts to dive into the facts at the Motion to Dismiss stage by taking selective clips from Ms. Ransome's deposition in a different case.  But in doing so, Maxwell leaves out the key testimony that implicates her in the abuse.   Moreover, in ruling on a motion to dismiss, the Court must take all allegations in the Amended Complaint as true and all inferences are drawn in favor of the plaintiff in determining whether she has stated a cause of action. Ms. Ransome has properly pled all elements of her claim under 18 U.S.C. § 1595, and the associated underling statutes.  Maxwell has not met the standard for a motion to dismiss. Accordingly, Maxwell's motion to dismiss should be denied in its entirety.

## ARGUMENT

"In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the Amended Complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiffs' favor. The Court's function on a motion to dismiss is 'not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient.' The Court should not dismiss the Amended Complaint if the plaintiffs have stated 'enough facts to state a claim to relief that is plausible on its face.' 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *I.B. Trading, Inc. v. Tripoint Glob. Equities, LLC*, No. 17-CV-1962 (JGK), 2017 WL 5485318, at *1 (S.D.N.Y. Nov. 15, 2017) (internal citations omitted).

Ms. Ransome has successfully pled all elements necessary to support her claim for relief. As addressed in detail in the sections below, the Trafficking Victims Protection Act (TVPA) does apply to the conduct alleged; the amended complaint does not impermissibly lump all Defendants together; it does plead fraud with particularity; it successfully plead reasonable reliance, coercion, and causation; it properly states a claim under 18 U.S.C. §§ 1592, 1593A, or 1594; it is not barred by the statute of limitations; and it properly lays venue in the Southern District of New York.

## I.   THE FACTS AND BACKGROUND REGARDING THE PRIOR PROCEEDINGS ARE PROPER AND SHOULD NOT BE STRICKEN.

Maxwell repeats her Co-Defendants' assertion that factual allegations contained in the Amended Complaint should be stricken, yet offers no legal arguments or citations in support of this assertion.  Maxwell Mot. to Dismiss at 4.  Indeed, Maxwell's concluding statement that ███████████████████████████████████████████████████ betrays a motivation to strike this material not because it is "immaterial" but because they materially

underlie the claims in this action.  *Id.*  Maxwell has clearly not met the standard to strike, and Ms. Ransome has properly included these contextually necessary facts in her Amended Complaint.

As explained in Ms. Ransome's Opposition to Defendants' Motion to Dismiss, (DE 115), a court will only strike pleadings if the material is "redundant, immaterial, impertinent, or scandalous."  Fed. R. Civ. P. 12(f).  "Such motions are not favored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation.  If there is any doubt as to the possibility of relevance, a judge should err on the side of denying a Rule 12(f) motion, especially if the presence of the material at issue does not prejudice the moving party."  *Schramm v. Krischell*, 84 F.R.D. 294, 299 (D. Conn. 1979) (denying motion to strike).

Here, Ms. Ransome has properly included allegations that are directly relevant to her claim of sex trafficking.  Paragraphs 11 through 33 of her Amended Complaint are crucial to pleading the circumstances surrounding her trafficking, and the coercion and force the defendants applied in trafficking her.  *See* McCawley Decl. at Exhibit 1, Plaintiff Sarah Ransome's Amended Complaint (DE 45). These allegations explain how (among other things) Epstein uses his wealth and power to sexually abuse young girls, and how his co-Defendants helped recruit them.  Ms. Ransome incorporates herein the arguments she made in her Opposition to Defendants' Motion to Dismiss (DE 115 at p. 6) which raised this identical argument. Accordingly, the Court should deny Defendants' motion to strike.

## II.     MS. RANSOME HAS PROPERLY PLED A CLAIM FOR RELIEF FOR VIOLATIONS OF THE SEX TRAFFICKING STATUTE

Ms. Ransome has properly pled a claim for violations under 18 U.S.C. § 1591 – which clearly covers the Maxwell's conduct – and has pled in detail fraud, reasonable reliance, coercion,

a causal link, knowledge, and predicate acts. Defendant Maxwell does not meet the standard for dismissal under Rule 12(b), and her motion to dismiss must be denied.

### A.    The Trafficking Victims Protection Act Applies to the Coercive and Abusive Conduct of Defendants

As an initial matter, Maxwell erects and demolishes a strawman.  She argues that the TVPA forbids sex slavery and then proving (to her satisfaction) that Ms. Ransome did not have her "hands [tied] together with a rope" (Resp. at 6, quoting facts from *Marcus* case) Maxwell concluded that Ms. Ransome must be deemed to have been in an "adult consensual relationship."  Resp. at 7-8. Maxwell does not understand the scope to TVPA, which extends a cause of action to victims forced to engage in commercial sex through means of "force, fraud, or coercion."  18 U.S.C. § 1591(a) (2006). Indeed, the very website Maxwell relies on, National Human Trafficking Hotline, debunks many of Maxwell's arguments as "myths":

> **Myth 4:** *There must be elements of physical restraint, physical force, or physical bondage when identifying a human trafficking situation*.
>
> **Reality: Trafficking does not require physical restraint, bodily harm, or physical force.** Psychological means of control, such as threats, fraud, or abuse of the legal process, are sufficient elements of the crime. Unlike the previous federal involuntary servitude statutes (U.S.C. 1584), the new federal crimes created by the Trafficking Victims Protection Act (TVPA) of 2000 were intended to address "subtler" forms of coercion and to broaden previous standards that only considered bodily harm.
>
> **Myth 9:** *If the trafficked person consented to be in their initial situation or was informed about what type of labor they would be doing or that commercial sex would be involved, then it cannot be human trafficking or against their will because they "knew better."*
>
> **Reality:** Initial consent to commercial sex or a labor setting prior to acts of force, fraud, or coercion (or if the victim is a minor in a sex trafficking situation) is **not relevant to the crime, nor is payment.**

> **Myth 10:** *Foreign national trafficking victims are always undocumented immigrants or here in this country illegally*.

4

> **Reality: Not all foreign national victims are undocumented.** Foreign national
> trafficked persons can be in the United States through either legal or illegal
> means. Although some foreign national victims are undocumented, a significant
> percentage may have legitimate visas for various purposes.

*Id.* at http://humantraffickinghotline.org/what-human-trafficking/myths-misconceptions

Defendant Maxwell is unable to distinguish the *Marcus* case.  In *United States v. Marcus*, 487 F. Supp. 2d 289, 304 (E.D.N.Y. 2007), *rev'd on other* grounds, 538 F.3d 97 (2d Cir. 2008), the defendant was convicted under 18 U.S.C. § 1591 for acts of sex trafficking in what began as an adult, consenting relationship. He appealed his sentence and tried to argue that the sex trafficking statute was "never meant to regulate conduct that occurs within a domestic, intimate relationship." *Id.* at 304.  The court was unconvinced, finding this argument "nonsensical." *Id.*  It held that a commercial sex act is "quite broadly defined" under the statute, and so long as the elements of the statute are present, the "mere existence of a past or present domestic, intimate relationship" does not preclude meeting the definition under the statute. *Id.* Defendant Maxwell's only basis for distinguishing this case is that the abuse involved there was more vulgar than the abuse Ms. Ransome suffered here.  Maxwell's argument is unavailing because the TVPA does not require horrific physical abuse for a claim to proceed and, in any event, Ms. Ransome has not yet had the opportunity to present the extent of the sexual abuse she suffered.

### B.   Ms. Ransome Has Not Improperly Lumped All Defendants Together in Violation of Rule of Civil Procedure 8.

The Amended Complaint does not engage in any improper "group pleading." The Amended Complaint clearly states which Defendants engaged in which acts, as illustrated by the following:

- "…Natalya Malyshev, was working to recruit young females for Epstein for sex when she approached and recruited Plaintiff." *See* McCawley Decl. at Exhibit 1, Am. Compl. at ¶ 35.

- "Defendant Epstein, who confirmed to Plaintiff that he would use his wealth and influence to have Plaintiff admitted into The Fashion Institute of Technology (known as

"F.I.T.") in New York City or into a similar institute of higher learning offering a curriculum of fashion industry training."  *Id*. at ¶ 38.

- "Defendant Maxwell told Plaintiff she would need to provide Defendant Epstein with body massages in order to reap the benefits of his and Maxwell's connections."  *Id*. at ¶ 39.

- "Defendants Groff and Kellen each also told Plaintiff that Defendant Epstein would advance Plaintiff's education and career in order to coerce Plaintiff into sex.  Defendant Kellen told Plaintiff that Epstein had done the same for her career."  *Id*. at ¶ 53.

- "…Defendants Epstein, Maxwell, and Kellen took possession of Plaintiff's passport when she was being trafficked by them, including when she travelled to Epstein's island in the U.S. Virgin Islands."  *Id*. at ¶ 54.

- "Defendant Groff was aware of the coercion Epstein and Maxwell were applying to Plaintiff and acted to help further that coercion."  *Id*. at ¶ 57.

Maxwell herself lists five separate specific allegations in the Complaint against herself in her *Twombly/Iqbal* Argument.  *See* Maxwell Mot. to Dismiss at 10.  That she views them as somehow "implausible" and "conclusory" has no bearing on the fact that each lays out specific conduct that Maxwell is alleged to have committed and thus clearly satisfies Rule 8 in attributing specific conduct to Maxwell.

The language of the Amended Complaint is clear: each and all of the Defendants committed violations of the sex trafficking statute against Ms. Ransome.  "Prior to discovery, plaintiff need not explain the details of each defendant's role in the planning, funding, and executing defendants' alleged joint telemarketing scheme.  Nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant."  *Hudak v. Berkley Grp., Inc.*, No. 3:13-CV-00089-WWE, 2014 WL 354676, at *4 (D. Conn. Jan. 23, 2014); *see also Tardibuono-Quigley v. HSBC Mortg. Corp. (USA)*, No. 15-CV-6940 (KMK), 2017 WL 1216925, at *8 (S.D.N.Y. Mar. 30, 2017) ("The Amended Complaint, although stating that the allegations pertain to 'Defendants' or

'Mortgage Defendants,' provides enough information to put PHH on notice of its alleged role in servicing Plaintiff's mortgage."); *c.f. Precision Assocs., Inc. v. Panalpina World Transp., (Holding) Ltd.*, No. CV-08-42 JG VVP, 2013 WL 6481195, at *12 (E.D.N.Y. Sept. 20, 2013), report and recommendation adopted, No. 08-CV-00042 JG VVP, 2014 WL 298594 (E.D.N.Y. Jan. 28, 2014).

The cases Maxwell cites are readily distinguished. For example, in *Martin v. City of New York*, No. 07-cv-7384 DG, 2008 WL 1826483, at *1 (S.D.N.Y. Apr. 23, 2008), the pro se Plaintiff filed a form complaint that did not contain any allegations against Defendant, North General Hospital nor did the Plaintiff contest the dismissal of Defendant North General Hospital from the action. Those situation here, of course, is vastly different.

### C.      The Amended Complaint Meets the *Twombly/Iqbal* Pleading Standards

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009) (internal quotation omitted).  Ms. Ransome's Amended Complaint clearly meets the basic pleading requirements from *Twombly/Iqbal* because every allegation she has pled is "plausible on its face."

Here again, Maxwell appears to want to merely debate the ultimate credibility of Ms. Ransome's allegations, disguised here as an argument about "plausibility" under *Twombly/Iqbal*. Maxwell has offered no actual argument as to why the allegations in the Amended Complaint are "implausible."  Further, those allegations do far more than "create a plausible inference that Ms. Maxwell is liable under the statute" (Maxwell Mot to Dismiss at 11), they lay out numerous explicit acts by Maxwell that together satisfy the statutory requirements.  There is no need for any 'inference' to understand, for example, the simple statement that "Maxwell intimidated, threatened, humiliated and verbally abused Plaintiff in order to coerce her into sexual compliance."

7

*See* McCawley Decl. at Exhibit 1, Am. Compl. at ¶ 48. The very case Maxwell cites, *Abu Dhabi Commercial Banks v. Morgan Stanley & Co., Inc.*, 651 F. Supp. 2d 155, 170 (S.D.N.Y. 2009), makes clear that "[a] claim is facially plausible…when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." The plausibility of Defendant Maxwell's misconduct is clearly established by (among others) these allegations:

- "Defendant Maxwell was for decades the highest-ranking employee of the Defendants' sex trafficking venture and enterprise. She herself recruited young, including underage, females; oversaw and trained other recruiters on how best to recruit girls for sex; developed and executed schemes designed to recruit young females; and ensured that all participants of the Defendants' sex trafficking scheme acted in certain specific ways in order to advance the purposes of the scheme, including providing young females to Epstein for sexual purposes on a daily basis, and concealing these activities from law enforcement." *See* McCawley Decl. at Exhibit 1, Am. Compl. at ¶14

- "Defendant Epstein employed many recruiters of young females. . . . Recruiters were taught by Defendants Epstein, Maxwell and Kellen to inform targeted victims that Epstein possessed extraordinary wealth, power, resources and influence; that he was a philanthropist who would help female victims advance their careers and lives; and that the recruits needed only to provide Epstein with body massages in order to avail themselves of his financial assistance and influence. In fact, however, these representations were fraudulent." *Id*. at ¶ 16.

- "The Defendants, led primarily by Defendants Epstein and Maxwell, fulfilled Epstein's compulsive need for sex with young females by preying on their personal, psychological, financial, and related vulnerabilities. The Defendants' tactics included promising the victims money, shelter, transportation, gifts, employment, admission into educational institutions, educational tuition, protection, and other things of value in exchange for sex. Defendants also took possession of the victims' passports to coerce compliance with their demands." *Id*. at ¶ 18.

- "Defendants specifically targeted underprivileged, emotionally vulnerable and/or economically disadvantaged young females to provide sex for Epstein." *Id*. at ¶ 21.

- "Additionally, Defendants always made clear to every young female that they were wealthy, well-connected and could either help or hurt the females depending on their

8

degree of cooperation. In fact, Defendants Epstein and Maxwell have been known to threaten young females with physical harm." *Id*. at ¶ 22.

- "Beginning in approximately October 2006 and continuing through April 2007, Defendants recruited Plaintiff into their sexual enterprise by fraudulently promising to use their connections and resources to secure her admission to an institution of higher education at the expense of Defendant Epstein." *Id*. at ¶ 34.

- "Defendant Maxwell told Plaintiff she would need to provide Defendant Epstein with body massages in order to reap the benefits of his and Maxwell's connections." *Id*. at ¶ 39.

- "All Defendants, including Maxwell, Epstein, Groff and Kellen, knew that Plaintiff was actually being recruited for sexual purposes, and each knowingly and deliberately made false representations to ensure that Plaintiff would cooperate in fulfilling Epstein's sexual desires. These false and fraudulent representations included Defendants' telling Plaintiff that Epstein would use his connections to have her admitted into F.I.T. or a similar institute, college, university or school of higher learning and provide her with employment opportunities. Plaintiff reasonably relied on these representations and had a credible basis for such reliance, including the credible representations of Epstein and the other Defendants that they possessed extensive political, business, financial, social, and educational influence and connections." *Id*. at ¶ 40.

- "Maxwell and Epstein also threatened Plaintiff that, while they had the ability to advance her education and career, they also had the ability to make sure that Plaintiff would not obtain formal education or modeling agency contracts if she failed to provide the sexual favors desired by Defendant Epstein or abide by the instructions given her by Defendants Epstein, Groff, Kellen and Maxwell." *Id*. at ¶ 41.

- "Plaintiff reasonably believed that her compliance with Defendants' demands was crucial to her physical, psychological, financial, and reputational well-being and survival." *Id*. at ¶ 42.

- "Plaintiff was instructed dozens of times to provide body massages to Epstein, both at his townhouse in New York and on his private island in the U.S. Virgin Islands. . . . The Defendants Epstein, Maxwell, and Kellen used possession and control of Plaintiff's passport to induce and coerce Plaintiff into performing sexual acts with Epstein and others." *Id*. at ¶45.

- "During many sexual encounters, Defendant Epstein gave Plaintiff no option, opportunity, or choice not to participate in the prescribed sexual acts." *Id*. at ¶ 46.

- "Defendant Maxwell frequently controlled the assignment, or "rotation," of Plaintiff and the other young females concerning the time, place and manner of the sex acts they were told to provide to Defendant Epstein. Defendant Maxwell also gave instructions on how to perform certain sexual techniques on Epstein. Defendants Maxwell and Epstein also required Plaintiff to engage in sex acts with other females." *Id*. at ¶ 47.

- "Defendants Epstein and Maxwell intimidated, threatened, humiliated and verbally abused Plaintiff in order to coerce her into sexual compliance. These Defendants threatened Plaintiff with serious harm, as well as serious psychological, financial, and reputational harm, compelling Plaintiff to perform and continue performing the commercial sexual activity demanded by Defendants." *Id*. at ¶ 48.

- "On one occasion, after suffering verbal abuse and threats by Defendants Epstein, Maxwell, and Kellen, Plaintiff attempted to escape from Defendant Epstein's private island. A search party led by Defendants Epstein and Maxwell located her and physically returned her to the main house on the island. Through these and other actions, the Defendants intended to cause, and did cause, Plaintiff to believe that failure to perform the actions they requested would result in physical restraint and potential harm to her person, as well as harm to her reputation, employability, and stable state of mind." *Id*. at ¶ 49.

- "As part of their ongoing scheme, Defendants inflicted serious emotional and psychological harm on Plaintiff as a means of coercing her to continue engaging in commercial sex acts with Epstein and others. While Plaintiff was in South Africa, Defendants Epstein and Maxwell informed Plaintiff that she would not be permitted to return to the United States to receive her promised education unless she underwent a diet and lowered her body weight from 57 kilograms (approximately 125 pounds) to 52 kilograms (approximately 114 pounds). Epstein and Maxwell promised Plaintiff that, if she complied, she would receive her promised education." *Id*. at ¶ 57.

- "In February of 2007, in reliance on promises made by the Defendants, Plaintiff returned to New York City, in the Southern District of New York, and was promptly ordered by Defendant Maxwell to have sex with Defendant Epstein. Defendants Maxwell, Kellen, Groff, and Epstein each fraudulently promised Plaintiff again that her sexual compliance would be rewarded with admission to F.I.T. or a comparable college, a promise which they each knew to be false." *Id*. at ¶ 61.

- "In May, 2007, Plaintiff left the United States and did not return. Between returning from South Africa in February 2007 and leaving in May 2007, Defendants Kellen, Groff, and Maxwell each continued to repeatedly make false representations to Plaintiff, including false and fraudulent representations that she would be admitted to F.I.T. if she continued to engage in sex with Epstein. Defendant Epstein continued to make similar false and fraudulent promises in order to have sex with Plaintiff." *Id*. at ¶ 64.

This brief snapshot of the facts as alleged in the Amended Complaint undeniably states a claim for relief that is "plausible on its face."

### D.   Ms. Ransome Has Successfully Pled Fraud with Particularity

Ms. Ransome has pled fraud with the particularity required under the heightened standard under Fed. R. Civ. P. 9(b).  A complaint alleging fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *I.B. Trading,* 2017 WL 5485318, at *2 (denying motion to dismiss fraud claim) (internal citations omitted); *Nagelberg v. Meli*, No. 17 CIV. 2524 (LLS), 2017 WL 5201446, at *3 (S.D.N.Y. 2017) (same).  Defendant Maxwell's arguments here, regarding whether Ms. Ransome has properly pled fraud with particularity, are identical to the arguments raised by the other Defendants and therefore, Ms. Ransome incorporates by reference her response in her Opposition brief at DE 115 at 9 – 13.

### E.   Ms. Ransome Has Specifically Alleged Reasonable Reliance

Ms. Ransome has specifically pled that she reasonably relied on Defendants' representations that they would help her get into F.I.T. if she complied with their sex trafficking scheme. Again, Defendant Maxwell's argument is identical to the other Defendants and therefore Ms. Ransome incorporates by reference her Opposition in DE 115 at 15 -16.

### F.   Ms. Ransome Has Properly Pled Coercion

Defendant Maxwell also claims that Ms. Ransome has failed to plead coercion and thus has not properly pled all of the elements of the sex trafficking statute.  Under the sex trafficking

11

statute, Ms. Ransome need only show that Defendants used fraud **or** coercion in causing Ms. Ransome to engage in commercial sex acts. *See* 18 U.S.C. § 1591(a)(2) ("… means of force, threats of force, fraud, coercion … **or** any combination of such means will be used to cause the person to engage in a commercial sex act …"); *United States v. Paris*, No. CR 03:06-CR-64(CFD), 2007 WL 3124724, at *12 (D. Conn. 2007) (collecting cases) ("Force, fraud and coercion are alternate means to accomplish a single element"); *United States v. Marcus*, 487 F. Supp. 2d 289, 308 (E.D.N.Y. 2007) (describing "force, fraud, or coercion" as single element of § 1591).

Nevertheless, Ms. Ransome has properly pled coercion in her Amended Complaint. The Amended Complaint details how the Defendants coerced her with promises of an education, living quarters, and other benefits "in order to coerce her into sexual compliance" and "as an inducement to provide sex." *See* McCawley Decl. at Exhibit 1, Am. Compl. at ¶ 48, 50.  It also details how Defendants "threatened retaliation against her if Plaintiff did not perform as demanded" and "threatened Plaintiff with serious harm, as well as serious psychological, financial, and reputational harm, compelling Plaintiff to perform and continue performing the commercial sexual activity demanded by Defendants." *Id.* at ¶¶ 43, 48, 57.  And the Amended Complaint alleges that the Defendants "used possession and control of Plaintiff's passport to induce and coerce Plaintiff into performing sexual acts with Epstein and others." *Id.* at ¶ 45, *see also id.* at ¶ 51.  And the Amended Complaint alleges that "[d]uring many sexual encounters, Defendant Epstein gave Plaintiff no option, opportunity, or choice not to participate in the prescribed sexual acts." *Id.* at ¶ 46; *see also id.* at ¶ 57.

Continuing the pattern of launching attacks on the truth of Ms. Ransome's allegation dressed up as legal arguments, Maxwell goes so far as to assert that it was somehow "ridiculous" for Ms. Ransome to believe Maxwell's threats.  Maxwell Mot. to Dismiss at 15.  Defendant

Maxwell wrongfully reverses the use of Epstein's vast wealth and power to coerce Ms. Ransome into a scenario of a consensual relationship where wealth and power somehow benefited Ms. Ransome.  Missing from Maxwell's twisted analysis is that Epstein did in fact cause her physical harm and used his power to coerce Ms. Ransome into compliance.  *See* McCawley Dec. at Exhibit 1, Am. Compl. At ¶¶ 40-63.  Finally, Defendant Maxwell attempts to attack Ms. Ransome's allegation of the fact that Defendants wrongfully withheld her passport and restricted her travel by falsely stating that Ms. Ransome was "allowed and did travel on her own accord."   But the Amended Complaint alleges that her travel was controlled by the Defendants including controlling the tickets and dictating the acts Ms. Ransome needed to perform while traveling. There can be no doubt that Ms. Ransome has properly pled coercion as defined by the sex trafficking statute.

### G.      Ms. Ransome Has Properly Pled a Causal Link

Completely ignoring the allegations in the complaint, Defendant Maxwell next tries to argue that Ms. Ransome has not established that Defendants' coercive conduct caused her to engage in commercial sex acts.  Not so.  Ms. Ransome has properly pled a causal link between Defendants' fraudulent and coercive acts and Ms. Ransome engaging in commercial sex acts.

> Through these and other actions, the Defendants intended to cause, and did cause, Plaintiff to believe that failure to perform the actions they requested would result in physical restraint and potential harm to her person, as well as harm to her reputation, employability, and stable state of mind.

*See* McCawley Decl. at Exhibit 1, Am. Compl. at ¶ 49. In order for Ms. Ransome to benefit, and continue benefitting from Defendants' services and favors, Ms. Ransome had to keep providing commercial sex acts to Epstein.  Contrary to Maxwell's contention, the Amended Complaint makes it more than clear that her sex acts were the direct result of fraudulent statements, coercion, and force.

13

████████████████████████████████████████████████████

████████████████████████████████████████████████ Maxwell

Mot. to Dismiss at 16.  There was no "free will" being exercised by Ms. Ransome.  Rather, her

activities were being dictated by Defendants – including Maxwell – as alleged in the Complaint.

### H.    Ms. Ransome Has Successfully Alleged Predicate Acts and Violation of Sections 1592, 1593A, and 1594(a)-(c)

In addition to pleading violations under Section 1591, Ms. Ransome has also successfully

pled violations of Sections 1592, 1593A, and 1594(a)-(c) of the sex trafficking statute in her

Amended Complaint. Defendant Maxwell makes identical arguments as those raised by the other

Defendants and therefore, Ms. Ransome incorporates by reference her Opposition in DE 115 at

16-18.  Ms. Ransome also would note that violations of these statutes are civilly actionable by

operation of 18 U.S.C. § 1595.

### III.   MAXWELL'S ARGUMENTS CONCERNING FURTHER AMENDMENT OF THE COMPLAINT ARE UNAVAILING

Maxwell next pursues a curious effort to impose her own preferred set of facts before any

discovery has begun in this case by arguing that, based on her view of the facts, the Court should

deny any further amendments to the Complaint.  Ms. Ransome believes that her current

complaint amply sets forth a basis for proceeding without any further amendments.   But, in any

event, Maxwell has presented no support for the proposition that her version of events should in

any way control the Ms. Ransome's pleadings or ability to amend those pleadings as may be

required by the Court.  *See Twahir v. Village Care of New York, Inc.*, 2011 WL 2893466, *1

(S.D.N.Y 2011) ("Leave to amend should be freely granted when justice requires." … "[T]he

standard for determining futility is comparable to the standard for deciding a motion to dismiss

under Fed. R. Civ. P. 12(b)(6).")

In any event, it appears that the basis for Maxwell's argument is the claim that Ms. Ransome's previous testimony in another case would somehow make amendment futile.[2]  But entirely absent from Maxwell's brief is a fair recitation of what was actually shown in that other case.  The other case made clear Maxwell's involvement in fraudulent and coercive sex trafficking.  For example, Ms. Ransome provided detailed testimony that Defendant Maxwell was responsible for rotating the girls into Jeffrey Epstein's room for purposes of sexual abuse:



*See* McCawley Decl. at Exhibit 2, ██████████████████████████████ Ms. Ransome explained that Defendant Maxwell ████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████

Defendant also ludicrously claims that "Ransome makes no allegation of physical abuse." First, the entire case is about physical abuse and, while the Complaint does not graphically describe the sexual abuse in detail, it is without question that Ms. Ransome was physically abused.  In her deposition in that case, Ms. Ransome provided some examples of the abuse she endured:

---

[2] As explained in Ms. Ransome's Opposition brief to Defendants' Motion to Dismiss (DE 115), the Court should ignore material outside the face of the complaint at the Motion to Dismiss stage.



***

*Id.* at ■■■■■■.

While Defendant Maxwell tries to falsely claim alleged "discrepancies" between the Amended Complaint and Ms. Ransome's testimony, a simple review establishes that her allegations in the Amended Complaint and her statements in the *Giuffre v. Maxwell* deposition are entirely consistent. In fact, Defendant Maxwell tries to cherry pick five examples of paraphrased testimony in a failed effort to support her discrepancy theory. For example, Defendant Maxwell asserts that Ms. Ransome's testimony does not show any connection between a promised admission to F.I.T. and coercive sexual abuse. Maxwell is incorrect, as a brief review of the deposition immediately established:

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

*See* McCawley Decl. at Exhibit 2, ■■■■■■.

***

■■■■■■■■■■■■■■■■■■■■■■

*Id.* at p.■■■■

***



16



*Id.* at ██████████

*** 

*Id.* at p. ████████.

*** 

*Id.* at p. ████████.

This promise of admission to FIT is just one example from Defendant Maxwell's arsenal of threats and promises she used to abuse Ms. Ransome, threats that also included sabotaging Ms. Ransome's modeling career. In concert with Defendant Maxwell, Defendant Epstein also used this fraud to procure sex: ████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████ .

Second, Defendant Maxwell incorrectly states that Ms. Ransome's testimony does not support the fact that Defendant Maxwell instructed her to perform massages for Epstein and that Defendant Maxwell and Defendant Epstein promised her admission to FIT.  As set forth above, Ms. Ransome testified about Defendant Maxwell's involvement with the FIT process and how she promised to make calls to help her gain admission.  Ms. Ransome also testified that Defendant Maxwell knew the massages where sexual and Defendant Maxwell was in charge of rotating the girls in for the abuse.



*See* McCawley Decl. at Exhibit 2, pp. ███████

***





*Id*. at p. ███████.

Third, Defendant Maxwell wrongly claims that Ms. Ransome's testimony does not support her allegation that Maxwell "ordered" her to have sex with Epstein.  Indeed, Ms. Ransome's testimony says exactly that, ████████████████████████████████████████ ██████████████████████████████

Fourth, Defendant Maxwell wrongly claims that Ms. Ransome's allegations relating to control of her passport differ in some way from her testimony, yet a review of the deposition demonstrates that Maxwell's counsel never asked Ms. Ransome if her passport had been improperly held against her will at any time during the period she was being abused by Defendant Epstein.

Fifth, Defendant Maxwell claims that Ms. Ransome's allegation that she was "intimidated, threatened, humiliated and verbally abused" by Ms. Maxwell is not supported by her deposition testimony.  Again, that is plainly false because Defendant Maxwell's counsel never asked Ms. Ransome whether she was verbally abused by Ms. Maxwell.  Despite the fact that the question was never asked, Ms. Ransome provided direct testimony about how she was intimidated by Ms. Maxwell. For example, Ms. Ransome testified:



19

*See* 

*Id*. at p. ███████ .

Ms. Ransome's testimony is entirely consistent with the allegations in her Complaint.  And, in any event, "[t]he Court's function on a motion to dismiss is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *See I.B. Trading, Inc. v. Tripoint Glob. Equities, LLC*, 280 F.Supp.3d 524 (S.D.N.Y.  2017) (Koeltl, J.).  The complaint itself here is obviously legally sufficient.

## IV.    MS. RANSOME'S CLAIM IS WELL WITHIN THE STATUTE OF LIMITATIONS

Ms. Ransome's claim is unquestionably within the statute of limitations, for all the reasons she has previously articulated in response to similar arguments by the other defendants which she incorporates by reference here as set forth in DE 115 at 22-26.   A few words responding to Maxwell may nonetheless be useful here.

Maxwell begins by conceding a fundamental point:  That Congress clearly had the "power" to extend the statute of limitations to permit civil claims by sex trafficking victims, such as Ms. Ransome.  Resp. at 21.  Curiously, however, Maxwell claims that in adopting a broad remedial statute designed to help sex trafficking victims in the future, Congress somehow choose to keep a narrowly-constructed four-year statute of limitations in place for past victims.   This bizarre

understanding of congressional intent has been persuasively rejected by a neighboring court within this Circuit.  *See Lama v. Malik*, 192 F. Supp. 3d 313, 320-24 (E.D.N.Y. 2016) (court applying ten-year limitations period under 18 U.S.C. § 1595, even though conduct occurred before 2008 amendment, because plaintiff's claim was still "live" in 2008).  As *Lama* persuasively explained, the ten-year statute of limitations (rather than the four-year limit) applies to cases such as this one, and this Court should simply follow the analysis in *Lama*.

Maxwell argues that the Court in *Lama* "misapplied" *Landgraf v. USI Film Products*, 511 U.S. 244 (1994).  To reach this conclusion, Maxwell tries to argue that a simple extension of statute of limitations is somehow a "retroactive" statute under *Landgraf*.  But as *Lama* very clearly explained, simply extending the time period for a "live" claim to be filed is not a retroactive rule of law.  *Lama* cited cases such as *Cruz v. Maypa*, 773 F.3d 138, 144–45 (4th Cir. 2014), which have found that TVPA extended the four-year statute of limitations to any unexpired claims.

A good analysis of the issue issues is found in this Court decision in *Oluoch v. Orina*, 101 F.Supp.3d 325, 330–31 (S.D.N.Y. 2015), which applied the TVPA's ten-year statute of limitations to claims of involuntary servitude occurring in 2007:

> Just as in the Fourth Circuit, courts in this district recognize that Congress's adoption of a new, longer statute of limitations does not impair a defendant's rights if the effect is merely to extend claims that were still viable at the time of adoption. *Goodman v. City of New York*, No. 10 CIV. 5236 RJS, 2011 WL 4469513, at *6 (S.D.N.Y. Sept. 26, 2011).
>
> Plaintiff claims to have been held by defendant in involuntary servitude from 2006 until September 4, 2007 when she escaped from defendant's home. Compl. ¶ 23. Thus, her claims accrued in 2007. In 2007, defendant could not expect to face liability for her conduct beyond 2011, when the four-year statute of limitations period expired. However, plaintiff's claims were still valid, still "alive," a year later when Congress expanded the statute of limitations for human trafficking claims to ten years. Holding defendant to this increased limitations period risks no retrospective effect because it does nothing to expand the legal consequences defendant already faced in 2008. Since the claims were still alive in 2008, there is no impermissible retroactivity in applying the extended *331 statute of limitations Congress adopted that year.

This Court should also simply follow *Oluoch*'s reasoning here.

Maxwell also desperately claims that Ms. Ransome's claims fall outside even the ten-year statute of limitations – which she concedes is demarked by the date of January 26, 2007. But the Amended Complaint specifically alleges that "each of the Defendants last verified this information that Epstein was using his connections to ensure Ms. Ransome was admitted into F.I.T. in exchange for Ms. Ransome's continued sexual cooperation with Epstein in March or April of 2007." *See* McCawley Decl. at Exhibit 1, Am. Compl. at ¶ 38. And the Complaint further alleges that, in February 2007, "in reliance on promises made by the Defendants, Ms. Ransome returned to New York City, in the Southern District of New York, and was promptly ordered by Defendant Maxwell to have sex with Defendant Epstein. Defendants Maxwell, Kellen, Groff, and Epstein each fraudulently promised Ms. Ransome again that her sexual compliance would be rewarded with admission to F.I.T. or a comparable college, a promise which they each knew to be false." *Id*. at ¶ 61. And finally, the Complaint also alleges an on-going cover-up of the criminal enterprise that occurred "[i]n and after May 2007." *Id*. at ¶ 65.

Of course, to satisfy a statute of limitations, only one act must have been committed inside the relevant period of time. This hardly renders the earlier acts "irrelevant" for purposes of this case, particularly where the case concerns a pattern and conspiracy of sexual trafficking. As explained in her Opposition to Defendants' Motion to Dismiss (DE 115 24-26), Ms. Ransome has clearly alleged sufficient facts to satisfy her statute of limitations obligations. While Defendant Maxwell desperately tries to cling to Ms. Ransome's deposition testimony to make up a statute of limitation issue, Ms. Ransome was never asked in detail about what abuse she suffered upon returning from South Africa. The Court should not be deceived by Maxwell's incorrect conclusions.

## V.  THIS COURT HAS JURISDICTION OVER THE DEFENDANT MAXWELL

After stalling service in this case for almost a year, Defendant Maxwell now attempts to argue that the Court does not have jurisdiction over her.   The Amended Complaint very clearly states that "[a]t all times material to this cause of action Defendant Ghislaine Maxwell was **residing** in . . . New York, New York".  *See* McCawley Decl. at Exhibit 1, Am. Compl. at ¶ 6. Maxwell advances no argument to defeat this Court's personal jurisdiction other than the conclusory statements that it does not have jurisdiction.  *Id.*

This Court properly has jurisdiction over all of the Epstein Defendants including Maxwell, and her claims otherwise are unavailing.  As pled in the Amended Complaint, Defendant Maxwell had a residence in New York for years before selling it in 2016.  At all times material to the present case, Maxwell was living in New York and for the most part residing with Epstein.   *Id.* at ¶ 12. Plaintiff also pled that the Defendants' trafficking conduct occurred in New York.  *Id.* at ¶¶ 20, 28, 45, 52, 55, 60, 61, 63, 76.  This trafficking conduct is specifically alleged to have occurred in New York City, within the Southern District of New York, after January 2007.  *Id.* at ¶ 61.  Further, while pleading residence is sufficient by itself to establish jurisdiction, it is also noteworthy that Maxwell's business, the Terra Mar Project, has its address in New York.  And it is believed Maxwell still resides in New York.  Although she has refused to provide her address.  The Court is, of course, familiar with the difficulty in locating the elusive and peripatetic Ms. Maxwell from prior litigation associated with serving her with the Complaint in this case.  But, for present purposes, it is enough to note that that the Amended Complaint alleged that "[a]t all times material to this cause of action Defendant Ghislaine Maxwell was residing in in New York, New York." *See* McCawley Decl. at Exhibit 1, Am. Compl. at  ¶ 6.

Jurisdiction is plainly proper.

23

## VI.     VENUE IS PROPERLY LAID IN THE SOUTHERN DISTRICT OF NEW YORK

Venue is also properly laid in the Southern District of New York because a substantial part of the acts, events, and omissions giving rise to this cause of action occurred in this District.  *Id.* at ¶ 9.  As pled in the Amended Complaint and referenced above, Defendant Maxwell had a residence in the Southern District of New York during the relevant time periods in the complaint. During the relevant time period Defendant Maxwell was "the highest-ranking employee of the Defendants' sex trafficking venture and enterprise. She herself recruited young, including underage, females; oversaw and trained other recruiters on how best to recruit girls for sex; developed and executed schemes designed to recruit young females; and ensured that all participants of the Defendants' sex trafficking scheme acted in certain specific ways in order to advance the purposes of the scheme, including providing young females to Epstein for sexual purposes on a daily basis, and concealing these activities from law enforcement." *Id.* at ¶14.  Ms. Ransome also pled that the Defendants' trafficking conduct occurred in New York City, revolving around Defendant Epstein's residence.  *See* McCawley Decl. at Exhibit 1, Am. Compl. at ¶¶ 20, 28, 45, 52, 55, 60, 61, 63, 76.  This trafficking conduct is specifically alleged to have occurred in New York City, within the Southern District of New York, after January 2007.  *Id. at* ¶ 61.  Venue is plainly proper – a fact that is underscore by Defendants' notable silence as to which judicial district they believe is a more appropriate venue.

## **CONCLUSION**

For all the foregoing reasons, the Court should deny Defendants' Motions to Dismiss in their entireties.

Dated:  May 7, 2018

Respectfully submitted,

BOIES SCHILLER FLEXNER LLP

/s/ Sigrid McCawley
Sigrid S. McCawley (*Admitted Pro Hac Vice*)
Meredith Schultz (*Admitted Pro Hac Vice*)
Boies Schiller Flexner LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
(954) 356-0011

Bradley J. Edwards, Esq. (*Admitted Pro Hac Vice)*
Stanley Pottinger, Esq.
EDWARDS POTTINGER LLC
425 North Andrews Avenue, Suite 2
Fort Lauderdale, Florida 33301
Tel: (954) 524-2820

Paul G. Cassell (*Admitted Pro Hac Vice*)
S.J. Quinney College of Law
University of Utah
383 University St.
Salt Lake City, UT 84112
(801) 585-5202[3]

---

[3] This daytime business address is provided for identification and correspondence purposes only and is not intended to imply institutional endorsement by the University of Utah for this private representation.

25

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 7, 2018, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system.  I also certify that the foregoing document is being served to all parties of record via transmission of the Electronic Court Filing System generated by CM/ECF.

Kimo S. Peluso
Sher Tremonte, LLP
90Broad Street, 23rd Floor
New York, NY 10004
kpeluso@shertremonte.com
*Counsel for Haddon, Morgan & Foreman, P.C.*

Laura A. Menninger, Esq.
Jeffrey Pagliuca, Esq.
HADDON, MORGAN & FOREMAN, P.C.
150 East 10th Avenue
Denver, Colorado 80203
Email: lmenninger@hmflaw.com
         jpagliuca@hmflaw.com

John E. Stephenson, Jr.
Jonathan D. Parente
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
John.stephenson@alston.com
Jonathan.parente@alston.com

Alexander S. Lorenzo
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
alexander.lorenzo@alston.com
*Counsel for Defendant Sarah Kellen*

Michael Miller
Justin Y.K Chu
Michael A. Keough
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, NY 10036
mmiller@steptoe.com
jchu@steptoe.com
*Counsel for Defendants, Jeffrey Epstein and Lesley Groff*

*/s Sigrid McCawley*
    Sigrid McCawley