I877DOEC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

SARAH RANSOME,

                Plaintiff,

           v.                        17 Civ. 616 (JGK)

JEFFERY EPSTEIN, GHISLAINE MAXWELL,
SARAH KELLEN, LESLEY GROFF
and NATALYA MALYSHEV,

                Defendants.

------------------------------x
                                    New York, N.Y.
                                    August 7, 2018
                                    2:30 p.m.

Before:

                     HON. JOHN G. KOELTL

                                    District Judge

                          APPEARANCES

BOIES SCHILLER & FLEXNER LLP
     Attorneys for Plaintiff
BY:  SIGRID MCCAWLEY

S.J. QUINNEY COLLEGE OF LAW
AT THE UNIVERSITY OF UTAH
     Attorneys for Plaintiff
BY:  PAUL CASSELL

STEPTOE & JOHNSON LLP
     Attorneys for Defendants Jeffery Epstein, Lesley Groff and
     Sarah Kellen
BY:  MICHAEL MILLER
     JUSTIN CHU

DARREN K. INDYKE LLC
     Attorney for Defendant Jeffery Epstein
BY:  DARREN K. INDYKE
```

I877DOEC

1    APPEARANCES (Continued)

2

3    HADDON MORGAN & FOREMAN P.C.
          Attorneys for Defendant Ghislaine Maxwell
     BY:  LAURA MENNINGER

4

     ALSO PRESENT:  ALEXANDER LORENZO

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

I877DOEC

```
 1          (Case called)

 2          (In open court)

 3          MS. MCCAWLEY:  Sigrid McCawley for Sarah Ransome the

 4   plaintiff, along with my co-counsel Paul Cassell.

 5          MR. MILLER:  Good afternoon, your Honor.  Michael

 6   Miller and Justin Chu from the law firm of Steptoe & Johnson,

 7   and Darren Indyke, who is counsel to Mr. Epstein.  We represent

 8   Jeffery Epstein and Leslie Groff, and yesterday filed a

 9   substitution of counsel with respect to Sarah Kellen, whose

10   previously existing counsel is also here today, and if the

11   Court is comfortable with the substitution of counsel, we will

12   argue for all three defendants.

13          THE COURT:  I signed it already.

14          MR. MILLER:  Fine.  Thank you, your Honor.

15          THE COURT:  And it should be on the docket, I think.

16          MS. MENNINGER:  Good afternoon, your Honor.  Laura

17   Menninger, on behalf of Ghislaine Maxwell, from Haddon Morgan &

18   Foreman.

19          MR. LORENZO:  Good afternoon, your Honor.  Alex

20   Lorenzo from Alston & Bird.  As Mr. Miller indicated, we are

21   now predecessor counsel.  I saw the order pop on the docket.  I

22   wanted to come down in case that there was some issue, but I

23   would request permission to be excused.

24          THE COURT:  Yes, you can be excused.  Thank you.  I

25   did sign the substitution, as you saw.
```

```
1          All right.  OK.  I know people personally and
2    professionally at Boies Schiller.  I knew Mr. Haddon when I was
3    in private practice.  I may know people at Steptoe, but I'm not
4    sure.  Nothing about any of that affects anything that I do in
5    the case.
6          I also had dealings with Mr. Boise when I was in
7    private practice.  Again, nothing about that affects anything
8    that I do in the case.  These are motions to dismiss.  I'm
9    familiar with the papers, and I'm prepared to listen to
10   argument.
11         MR. MILLER:  Your Honor, can I address you from the
12   podium there?
13         THE COURT:  Sure.
14         MR. MILLER:  Michael Miller from Steptoe & Johnson,
15   and as I indicated we are here on behalf of and Jeffery
16   Epstein, Lesley Groff and Sarah Kellen.
17         Your Honor, we respectfully submit that the amended
18   complaint before you is legally deficient and should be
19   dismissed for several reasons, the first of which is that it
20   was not filed timely.  Our belief is that the statute of
21   limitations has lapsed.
22         The amended complaint also fails, your Honor, to
23   properly allege fraud, coercion or force, which are three
24   alternative ways of proving a violation of Section 1591.  More
25   broadly, your Honor, it's our view that section 1591 does not
```

I877DOEC

1    apply to the conduct alleged in this case.

2              And, lastly, at least in terms of points that we will

3    be making, is that we believe that there have been insufficient

4    allegations of personal jurisdiction.

5              In an effort to do this efficiently, your Honor, Ms.

6    Menninger and I have divided up these topics, and if it's all

7    right with the Court, I will be addressing the statute of

8    limitations issue, the allegations of fraud, the scope of

9    Section 1591, and the lack of personal jurisdiction; and Ms.

10   Menninger will be addressing the allegations of coercion and

11   force, the lack of a causal link between those allegations and

12   sexual activity, and the specific allegations with respect to

13   her client.

14             Your Honor, starting with statute of limitations,

15   Section 1591 was enacted in 2000 with a four year statute of

16   limitations.  That was the statute of limitations in effect

17   when the events at issue in this case occurred, and those

18   events as alleged were in 2006 and 2007.  Clearly, if the four

19   year statute of limitations applies, the lawsuit was not

20   started in a timely fashion.

21             In late 2008, effective early 2009, Section 1591 was

22   amended to permit a ten year statute of limitations.  And I

23   think the preliminary, the threshold issue before the Court

24   today, is whether the four year statute of limitations or the

25   ten year statute of limitations should apply to this case.

I877DOEC

1          THE COURT:  When the statute was amended to increase

2     the statute of limitations to ten years, the claims were still

3     alive under the four year statute of limitations had the case

4     been brought at that time.

5          MR. MILLER:  That is correct, your Honor.  And I am

6     aware that there are two cases here -- I believe they are

7     district court cases -- where that analysis has been applied to

8     conclude that the ten year statute of limitations applies.  We

9     cited a case out of the District of Minnesota, the Abarca case,

10    that takes a different view, and the thinking in the Abarca

11    case -- which we think is the correct thinking --

12         THE COURT:  So far the thinking in this District is

13    against you.

14         MR. MILLER:  I appreciate that, but I think that the

15    analysis in Abarca, which basically is that Congress had the

16    ability to articulate that it wished to apply it retroactively,

17    wished to apply it to any action that was not time barred at

18    the time of amendment and didn't do so.

19         THE COURT:  But the issue then becomes a definition of

20    retroactivity.  The rules against retroactivity are there to

21    prevent -- unless the legislature otherwise provides -- that a

22    cause of action is not revived or that rights are not otherwise

23    cut off.  Here there is nothing that was being revived and

24    there was nothing that was being cut off.  Congress simply made

25    a determination that the statute of limitations would be

1     lengthened.  So there was no need for Congress to say we're

2     reviving a cause of action that is otherwise barred, which

3     would be the core of a problem of retroactivity.  So you have

4     to ask in the first instance if there is a claim of

5     retroactivity, did Congress specifically authorize the

6     retroactive application.  In this case there was no retroactive

7     application to be applied; Congress simply lengthened the

8     statute of limitations, and that included all causes of action

9     that were alive at that time.  That logic seems to be right.

10          MR. MILLER:  Well, if I can, your Honor, I certainly

11    understand, accept and agree with the proposition as you've

12    articulated it as far as it goes, but I think that the case law

13    with respect to retroactive application isn't limited to vested

14    rights like the statute of limitations has already expired and

15    the new statute of limitations would restore an action that has

16    already ceased to be subject to prosecution under the statute

17    of limitations.  It's not limited to reviving an affirmative

18    defense that has already run its course.

19          I respectfully submit that there is a significant

20    impact on defendants.  At the time that the alleged activity

21    occurred here, there was a four year statute of limitations.

22    By expanding it to ten years, at the time that they engaged in

23    that conduct -- if they were even aware of the statute -- they

24    would have been operating under the assumption that there was a

25    four year statute of limitations.

I877DOEC

1          THE COURT:  Yes, it would have been -- it is a

2    difficult argument that a defendant can rely upon the statute

3    of limitations which has not yet expired so that the defendant

4    can say, you know, you can't sue me; you have a few more years

5    to sue me, but after that you can't sue me because of this

6    statute of limitations.  Much more powerful argument would be a

7    defendant who says I rely on the fact that if I did something

8    more years ago than the statute of limitations, I am now safe.

9    A defendant who is still subject to being sued cannot say to

10   himself or herself I am now safe.

11         MR. MILLER:  That's undeniable, that is true, but in

12   the same breath you could say that by 2011 or thereabouts

13   certain rights that would have existed under the four year

14   statute of limitations would have matured at that point, and

15   from that date forward, from whatever that four date year was

16   forward, there were certain rights that would have existed but

17   for the amendment of the statute of limitations, and that is

18   something of value that is essentially taken away by a

19   retroactive application of the ten year statute of limitations

20   to conduct that predated the date of the amendment.

21         I sense that I'm sledding uphill, and so perhaps I

22   should push my sled in a different direction, but I do believe

23   that the two district court cases here were incorrectly decided

24   on that theory and that the ten year statute of limitations

25   should not apply.

I877DOEC

1         But even if it does apply, your Honor, according to

2    the amended complaint, in January of 2007 -- and I guess just

3    by way of a footnote, the original complaint was filed in this

4    case on January 26th of 2017 -- so in January of 2007,

5    according to the amended complaint in paragraphs 55 to 57, the

6    plaintiff went to South Africa to visit with her family.

7    That's where her father and stepmother and other family members

8    live.  Under the Oluch case which we cited from the Southern

9    District, a 2015 case, frankly under the Abarca case from the

10   District of Minnesota that we also cited, the cause of action,

11   if any, that the plaintiff had with respect to the defendants

12   under Section 1591 accrued as of that point in time.

13        Under Oluch the Southern District held that the claim

14   accrued when the plaintiff first left the defendant's home.  In

15   the Abarca case -- which I grant is the District of

16   Minnesota -- they put it slightly different, when the plaintiff

17   traveled home to Mexico and had "physical freedom" the cause of

18   action accrued.

19        Under the complaint, the amended complaint as drafted,

20   the plaintiff left New York City, left where Mr. Epstein and

21   the defendants were allegedly located, and went home and had

22   the kind of physical freedom that the Abarca case speaks to.

23        Now, the complaint is in all candor vague about when

24   in January of 2007 that trip occurred, and the lack of detail

25   is odd because, as you may recall from earlier stages of this

I877DOEC

1    case, after the original complaint was filed, we worked out a

2    process with the Court's consent whereby we provided a

3    deficiency letter to the plaintiff, to counsel, outlining the

4    many, many issues that we had with the complaint at that time,

5    and one of those issues was statute of limitations, and one of

6    the points we made is that, to the best of our knowledge, she

7    left, she was already gone and left New York City before

8    January 26 of 2007, more than ten years before the complaint in

9    this action was actually filed.

10            There is additional evidence that was addressed in the

11   papers, and from a procedural perspective let me pause for a

12   moment.  I would like to be able to speak to the evidence that

13   was gathered in the Joffre case, which is the subject of a

14   protective order.  It's all before you, but I just don't know

15   if you have any reservations about me speaking about it openly

16   in court about it today.

17            THE COURT:  I don't.  Do any of the parties?

18            I should add that it is not clear to me -- in fact I

19   should put it differently.  I think the various items that you

20   rely on from the deposition in the other case are not properly

21   considered by me on this motion, which is a motion to dismiss

22   on several grounds.

23            The parties go to great lengths to describe the

24   plaintiff in the most uncomplimentary terms based on the

25   deposition in the other case.  Those allegations are plainly

I877DOEC

1    not in the complaint in this action.  The deposition was taken

2    after the complaint in this action.  There is no reasonable

3    legal basis that I see for incorporating the allegations or the

4    statements in the deposition in the other case in support of

5    the motions in this case.

6          The deposition in the other case was taken after the

7    complaint in this case, was not incorporated into the complaint

8    in this case, was plainly not relied upon by the plaintiff in

9    drafting the complaint in this case, and appears to me to be

10   admitted or offered by the defendants solely for purposes of

11   influencing me against the plaintiff in this case, contrary to

12   the facts that are pleaded in this case, and that includes the

13   comments about the statute of limitations.

14          MR. MILLER:  If I might, just briefly, your Honor.

15          THE COURT:  Yes, sure.

16          MR. MILLER:  Just two quick points.  One is

17   chronologically the original complaint was filed in January of

18   2017.  It's my understanding, my recollection, that the

19   depositions at issue occurred after that but before the first

20   amended complaint was drafted and filed, so from a timing

21   perspective, if that matters in your analysis --

22          THE COURT:  Thank you.  It doesn't.  It doesn't.  Hold

23   on.  I appreciate your correcting the chronology, but the

24   deposition was plainly not relied upon by the plaintiff in

25   drafting this complaint, and the plaintiff doesn't rely upon

I877DOEC

1       any of the allegations in that deposition for purposes of the

2       allegations in this complaint.

3               MR. MILLER:  Well, I think we carefully articulated in

4       our motion papers that the reason we cited to the Joffre

5       evidence was to establish that if the Court agreed that the

6       first amended complaint as drafted was legally insufficient,

7       that a dismissal should be with prejudice, because based on the

8       Joffre evidence there is no available theory under which the

9       case -- the complaint could be repled properly.

10              THE COURT:  That really is not the way in which the

11      deposition was used.  It was not used for purposes of saying

12      don't let the plaintiff amend because look at what was said in

13      the deposition.  It was used, for example, to say on the

14      statute of limitations that while the complaint alleges

15      activities that continued into February of 2007, you can't

16      believe those allegations because at that time the plaintiff

17      was in fact a willing and knowledgeable person who was doing

18      other things, other things which are not alleged in the

19      complaint.  And they were used for purposes of saying you

20      really can't credit the allegations in the complaint of force

21      or fraud, coercion, because look at all of the other things

22      that the plaintiff was doing.

23              MR. MILLER:  Your Honor, I must say, I take ownership

24      of the drafting of that motion.  It was our intention, if

25      inartfully framed, to really speak to the ability of the

I877DOEC

1   plaintiff to replead a legally sufficient complaint.  And I

2   would be happy to sit down with you and go over the motion

3   papers as drafted, but --

4         THE COURT:  Well, trust me we will not sit down and go

5   over the motion papers.  Trust me also that I carefully read

6   all of the motion papers, and I was more than surprised that

7   lawyers of the distinction of the lawyers in this case on the

8   defense side would do what you did.

9         Now, you may say, oh, Judge, even though our papers

10   were larded with an explicit discussion of each of the

11   plaintiff's relations with other people, right down to the most

12   recent allegations of the plaintiff's alleged other occupation,

13   all of that, we're not relying on that for our motion to

14   dismiss; we're relying on that for our argument that once

15   having dismissed this complaint you shouldn't let the plaintiff

16   replead.

17         You can say that, but I don't think that any

18   reasonable person reading these briefs would come away with

19   that as a conclusion.  And also one wonders how that would even

20   make any sense.  If I were to grant the motion to dismiss

21   because there are insufficient allegations in the complaint, I

22   should then rely upon the deposition to say that the plaintiff

23   could not replead because I now can read the deposition and

24   rely upon the statements in the deposition, and conclude that

25   any new complaint would not survive a new motion to dismiss,

I877DOEC

1   when the new complaint would plainly not rely upon the specific

2   allegations that the defendants are relying on in the

3   deposition?  That would be a difficult argument.  Moreover, it

4   is contrary to what you said in the briefs.

5           In the briefs you attempted to come up with other

6   reasons for putting all of this in, reasons like the plaintiff

7   started it; we were able to rely upon the deposition because

8   the plaintiff relied on the deposition.  Well, that's not quite

9   right, is it?

10          You made the motions to dismiss, and then the

11   plaintiff responded to the motions to dismiss.  And the

12   plaintiff said, you know, the deposition doesn't really say

13   what you're saying it says.  But it was in the motions to

14   dismiss, so -- but go ahead.

15          MR. MILLER:  Your Honor, I will just say I apologize

16   for any unintended confusion on our part about how we intended

17   to use the evidence from the Joffre matter, and --

18          THE COURT:  I should add, the amount of the briefs

19   that are devoted to the allegations from the deposition, I

20   haven't counted up words or pages, but there is an awful lot of

21   these briefs that rely upon what was said at the deposition,

22   and under the law that's just not right.  Just as a matter of

23   law it's not correct, which is what brought me to my comment of

24   surprise at the defense counsel doing that.

25          MR. MILLER:  Thank you, your Honor.  Understood.  I

I877DOEC

will proceed without any further reference to that body of

information.

In addition to the fact that the complaint itself, the

amended complaint itself, acknowledges that the plaintiff left

New York in January of 2007, the complaint also states that at

the time that the plaintiff left in January of 2007 and went to

South Africa, that when she went to South Africa she was asked

to look for somebody to work as a personal assistant to

Mr. Epstein, and she decided not to do that, having concluded

that the individual, rather than being treated as an assistant,

might be treated in another, you know, less reputable way.  And

I believe it is fair to conclude from that language in the

amended complaint that by the time the plaintiff left New York

to go to South Africa in January of 2007, she had already come

to a place where in her mind she didn't believe she could trust

the defendants or the representations that they were making to

her about what they were actually seeking to accomplish with --

THE COURT:  What do I do, for example, with the

allegation in the amended complaint in paragraph 61?  "In

February of 2007, in reliance on promises made by the

defendants, plaintiff returned to New York City, in the

Southern District of New York, and was promptly ordered by the

defendant Maxwell to have sex with defendant Epstein.

Defendants Maxwell, Kellen, Groff and Epstein each fraudulently

promised plaintiff again that her sexual compliance would be

I877DOEC

rewarded with admission to the Fashion Institute of Technology

or a comparable college, a promise which they knew to be

false."

          MR. MILLER:  I think in short strokes you have an

individual who claims that before she left, or at the time she

left New York, she no longer believed the representations made

by the defendants to her.  That is difficult to reconcile with

the notion that she left her family in South Africa to come

back to New York based on additional promises and

representations made by the defendants.  So, we have a

fundamental conflict within the four corners of the complaint

as drafted.

          THE COURT:  It wouldn't be the first time for a fraud

case in which an alleged victim of a fraud came to believe that

the victim was defrauded, and the perpetrator goes to the

victim and convinces the victim to invest yet again.  Those

cases are in fact not uncommon.

          So, you say there are conflicting allegations in the

complaint.  That means that they're not really susceptible to a

motion to dismiss.  They may be susceptible to a motion for

summary judgment.  But the only way to grant the motion on

statute of limitations grounds is to say that paragraph 61 is

simply false, it's a false allegation, you can't take it,

Judge.

          And in order to support that, of course, in your

I877DOEC

1   papers you describe what you say the plaintiff was doing after

2   she returned to New York.  But you say, well, we're not relying

3   on that for the motion to dismiss; we're relying on it solely

4   that she can't file an amended complaint.

5           MR. MILLER:  That is correct.

6           THE COURT:  But then I'm left with the unrebutted

7   paragraph 61.

8           MR. MILLER:  The way we read that paragraph is that

9   the allegations were broad, they were conclusory, they don't

10  satisfy Rule 9(b) particularization, and there is no way to

11  read those additional allegations in light of the other

12  allegations in the amended complaint to demonstrate that the

13  plaintiff reasonably relied on whatever new representations

14  were made to her.

15          So, given the unique definition of Section 1591, it is

16  our view that those allegations about the conduct that occurred

17  between February and May of 2007 don't establish a violation of

18  Section 1591.

19          Whatever conduct occurred before January of 2007 --

20  and obviously on the merits, you know, we have a different view

21  of the underlying allegations, but whatever happened before

22  January of 2007, that cause of action accrued at the time the

23  plaintiff left New York and went to South Africa, under the

24  cases that we discussed earlier.

25          So, our view is that the ten year statute of

1    limitations ran on the activity that occurred before January of

2    2007 and that the new allegations that were raised don't

3    satisfy the elements of Section 1591.

4          Your Honor, Section 1591 requires that the defendants

5    know and, indeed, in some manner of conduct, know that an

6    individual is going to be subject to amongst other things

7    force, coercion or fraud.

8          We respectfully submit that the amended complaint as

9    drafted does not satisfy Rule 9(b) pleading standards.  The

10   amended complaint fails to allege with particularity when any

11   representations -- specifically when any representations were

12   made to plaintiff about getting her into FIT -- which seems to

13   have been the principal factual allegation in the amended

14   complaint -- or any other particular school, particularly

15   whether any of those representations were made before or after

16   the alleged sexual relationship began.

17         In addition, the amended complaint fails to allege

18   with particularity what any particular defendant said to her

19   about her prospects of getting into FIT or any other particular

20   school.  There is a heavy reliance throughout the amended

21   complaint on group pleading, which is not embraced in this

22   Circuit, when you're talking about oral statements and

23   representations.  And the allegations with respect to

24   defendants Groff and Kellen are particularly threadbare and

25   conclusory.

I877DOEC

1          The amended complaint also fails to allege with

2     particularity whether anyone promised that the plaintiff would

3     get into FIT or any other similar school in any particular

4     semester.

5          The amended complaint fails to allege facts

6     demonstrating that at the time whatever statements were made

7     about FIT, that they were false when made.  The law is clear in

8     this jurisdiction that the question is were the statements

9     false at the time they were made.  And the fact that there has

10    been inaction in connection with the promises isn't sufficient

11    to show that the statements were false when made.

12         The amended complaint contains allegations, your

13    Honor, that strongly suggest to the contrary.  The allegations

14    in the complaint are that Mr. Epstein promised to take care of

15    this individual and that he in fact gave her access to an

16    apartment, a car, telephone, and that with respect to the

17    school, that the complaint acknowledges that Epstein reminded

18    the plaintiff about completing her application and reviewing it

19    for her.  None of those facts contained in the amended

20    complaint are consistent with the notion that at the time

21    whatever statements were made those statements were false.

22         THE COURT:  One of the arguments made in the papers is

23    that it was incredible for the plaintiff to believe that

24    defendant Epstein could impact, derail her application to FIT

25    and derail her modeling career, that is simply incredible, or

I877DOEC

1      the papers say.

2             MR. MILLER:  Well, we do make the argument that the

3      plaintiff's reliance on those representations was not

4      reasonable.

5             THE COURT:  Not reasonable because it was incredible

6      to believe that a person of the alleged wealth and prestige of

7      defendant Epstein could in fact derail the plaintiff's

8      education and career.  That's the argument.

9             MR. MILLER:  I think the allegations in the amended

10     complaint, your Honor, are that the threat was you'll never go

11     to college anywhere, you'll never get a modeling career going

12     anywhere, and I think that is a pretty broad statement for

13     somebody to reasonably rely upon, regardless of the wealth and

14     power of the individual who is making the statement.

15            THE COURT:  So, it is incredible as a matter of law

16     that a person of alleged wealth and prestige sufficient to own

17     an island could in fact blackball someone from education and a

18     career presumably in New York?  I am expected to rule as a

19     matter of law that that's incredible as a matter of law, that

20     that is not reasonable reliance, it just couldn't happen, and

21     no reasonable person could believe that it could happen.

22     Right?  I mean your argument is asking me to rule as a matter

23     of law that such a conclusion is incredible as a matter of law,

24     and that, therefore, there is no reasonable reliance.

25            MR. MILLER:  Yes.  The argument is specifically that

I877DOEC

1    relying on the affirmative promises, relying on the alleged

2    very broad allegations of threat, was not reasonable under the

3    circumstances.

4             THE COURT:  What comparable case do you think stands

5    for that proposition?

6             MR. MILLER:  Well, I think the threat is just so broad

7    as to be as a practical matter -- regardless of the wealth or

8    prestige of the individual -- an impossible threat to carry

9    through on.  The notion that an individual could prevent

10   another individual from going to school anywhere, from pursuing

11   a modeling career anywhere, it stretches the boundaries of what

12   is reasonable reliance.  That's the point we were making.

13            THE COURT:  And my question is what case do you rely

14   on for that proposition with any similar set of circumstances:

15   An alleged -- for purposes of the complaint -- young person

16   versus a person of wealth and prestige, that the kind of

17   promises and alleged threats that were being made were

18   unreasonable as a matter of law?

19            I mean I understand the reasonable reliance cases in

20   terms of investors and in terms of what should and shouldn't be

21   done in terms of reasonably pursuing an investigation of a

22   company.  But is there any comparable case that has said that

23   in a situation such as this, such as alleged in the amended

24   complaint, it should be dismissed as a matter of law on a

25   motion to dismiss?

I877DOEC

1     MR. MILLER:  Your Honor, most of the cases that we

2  looked at did deal with reasonable reliance in the context of

3  investment scenarios with relatively sophisticated parties on

4  both sides.  I can't say that we found a case that is

5  specifically on point, so we're really arguing more from the

6  facts than a specific case.

7     THE COURT:  OK.

8     MR. MILLER:  Your Honor, the last point that I'd like

9  to address is the issue of lack of personal jurisdiction.

10     I think it's fair to say, based on some of the dialog

11  we've had so far, that it's your view that there are sufficient

12  allegations of conduct in the February to May 2007 time period.

13  But, you know, as we have noted in the papers, virtually all of

14  the conduct that's at issue in this case predated January of

15  2007, predated the plaintiff's departure from New York to go to

16  South Africa.

17     The only allegations in the complaint as to the

18  defendants and their current ties to New York relate to

19  Mr. Epstein and a particular piece of real estate.  We

20  respectfully submit that the absence of concrete evidence of

21  violations of Section 1591 in 2007 -- as opposed to before the

22  defendant left -- should lead to the conclusion that there is

23  no personal jurisdiction over the defendants.

24     THE COURT:  OK, thank you.

25     MR. MILLER:  Thank you.

1          THE COURT:  Ms. Menninger.

2          MS. MENNINGER:  Thank you, your Honor.  On behalf of

3     defendant Ghislaine Maxwell, I would ask the Court to dismiss

4     the first amended complaint filed on June 5, 2017.  In some

5     ways I want to start in the same place that Mr. Miller did, and

6     that is with the statute itself and its passage.

7          Your Honor, in 2007 -- 2006 and 2007 -- when the

8     allegations in the complaint purportedly took place, there was

9     no civil cause of action at all under this chapter other than a

10    violation of 1591.  The same amendment which added these ten

11    year statute of limitations also broadened who could be sued

12    and for what.

13         The statute that existed in 2006 and 2007 read, "An

14    individual who is a victim of violation of Section 1589, 1590

15    or 1591 of this chapter, may bring a civil action against the

16    perpetrator in an appropriate district of the U.S. and may

17    recover damages and reasonable attorney fees."

18         The persons who could be sued under that chapter were

19    perpetrators of the crimes specified in 1589, 1590 and 1591,

20    and the person who could sue was an individual who was a victim

21    under those three statutes.  Notably absent is any reference to

22    lawsuits, civil causes of action brought pursuant to other

23    sections of that chapter.  Those would include 1592, 1593 and

24    1594, as well as 1593(a), which was added in December of 2008

25    and did not previously exist.

I877DOEC

1          Paragraphs -- you look like you had a question.

2          THE COURT:  The same arguments that I was raising with

3     your colleague would apply to all of these arguments also.  At

4     the time that the statute was amended to include the ten year

5     statute of limitations, there was no bar, if you will, to a

6     claim against all of the defendants.

7          MS. MENNINGER:  Your Honor, I respectfully would

8     contend that there is a fundamental difference between a

9     statute of limitations that is extended as to conduct that has

10    already occurred versus creating a new cause of action or a new

11    civil remedy.  The support for that, your Honor, is the U.S.

12    Supreme Court in Landgraf v. USI Film Products, which I cited

13    in my papers for a different proposition, but it's found at 511

14    U.S. 244.

15          In that case, your Honor, the U.S. Supreme Court was

16    considering a very similar situation with respect to a sexual

17    harassment claim under Title VII.  In that case, Title VII,

18    prior to the defendant at issue's conduct, only provided for

19    back pay or equitable remedies, and then in 1991 Congress added

20    a compensatory damage provision.

21          The U.S. Supreme Court spent a great deal of time in

22    Landgraf, explaining that adding a cause of action for

23    damages -- as was done in this statute -- did not retroactively

24    apply unless there was an express finding by Congress to do so.

25    And they distinguished things like extending statutes of

I877DOEC

| | |
|---|---|
| 1 | limitations and, rather, relied on the fact that a new action |
| 2 | for damages was being created.  And that is what happened in |
| 3 | this case with respect to this statute as well, your Honor. |
| 4 | THE COURT:  OK. |
| 5 | MS. MENNINGER:  Paragraphs 69 through 77 of the first |
| 6 | amended complaint purport to state causes of action under each |
| 7 | of those other chapters -- excuse me -- sections of the same |
| 8 | chapter, your Honor, and I would ask at the outset that those |
| 9 | particular requests be stricken from the first amended |
| 10 | complaint. |
| 11 | THE COURT:  But there would still be the action under |
| 12 | 1591. |
| 13 | MS. MENNINGER:  Yes, your Honor.  I'm starting from |
| 14 | the ones that are really easy, in my opinion, and then moving |
| 15 | to 1591, which would be the other one.  But it does, your |
| 16 | Honor, significantly affect some of the allegations within the |
| 17 | first amended complaint.  For example, 1592 is the provision |
| 18 | that criminalized the taking of the passport, for example. |
| 19 | THE COURT:  Right.  But, in a way, each of the other |
| 20 | provisions is subsidiary to 1591.  The plaintiff doesn't break |
| 21 | out the four separate subsidiary statutes, 1591 and the other |
| 22 | three; the plaintiff has only one cause of action for a |
| 23 | violation of 1595. |
| 24 | MS. MENNINGER:  She requests specific damages under |
| 25 | some of those statutes, your Honor, for example, forfeiture and |

I877DOEC

1   restitution.  She relies on a conspiracy theory that is

2   articulated in one of those statutes.  She relies on the

3   attempt provision that's included in one of those statutes and,

4   as I mentioned, the passport.

5        THE COURT:  But she one claim, one cause of action for

6   a violation of 1595.  What the argument that you have been

7   making so far comes down to is I should give the complaint a

8   haircut by striking some of the allegations in the complaint,

9   even though the case goes forward, and even though allegations

10  like holding the passport could be used in support of a

11  violation of 1591.

12       MS. MENNINGER:  Your Honor, I was not about to just

13  sit down after that particular argument; I was going to move on

14  to the next one.

15       THE COURT:  OK.

16       MS. MENNINGER:  So, I guess it would be the first chop

17  in the haircut that I propose that this Court make a complete

18  shaving of the head by the time that we're done.  But, in any

19  event, I think those particular statutes clearly do not grant a

20  cause of action to the plaintiff for conduct that occurred

21  prior to Congress authorizing the civil action.

22       With respect to 1591, your Honor, moving there, the

23  statute as it read at the time permitted a cause of action

24  against the perpetrator, not against someone who was alleged to

25  have been a person who benefited from a venture, which is

1    something else that is seen replete through the first amended

2    complaint.  And it requires, your Honor, the statute 1591 as it

3    existed in 2016, that an individual either recruit, entice,

4    harbor, transport, provide, or obtain by any means a person or

5    benefit financially.  Those are what I would -- drawing upon

6    criminal law -- call the actus reus of this particular offense

7    that has been granted a civil cause of action.

8          Your Honor asked earlier with respect to the statute

9    of limitations question why does paragraph 61 of the first

10   amended complaint -- which talks about reliance on promises

11   that occurred after January of 2007 -- how can we just read

12   those out of the first amended complaint.  Your Honor, I

13   believe that the way 1591 is read, the act is accomplished --

14   the offense accrues when the recruiting, enticing, harboring,

15   etc. occurs.

16         This is not a general fraud statute.  Although fraud

17   rears its head in the mens rea element, fundamentally the act

18   that is sought to be covered here occurs at the time of the

19   recruitment, the enticement, the harboring, etc., or at the

20   time of benefiting financially.  Those are the two provisions

21   of 1591.

22         So, your Honor, the allegations contained in paragraph

23   61 of the first amended complaint are not allegations of a

24   recruitment, or an enticement, or a harboring; they are

25   allegations that go to the mens rea.  Therefore, I would submit

I877DOEC

to your Honor that the act has accrued once the recruitment or
the enticement happened, not because further acts of purported
fraud occurred later.

Your Honor, moving on to the sections not already
covered by Mr. Miller, I would point your Honor to the
requirement that one of those two acts has to occur knowing
that fraud, force or coercion will be used to cause that person
to engage in a commercial sex act.

With respect to knowing that force will be used, there
is no allegation of force in the first amended complaint.

With respect to fraud, Mr. Miller has already
addressed the absence of particular allegations with respect to
fraud:  The dates, times and circumstances that any particular
statement was made.  And, your Honor, I will move to the last
of those three permitted means of stating a claim, and that is
with respect to coercion.

In their response, plaintiff has pointed to two
particular paragraphs that they claim adequately state a claim
for coercion -- although they plead it in the alternative,
noting as the statute does, that there are three ways that
could accomplish the final goal.  And they point to paragraph
48, which just says simply that there were threats of serious
harm, without stating what any such threats were; and they
point to paragraph 49, which is that she was physically
returned to the main island on house by a search party at some

I877DOEC

1   point in time.  And, again, without any dates, it's difficult

2   for the Court or the parties to understand any particular

3   sequence of events, but it is up to the plaintiff to allege

4   sufficient facts that would state a claim, if they were there.

5          And, your Honor, there are no facts that show -- I

6   think it's important to look at the statute again, which

7   defines what coercion means in this context, and coercion means

8   under 1591 in existence at the time, threats of serious harm

9   to, or physical restraint against any person, is the primary

10  definition.

11         There are not facts other than bald allegations with

12  respect to that definition of coercion.  In their response

13  papers they point to a threat that she would no longer be given

14  the same financial benefits that she had been receiving in the

15  past, but that is clearly not what coercion is defined to

16  include in the statute itself under 1591.

17         Finally, your Honor, with respect to what we will call

18  the causal connection, 1591 states that the person must have

19  known that fraud, force or coercion would occur, would be used

20  to cause the commission of the commercial sex act.

21         Again, your Honor, other than using these several

22  months at a time pleading windows, the complaints have not

23  specified the time when any such thing occurred.  And I think

24  that was a conscious choice, because they, I believe -- and we

25  will not talk about other things outside of the four corners of

I877DOEC

1    the complaint -- it was a choice they made not to include

2    specific dates.  Without those dates, your Honor, there is

3    nothing more than a bald assertion that the knowing, the force,

4    fraud, or coercion would cause a commercial sex act.

5        THE COURT:  In your papers -- I say it for the first

6    time, unlike other defendants -- you also rely on the fact that

7    the plaintiff was engaged, you say, in another occupation which

8    is inconsistent with the allegations in the complaint.  And I

9    could not understand how that allegation could be made in your

10   papers.  It's certainly not in the complaint.  And I couldn't

11   understand the reason for putting that in or what the effort

12   was in terms of having me rely on that for a decision.

13       MS. MENNINGER:  Your Honor, I heard you very loud and

14   clear when you were speaking with Mr. Miller, and I too had

15   intended to use evidence from the other deposition in support

16   of an argument that any further amendment of this complaint

17   would be futile, but I'm trying to carefully not mention any of

18   those items during my oral argument.

19       THE COURT:  OK.  If you believe that that's the true

20   reason why that was included in your papers, so be it.  Go

21   ahead.

22       MS. MENNINGER:  As with the argument regarding

23   fraud -- and I think there are a number of cases --

24       THE COURT:  Oh, before we leave that, part of the

25   argument that there was no fraud is there is no -- the

I877DOEC

plaintiff hasn't pleaded the reasonable basis for concluding

that the defendants didn't believe the alleged promises at the

time that they were made and, therefore, there is no pleading

of fraud, because a promise isn't fraud unless it is knowingly

false when made.

At the same time the defendants ask me to strike all

the allegations in the complaint about what happened

previously, which would appear to go to the issue of intent

under 404(b).  Promises were made in the past, they weren't

kept, the defendants knew that when they were making promises

in this case they weren't going to be kept, and the defendants

urge me to simply strike paragraphs in the early part of the

complaint as irrelevant.  Why don't those paragraphs go to

intent on the subject of fraud?

MS. MENNINGER:  Your Honor, the intent for purposes of

this statute would require knowledge that force, coercion or

fraud would be used to induce a commercial setback.  Those

earlier allegations do not allege force; they do not allege --

except in very bare terms -- coercion; they do not allege,

except in very bare terms -- anything with respect to the

fraud.

So, for the same reasons that in this District fraud

requires particularity, those are very broad, unspecified

allegations, divorced from dates, times, places, people's

statements, and so it appears for perhaps some of the same

1   reasons that your Honor questioned why some of these other

2   things were in our papers, that that is in fact the same reason

3   that these other allegations were contained in the first

4   amended complaint, more to make it read as a press release than

5   it was to actually try to make a cause of action.

6         THE COURT:  There are differences, right, between

7   allegations in a complaint and a legal basis for a motion to

8   dismiss.  So, OK.

9         MS. MENNINGER:  Your Honor, I would really urge your

10  Honor to look through the complaint with a careful eye towards

11  any places in which an actual time, place, event were

12  specified.  We asked for that in our motion to dismiss; we said

13  that there was nothing more than a bald assertion that there

14  was a causal connection; and we were told here is where it says

15  in the amended complaint where it says there is a causal link,

16  but without any reason to show the causal link.

17        There are ways that your Honor could imagine that a

18  complaint could contain allegations.  They could say this

19  happened first and then this happened next, but that's not how

20  any of this read.

21        And the same way that your Honor earlier pointed out

22  how am I supposed to just say because he's wealthy he could not

23  have controlled all of higher institutions of learning and all

24  modeling contracts in this world, if there were allegations

25  like he sat on the board of FIT, or he had a special connection

with all of these higher institutions of learning -- like an

investor who is defrauded where there have been promises made

that an individual has the ability to get a particular

return -- there are no facts in here other than the mere

mention of wealth and status to suggest under the terms of the

amended complaint that this individual, Mr. Epstein, could

control all higher institutions of learning or all modeling

contracts.  But there is even less with respect to my client,

your Honor.  There are no allegations that she controlled the

world of modeling and the world of higher institutions of

learning.

            So, I would ask your Honor to enforce what is the

common rule in this District, that allegations of fraud need to

be pled with particularity, and no such particularity exists in

this amended complaint.

            THE COURT:  OK.  Thank you.

            MS. MCCAWLEY:  Is it all right if I'm here, or would

you prefer if I am at the podium?

            THE COURT:  It's probably better if you are at the

podium.

            MS. MCCAWLEY:  If I could just approach the bench; I

have come books.

            THE COURT:  All right.  It's not so clear why you're

offering up a bench book.

            MS. MCCAWLEY:  Sorry, your Honor.  I thought it might

be helpful for you to have in front of you some of the key

cases we cited, along with a copy of our amended complaint, and

then I have just a couple -- just to make it easy for you to

follow -- the bullet points that show where the paragraphs are

in the motion to dismiss.  They've obviously claimed that we

have not properly alleged certain things including fraud and

coercion, so I've set this forth.

            THE COURT:  Go ahead.

            MS. MCCAWLEY:  So, your Honor, I submit to you that

Congress had in mind this exact situation when it enacted 18

U.S.C. 1591, and that was to stop repeat offenders, or repeat

traffickers like the defendant in this case, from using fraud

and coercion to force females in commercial sex.  That's what

happened to my client here, and that's what happened to other

females, as alleged in our complaint.

            So what we have alleged in the complaint -- you've

heard a lot from the defendant about various deficiencies.  We

believe the complaint is fulsome.  It includes the allegations

that are necessary under the statute.

            The statute makes clear that with respect to the

definition of commercial sex, that it is broad and it means any

sex act on account of which anything of value is given or

received by any person.  We believe we have alleged that in our

complaint with respect to Ms. Ransome being used and induced

into commercial sex with respect to the defendants, and we

1   believe we have pled that with specificity.

2           I want to talk a little bit about the fact that the

3   defendants have claimed that the tightened pleading standard,

4   we haven't met it.  First, I believe we have met it.  But

5   setting that aside, in the sea of the over 50 cases that they

6   cite in their briefs, there is not one that addresses a sexual

7   trafficking case where this heightened 9(b) issue is discussed.

8   So, they have RICO cases, they have other securities cases,

9   things of that nature, but nothing in this context.

10          And I submit to you that when Congress enacted this

11  statute, it intended it to be very broad; the language is very

12  broad.  It covers not only fraud but also, as we've said,

13  coercion.  And while Ms. Menninger was reading to you from the

14  old statute, the statute as it sits today and as it was at the

15  time that our client filed her complaint, defines the term

16  coercion in a much broader manner.  It defines it -- and this

17  is in Section 4 of 1591 and (e)(4) -- it says, "The term

18  'serious harm'" -- so serious harm is one of the pieces of

19  coercion -- "The term 'serious harm' means any harm, whether

20  physical or nonphysical, including psychological, financial,

21  reputational harm that is sufficiently serious under all the

22  surrounding circumstances" --

23          THE COURT:  Should I look at the statute at the time

24  that the events occurred?  You're not suggesting that if the

25  defendants did something when the statute was somewhat

1    different, and the statute was then amended thereafter, I

2    should look at the amended statute to determine whether what

3    the defendants did at the time that they did it was in

4    violation of the statute?

5         MS. MCCAWLEY:  Well, your Honor, first I believe we

6    need we meet both, so let me be clear on that.  I believe the

7    complaint as pled meets both standards.  I was reading to you

8    the coercion as it stands now with respect to serious harm

9    under the statutory language -- which I believe we've met --

10   and as we talked about with respect to the statute of

11   limitations, that's the Lama v. Malik case and the Oluch case

12   that they referenced.

13        THE COURT:  I mean I understand your argument with

14   respect to the statute of limitations with respect to the

15   length of the statute of limitations and the fact that when the

16   statute was amended the claim was still alive.

17        It's a somewhat different argument to say that at the

18   time the statute was amended the statute made unlawful

19   something that was lawful at the time that the defendants did

20   it.  That would seem to run counter to the normal retroactivity

21   practice.

22        MS. MCCAWLEY:  Right, your Honor, I understand.  So, I

23   can just move on from that.  I believe we've met the fraud and

24   coercion under both the old version and the new version, and I

25   believe we sufficiently articulate that in our complaint, so I

1    will move forward with respect to that.

2              I did just want to highlight for you very briefly with

3    respect to the claims of fraud and coercion, that we have pled

4    those.  I put them in the binder, but they are a number of

5    paragraphs, 38, 40, 41, 52, 53 and 66; and with respect to

6    coercion, 43, 45, 46, 48, 50 and 57.

7              With respect to the allegation that there was a group

8    pleading or an insufficient pleading with respect to certain of

9    the defendants, we submit to your Honor -- and I put the

10   paragraphs in there -- but we have both allegations particular

11   to the individual defendants, as well as allegations when they

12   pertain to all defendants, we've set that forth in the

13   complaint as well.

14             With respect to reasonable reliance, your Honor

15   touched on this a little bit in the beginning, but we have a

16   number of paragraphs that address that reliance, including 11,

17   12, 16, 22, 36, 38, 40, and the causal link as well in those

18   and in 49.

19             I will just touch briefly on the jurisdictional

20   argument that was made.  We obviously believe we've submitted

21   appropriately that your Honor has jurisdiction in this matter,

22   and if there was any question with respect to jurisdiction we

23   did request in our papers to have a jurisdictional deposition.

24             With respect to the timing on the statute of

25   limitations, you pointed out paragraph 61.  We believe that in

I877DOEC

 1    that paragraph we have set forth very sufficiently that while

 2    there was an episode where my client, Ms. Ransome, was sent by

 3    the defendants to South Africa for the purposes of recruiting

 4    another female and bringing her back to the United States for

 5    the purposes of sex, we believe that that allegation is part

 6    and parcel of the fraud and coercion that she was susceptible

 7    to during that time period, that it carried on, it didn't stop.

 8            There is no magical moment in that time period.  She

 9    was still under that fraud and coercion at that point, and it

10    continued when she got back to the United States, as alleged in

11    the complaint, up until May of 2007, your Honor.

12            So, we believe that the complaint sets forth very

13    sufficient allegations in detail about the harm that she was

14    subjected to and the time period within which that harm

15    occurred.

16            And, your Honor, if you have any other questions, I

17    would be happy to answer them.

18            THE COURT:  No, thank you.

19            All right.  I will take a ten minute break.

20            Oh, I'm sorry.  I should have asked, any response?

21            MR. MILLER:  No, your Honor.

22            THE COURT:  Ms. Menninger?

23            MS. MENNINGER:  Your Honor, may I be very briefly

24    heard?

25            THE COURT:  Of course.  Of course.

I877DOEC

| 1 | MS. MENNINGER:  With respect to the statute of

2 | limitations question, your Honor, you heard plaintiff say that

3 | they rely on the allegations contained in paragraph 61 of their

4 | first amended complaint.  And, your Honor, in that particular

5 | paragraph they do not set forth any activity that could be

6 | described as recruiting, enticing, harboring, transporting or

7 | obtaining by any means a person, nor do they set forth anybody

8 | who has gained a financial benefit.  Those are the two

9 | requirements of 1591 as it existed in 2006.  And without any

10 | allegations that any of those activities happened, you know,

11 | after January of 2007 when the plaintiff left the country, they

12 | have not set forth I think -- and I would submit to your

13 | Honor -- any allegations that would restart the accrual period

14 | that set off the ten year statute of limitations at best, the

15 | four year statute of limitations of course having expired four

16 | years earlier.  Thank you.

17 | THE COURT:  OK.  Thank you all.  I will take ten

18 | minutes.

19 | (Recess)

20 | THE COURT:  I am prepared to decide the motions.

21 | The plaintiff, Sarah Ransome, brings this action under

22 | the Trafficking Victims Protection Reauthorization Act (the

23 | "TVPRA"), 18 U.S.C. Section 1595, against the defendants

24 | Jeffery Epstein, Ghislaine Maxwell, Sarah Kellen, Lesley Groff

25 | and Natalya Malyshev.  The plaintiff alleges that between

I877DOEC

October 2006 and May 2007, the defendants knowingly,
coercively, and fraudulently recruited and enticed the
plaintiff to engage in commercial sex acts with Jeffery Epstein
in violation of 18 U.S.C. Section 1591, and that the defendant
engaged in conduct that violated 18 U.S.C. Sections 1592, 1593A
and 1594.

Epstein, Groff, Maxwell and Kellen have filed motions
to dismiss the plaintiff's amended complaint pursuant to Rules
12(b)(2), 12(b)(3) and 12(b)(6) of the Federal Rules of Civil
Procedure, and they move to strike allegations pursuant to Rule
12(f) of the Federal Rules of Civil Procedure.  They argue that
the Court should strike the portion of the amended complaint
detailing prior proceedings related to Epstein as impertinent
or immaterial to the allegations set forth in the amended
complaint and that the amended complaint fails to state a claim
for relief under 18 U.S.C. Section 1591 because, first, Section
1591 does not apply to the alleged relationship between the
plaintiff and Epstein; second, the amended complaint fails to
allege fraud or coercion against any of the defendants; third,
the amended complaint impermissibly lumps the defendants
together in violation of Rule 8 of the Federal Rules of Civil
Procedure; and, fourth, the amended complaint fails to
demonstrate that the alleged fraudulent or coercive conduct
caused the plaintiff to engage in a commercial sex act.
Additionally, with respect to the Section 1591 claim, Groff and

I877DOEC

Kellen argue that the plaintiff fails to allege that either

Groff or Kellen had sufficient knowledge that the plaintiff was

engaged in commercial sex caused by fraud or coercion.  With

respect to the plaintiff's Section 1592 claim, the defendants

argue that the claim should be dismissed because it lacks

specific factual support.  The defendants also argue that the

plaintiff does not allege violations of Sections 1593A and

1594.

        The defendants also argue that the plaintiff's claims

are barred by the statute of limitations set forth in 18 U.S.C.

Section 1595(c), that the Court lacks personal jurisdiction

over the defendants, and that venue is improper in this

District.

        In deciding a motion to dismiss pursuant to Rule

12(b)(6), the allegations in the complaint are accepted as

true, and all reasonable inferences must be drawn in the

plaintiff's favor.  McCarthy v. Dun & Bradstreet Corp., 482

F.3d 184, 191 (2d Cir. 2007).  The Court's function on a motion

to dismiss is "not to weigh the evidence that might be

presented at trial but merely to determine whether the

complaint itself is legally sufficient.  Goldman v. Belden, 754

F.2d 1059, 1067 (2d Cir. 1985).  The Court should not dismiss

the complaint if the plaintiff has stated "enough facts to

state a claim to relief that is plausible on its face."  Bell

Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007).  "A claim has

facial plausibility when the plaintiff pleads factual content
that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged."  Ashcroft v.
Iqbal, 556 U.S. 662, 667 (2009).  While the Court should
construe the factual allegations in the light most favorable to
the plaintiff, "the tenet that a court must accept as true all
the allegations contained in the complaint is applicable to
legal conclusions."  Id.

When presented with a motion to dismiss pursuant to
Rule 12(b)(6), the Court may consider documents that are
referenced in the complaint, documents that the plaintiff
relied on in bringing suit and that are either in the
plaintiff's possession or that the plaintiff knew of when
bringing suit, or matters of which judicial notice may be
taken.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 153
(2d Cir. 2002); Millennium Health LLC v. Emblemhealth, Inc.,
240 F.Supp. 3d 276, 279-80 (S.D.N.Y. 2017).

The following facts are taken from the plaintiff's
amended complaint and are accepted as true for the purposes of
this motion to dismiss.

Jeffery Espstein is a wealthy individual who, along
with Sarah Kellen and Lesley Groff, has previously been
investigated by Florida state law enforcement and the United
States Attorney's office for the Southern District of Florida
for various offenses relating to sex trafficking, including 18

I877DOEC

U.S.C. Section 1591.  Amended Complaint paragraphs 11 to 29.

The plaintiff alleges that her association with the defendants began in approximately October 2006, when the plaintiff was approached by Natalya Malyshev, allegedly one of the enterprise's recruiters.  Malyshev informed the plaintiff that she would introduce the plaintiff to Epstein, whom Malyshev described as a wealthy philanthropist who regularly used his wealth, influence and connections to help financially poor women like the plaintiff achieve their personal and professional goals and aspirations.  Amended complaint paragraphs 35 to 36.  Malyshev introduced the plaintiff to Epstein, and Epstein confirmed to the plaintiff that he would use his wealth and influence to have the plaintiff admitted to the Fashion Institute of Technology, ("F.I.T.") in New York City.  Between October 2006, and May 2007, each defendant confirmed and reiterated this promise to the plaintiff many times.  Amended complaint paragraph 38.

Ghislaine Maxwell, who allegedly oversaw the entire sexual enterprise with Epstein, told the plaintiff that in order to reap the benefits of Epstein's and Maxwell's connections, the plaintiff would need to provide Epstein with body massages.  Amended complaint paragraph 39.  Maxwell allegedly instructed the plaintiff on how to massage Epstein.  During the plaintiff's first massage of Epstein, Epstein allegedly converted the massage into a sexual act and made it

I877DOEC

known to the plaintiff that further sex would be required in
order for the plaintiff to obtain the assistance he promised
her.  Epstein allegedly told the plaintiff that if she did not
perform the sexual act as demanded, Epstein had the ability to
make sure that the plaintiff would not obtain either a formal
education or any modeling agency contracts.  Amended complaint
paragraph 43.  Maxwell allegedly reiterated to the plaintiff
that if the plaintiff did not perform the sexual favors desired
by Epstein or abide by the instructions given to her by
Epstein, Groff, Kellen, and Maxwell, the defendants had the
ability to make sure the plaintiff would not obtain formal
education or modeling agency contracts.  Amended complaint
paragraph 41.

        Thereafter, the plaintiff was allegedly instructed
dozens of times to provide body massages to Epstein, both at
his alleged townhouse in New York City and on his alleged
private island in the U.S. Virgin Islands, and on each occasion
the plaintiff was required to perform a sexual act with
Epstein.  Amended complaint paragraph 45.  Each defendant
participated in arranging these meetings between Epstein and
the plaintiff, and each defendant allegedly made
representations -- mainly promises to advance the plaintiff's
education and career -- to ensure that the plaintiff would
cooperate in fulfilling Epstein's sexual requests.  Amended
complaint paragraphs 40 and 45.  The plaintiff alleges that

I877DOEC

these representations were knowing and deliberately false, were

not acted upon by the defendants, and were made by Epstein,

Groff, Kellen, and Maxwell solely for the purpose of

maintaining the plaintiff's financial dependence on, and sexual

compliance with, Epstein's demands.  Amended complaint

paragraph 53.  The plaintiff was also allegedly provided with

living quarters in New York, a car service and a cell phone, so

long as she serviced Epstein sexually.  Amended complaint

paragraph 52.

       Epstein, Maxwell, Kellen, and Groff allegedly

intimidated, threatened, humiliated and verbally abused the

plaintiff in order to coerce the plaintiff into compliance.

Amended complaint paragraph 48 and 50.  For example, while

being transported to Epstein's island in the U.S. Virgin

Islands, Epstein, Maxwell, and Kellen took possession of the

plaintiff's passport in order to coerce her to comply with

their demands, including their demands that the plaintiff have

sex with Epstein and others.  Epstein and Maxwell also forced

the plaintiff into losing weight in order to be allowed to

return to the United States from the trip to South Africa.

Amended complaint paragraph 54.

       The plaintiff complied with the defendants'

instructions, including Maxwell's sexual demands.  In May 2007,

after still not being granted admission into F.I.T., the

plaintiff left the United States and did not return.  Amended

I877DOEC

complaint paragraph 64 to 66.

          The defendants argue that the portion of the amended
complaint related to the prior state and federal investigations
of Epstein and others should be stricken from the amended
complaint.  The defendants argue that these allegations are
immaterial because the prior investigations did not involve the
plaintiff.  The plaintiff argues that the allegations of prior
state and federal investigations into Epstein's conduct could
be used to show a modus operandi.

          A "court may strike from a pleading an insufficient
defense or any redundant, immaterial, impertinent, or
scandalous matter."  Federal Rule of Civil Procedure 12(f).
"Motions to strike are not to be freely granted, and no
deletions will be made unless it is clear that the allegations
are without [basis]."  Laub v. Genway Corp., 60 F.R.D. 462,
465-66 (S.D.N.Y. 1973) (citations and quotations omitted).
Moreover, the movants should show that they will be prejudiced
if the attacked allegations are left in the pleadings.  Allsate
Ins. Co. v. Home Ins. Co., No. 97 Civ. 4332, 1997 WL 639254, at
*1 (S.D.N.Y. Oct 15, 1997).  As another court in this district
noted:

          "there has arisen since the adoption of Rule 12(f)
general judicial agreement, as reflected in the extensive case
law on the subject, that motions to strike under Rule 12(f)
should be denied unless the challenged allegations have no

possible relation or logical connection to the subject matter

of the controversy and may cause some form of significant

prejudice to one or more of the parties to the action."

       VNB Realty, Inc. v. Bank of America Corp., No. 11 CV.

6805, 2013 WL 5179197, at *3 (S.D.N.Y. Sept. 16, 2013)

(internal quotation marks, brackets and citations omitted); see

also I.B. Trading, Inc. v. Tripoint Global Equities, LLC, 280

F. Supp. 3d 524, 546 (S.D.N.Y. 2017).

       There is no issue in this case with respect to an

unknown identity that may have to be proved by a pattern of

similar alleged crimes.  Cf. Federal Rule of Evidence 404(b);

United States v. Carlton, 534 F.3d 97, 101-02 (2d Cir. 2008)

(holding that the defendant's three prior convictions for bank

robbery were admissible to prove identity for the bank robbery

at issue through a common modus operandi).  However, the

portion of the amended complaint that the defendants move to

strike is not relevant to an issue of identity.  The plaintiff

has no doubt as to who allegedly committed sex acts with her.

However, the portion of the amended complaint that the

defendants move to strike is not so irrelevant to the case that

they should be stricken.  Groff, Maxwell and Kellen deny that

the alleged promises of financial assistance to the plaintiff

were knowingly false when made.  The portion of the amended

complaint subject to the motion to strike provides specific

facts in support of the plaintiff's allegations that she was

I877DOEC

recruited an enticed into performing sex acts with Epstein as part of a larger enterprise to provide Epstein with young females for sex, in which each defendant allegedly played a specific role.

The defendants contend that the plaintiff was a younger woman who willingly accepted the blandishments of a wealthy older man.  The knowledge and intent of the defendants will plainly be an issue.  The paragraphs of the amended complaint that the defendants seek to strike may be evidence of the defendants' knowledge and intent in their dealings with the plaintiff.  See Federal Rule of Evidence 404(b).  Accordingly, the motion to strike is denied.

The defendants move to dismiss the amended complaint on the basis that 18 U.S.C. Section 1591 does not cover the alleged conduct.  The defendants argue that the plaintiff and Epstein were engaged in a consensual relationship and that the amended complaint does not allege that the plaintiff was the victim of sex trafficking within the meaning of Section 1591.

As support for their argument, the defendants rely on the plaintiff's deposition in a proceeding before a different judge.  According to the defendants, in this deposition the plaintiff describes her relationship with Epstein as consensual.  The defendants argue that this testimony from the plaintiff contradicts the amended complaint.  But it is well established that it is improper for the Court to consider

matters outside of the pleadings on a motion to dismiss.

Millennium Health, 240 F. Supp. 3d at 280.  The defendants

argue that the Court can consider the plaintiff's testimony

because it was relied on by the plaintiff in response to the

defendants motions.  But the plaintiff referenced her prior

deposition only in response to the defendants' improper use of

the deposition.  The defendants also argue that the plaintiff

relied on her prior deposition to draft the amended complaint,

but that is plainly not true.  The plaintiff's deposition is

not referred to, relied on, or incorporated by reference in the

amended complaint, and indeed the defendants argue that the

specific testimony in the deposition is actually inconsistent

with the allegations in the amended complaint.  Therefore, the

Court will not consider either parties' improper use of

materials outside of the amended complaint.

        The defendants also argue that the amended complaint

itself should be read as describing a consensual relationship

between two adults, but the amended complaint describes with

sufficient detail the manner in which the plaintiff was

deceived, threatened, and coerced into following the

defendants' instructions to comply with Epstein's sexual

requests.  Accepting the defendants' description of the

relationship between the plaintiff and Epstein would require

the Court to accept the defendants' view of the facts rather

than the allegations in the amended complaint.  That would be

I877DOEC

improper on a motion to dismiss.

        The defendants further argue that Section 1591 was
intended only to reach victim's trafficked for sex and held
against their will, and that the amended complaint does not
allege that the plaintiff falls within that definition.  The
defendants again rely on materials outside the amended
complaint to support this proposition.  The Court will not
consider evidence extrinsic to the amended complaint at this
stage of the litigation.

        Moreover, Section 1591 is not as limited as the
defendants suggest.  Rather, Section 1591(a) imposes liability
on:

        "whoever knowingly in or affecting interstate or
foreign commerce, or within the special maritime and
territorial jurisdiction of the United States, recruits,
entices, harbors, transports, provides, obtains ... or solicits
by any means a person, or benefits financially or by receiving
anything of value from participation in a venture ... knowing,
or ... in reckless disregard of the fact, that means of force,
threats of force, fraud, coercion ... or any combination of
such means will be used to cause the person to engage in a
commercial sex act."

        18 U.S.C. Section 1591.  The statute imposes liability
for the use of force but does not require that force be used in
order for conduct to fall within the statute's reach.

1          Here, the amended complaint alleges that the plaintiff

2     performed sex acts on Epstein in return for numerous financial

3     inducements and fraudulent misrepresentations made and

4     reiterated by each of the defendants to the plaintiff.  The

5     plaintiff was allegedly recruited and enticed by the defendants

6     who knew that she would be fraudulently induced to engage in

7     commercial sex acts with Epstein.  A commercial sex act is

8     defined in Section 1591(e)(3) as "any sex act, on account of

9     which anything of value is given to or received by any person

10    ."  The plaintiff was given financial incentives to engage in

11    sex acts with Epstein.  She was allegedly fraudulently induced

12    to do so by false promises of help in her education and career,

13    and threatened with retaliation if she did not continue.  The

14    promises were allegedly knowingly false when made.  She was

15    recruited and solicited to do so.  While the defendants seek to

16    limit the statute to sex slavery, the statute is not so

17    limited.

18          Accordingly, the defendants' argument that the amended

19    complaint's allegations do not fall within Section 1591 is

20    without merit.

21          The defendants move to dismiss the amended complaint

22    on the ground that it fails to satisfy the pleading

23    requirements under Iqbal, Twombly, and Rule 8 of the Federal

24    Rules of Civil Procedure.  The defendants argue that the

25    amended complaint does not state a plausible claim with

I877DOEC

sufficient specific allegations that the plaintiff was a victim

of sex trafficking in violation of Section 1591 or any other

related statute entitling the plaintiff to civil relief

pursuant to Section 1595.

    While the plaintiff has partly relied on group

pleading in her allegations against the defendant, the amended

complaint contains several specific factual allegations

sufficient to survive a motion to dismiss against each of the

defendants.  For example, the amended complaint alleges that in

March or April of 2007, Maxwell, Kellen, and Groff reiterated

to the plaintiff Epstein's alleged promise that in exchange for

the plaintiff's continued sexual cooperation with Epstein,

Epstein would use his wealth and influence to have the

plaintiff admitted into F.I.T.  Amended complaint paragraph 38.

The amended complaint alleges that Maxwell and Epstein

threatened the plaintiff that if she did not comply with

Epstein's sexual requests, they had the ability to make sure

she did not obtain a formal education or modeling agency

contracts.  Amended complaint paragraph 41.  The amended

complaint also alleges that Epstein's wealth and connections

were similarly used by Kellen and Groff both to induce the

plaintiff to provide sex to Epstein and as a means of

threatening punishment to the plaintiff if she refused to

comply with their instructions.  Amended complaint paragraph

50.

I877DOEC

1          Accordingly, the defendants' motion to dismiss on the

2     basis that the plaintiff does not state a plausible claim based

3     on specific factual allegations is without merit.

4          The defendants argue that the amended complaint fails

5     to state a claim under Section 1591 because it fails to allege

6     either fraud under Rule 9(b) or coercion as defined by Section

7     1591.  Section 1591 defines coercion as:

8          "(A)  Threats of serious harm to or physical restraint

9     against any person;

10          "(B)  Any scheme, plan, or pattern intended to cause a

11     person to believe that failure to perform an act would result

12     in serious harm to or physical restraint against any person; or

13          "(C)  The abuse or threatened abuse of law or the

14     legal process."  18 U.S.C. Section 1591(e)(2).

15          Section 1591 defines serious harm as:

16          "any harm, whether physical or nonphysical, including

17     psychological, financial, or reputational harm, that is

18     sufficiently serious under all of the surrounding

19     circumstances, to compel a reasonable person of the same

20     background and in the same circumstances to perform or to

21     continue to performing commercial sexual activity in order to

22     avoid incurring that harm."  18 U.S.C. Section 1591(e)(5).

23          Based on the definitions of coercion provided by

24     Sections 1591(e)(2) and 1591(e)(5), the plaintiff has stated a

25     claim for coercion,.  As explained above, the plaintiff alleges

that the threats made to her by Epstein, Maxwell, Groff, and
Kellen coerced the plaintiff into performing and continuing to
perform the sexual acts requested by Epstein.

Maxwell, Groff, and Epstein argue that the threats
allegedly made by Maxwell and Epstein would not cause a
reasonable person to believe that they were in danger of
suffering serious harm, and therefore the plaintiff's
allegations fail to state a claim for coercion.  But whether a
reasonable person would perceive the alleged statements as a
threat of serious harm is necessarily a factual inquiry which
cannot be decided on a motion to dismiss.

Moreover, it is certainly not implausible that a young
person could believe that a person of apparent enormous wealth
would have the power to open educational and career doors for
her, or to slam those doors if she did not acquiesce in
requests for sexual activity.

Kellen argues that nowhere in the amended complaint is
Kellen alleged to have participated in or to have been aware of
Maxwell's and Epstein's threats, but the amended complaint
alleges that Kellen played a role in inducing the plaintiff
into performing commercial sex acts for Epstein and that Kellen
used Epstein's wealth, influence, power and connections as a
means of threatening punishment in the event that the plaintiff
refused to comply with the instructions to provide sex to
Epstein.  That conduct meets the definition of coercion and

under Section 1591(e)(2).

　　　　　The defendants also argue that the plaintiff has
failed to satisfy the heightened pleading standards provided by
Rule 9(b) for fraud claims because the amended complaint fails
to specify when and where any fraudulent statements were made
or explain why these statements were made with scienter.  Rule
9(b) provides that "in alleging fraud or mistake, a party must
state with particularity the circumstances constituting fraud
or mistake.  Malice, intent, knowledge, and other conditions
ever a person's mind may be alleged generally."  Federal Rules
of Civil Procedure 9(b).  To satisfy Rule 9(b), a complaint
must "(1) specify the statements that the plaintiff contends
were fraudulent, (2) identify the speaker, (3) state where and
when the statements were made, and (4) explain why the
statements were fraudulent."  Mills v. Polar Molecular Corp.,
12 F.3d 1170, 1175 (2d Cir. 1993).  Although Rule 9(b) allows a
plaintiff to allege fraudulent intent generally, a plaintiff
must allege facts that give rise to a strong inference of
fraudulent intent.  Shields v. Citytrust Bancorp, Inc., 25 F.3d
1124, 1128 (2d Cir. 1994).  This strong inference can be
established either "(a) by alleging facts to show that
defendants had both motive and opportunity to commit fraud, or
(b) by alleging facts that constitute strong circumstantial
evidence of conscious misbehavior or recklessness." Id.  See
also U.S. Bank National Association v. BFPRU 1, LLC, 230

I877DOEC

F.Supp. 3rd 253, 262 (S.D.N.Y. 2017).

          The amended complaint satisfies Rule 9(b).  The
plaintiff alleges that Malyshev told the plaintiff in October
of 2006 that Epstein would use his wealth and influence to have
the plaintiff admitted into F.I.T. and that when Malyshev
introduced the plaintiff to Epstein, Epstein reiterated this
promise to her.  Amended complaint paragraphs 34 to 36.  The
plaintiff also alleges that between October 2006 and May 2007,
Maxwell, Kellen, and Groff each confirmed and reiterated to the
plaintiff many times that Epstein would use his wealth and
connections to advance the plaintiff's career.  Amended
complaint paragraph 38.  These allegations sufficiently specify
the statements that the plaintiff contends are fraudulent, as
well as the identity of the speakers.  See Lehman Brothers
Commercial Corp. v. Minmetals International Non-Ferrous Metals
Trading Co., No. 94 Civ. 8301 (JFK), 1995 WL 608323A2, at *2
(S.D.N.Y. Oct. 16, 1995) (noting that where allegedly
fraudulent statements occurred over a period of time, a
plaintiff is not required to provide the date and time of every
statement).

          While the plaintiff does not describe the specific
locations where each of the alleged misstatements took place,
the plaintiff does allege that a substantial portion of her
interaction with Epstein occurred at his townhouse in New York
and on his private island in the U.S. Virgin Islands and that

I877DOEC

each defendant participated in arranging the plaintiff's

transportation to these locations.  Amended complaint paragraph

45.  Moreover, the plaintiff provides the exact address where

the plaintiff was provided living quarters and that she was

provided a cell phone so that the defendant could communicate

with and maintain control over the plaintiff.  Amended

complaint paragraph 52.  These allegations satisfy the

requirement under Rule 9(b) that the plaintiff provide the

location at which the fraudulent statements were made.

            As to scienter, the defendants argue that the fact

that they did not ultimately act upon the alleged promises to

have the plaintiff admitted into F.I.T. fails to show that they

made the alleged misrepresentations with the intent to defraud.

But while "the failure to fulfill a promise to perform future

acts is not ground for a fraud action," it can provide a basis

for fraud if "there existed an intent not to perform at the

time the promise was made."  Cohen v. Koenig, 25 F.3d 1168,

1172 (2d Cir. 1994).  Here, the plaintiff alleges that the

defendants reiterated and confirmed Epstein's promise solely

for the purpose of maintaining the plaintiff's relationship

with Epstein.  Amended complaint paragraph 53.  The plaintiff

also alleges that these statements were reiterated by the

defendants with the intention of convincing her to rely on the

defendants' representations in furtherance of a sex trafficking

enterprise.  Amended complaint paragraph 53.  That is

sufficient to allege that when the defendants made the

statements at issue, the defendants did not intend to perform

their promises to further the plaintiff's education and career.

Indeed, the allegations that the defendants seek to strike may

provide further evidence of the defendants' knowledge and

intent.  Accordingly, the defendants' argument that the

plaintiff has failed to plead fraud is without merit.

          Kellen and Groff also argue that the plaintiff's

allegations against them do not establish that either had

knowledge that force, fraud, or coercion would be used to cause

the plaintiff to engage in a commercial sex act with Epstein.

This argument is without merit.  As explained above, the

amended complaint provides several specific allegations that,

if accepted as true, would establish that both Kellen and Groff

knew that Epstein's wealth, influence, power and connections

were being used fraudulently to induce the plaintiff into

complying with Epstein's demands and as a means of coercing the

plaintiff.

          Accordingly, the defendants' argument that the amended

complaint fails to state a claim because it does not allege

coercion or fraud fails.

          The defendants argue that the amended complaint fails

to plead a causal link under Section 1591 because the amended

complaint should be read as describing a consensual sexual

relationship between the plaintiff and Epstein.  See 18 U.S.C.

I877DOEC

Section 1591(a) (requiring that "force, threats of force,
fraud, coercion ... or any combination of such means ... be
used to cause the person to engage in a commercial sex act").
This argument is without merit.  Again, this argument asks the
Court to accept the defendants' version of the facts rather
than accept the well pleaded allegations in the plaintiff's
amended complaint as true, which is impermissible on a motion
to dismiss.  Accordingly, the defendants' argument that the
amended complaint fails to plead a causal link is without
merit.

Epstein, Maxwell, and Kellen move to dismiss the
plaintiff's claim that they violated Section 1592.  Epstein
Maxwell, and Kellen argue that plaintiff's Section 1592 claim
lacks factual support and argue that there is no factual
allegation that the plaintiff's passport was confiscated and
held in order to force the plaintiff into commercial sex.

Section 1592 imposes liability on "whoever knowingly
... confiscates, or possesses any ... passport ... of another
person in the course of a violation of section ... 1591."  18
U.S.C. Section 1592(a).  As an initial matter, the plaintiff's
allegation of a violation of Section 1591 alones provides a
sufficient basis to proceed on a claim under Section 1595.  See
18 U.S.C. Section 1595(a) (providing a civil remedy to anyone
"who is a victim of a violation of" Chapter 77 of Title 18 of
the United States Code).  Moreover, the plaintiff has pleaded

I877DOEC

sufficiently a violation of Section 1592.  The amended

complaint alleges that the plaintiff's passport was confiscated

and controlled by Groff, Maxwell, and Kellen while the

plaintiff was on Epstein's private island in order to coerce

the plaintiff into providing sex to Epstein.  Of course, the

defendants tell a completely different story by relying on upon

statements in the plaintiff's deposition, but the Court cannot

rely upon those statements for purposes of this motion to

dismiss.  Accordingly, the amended complaint states a cause of

action under Section 1592.

The defendants also argue that the plaintiff fails to

state violations of Sections 1593A and 1594.  As noted above,

the plaintiff's allegations of violations of Sections 1591 and

1592 are each sufficient on their own to sustain a Section 1595

claim.  It is therefore unnecessary to reach the defendants'

arguments with respect to Sections 1593A and 1594.

The defendants argue that the plaintiff's claim is

barred by the statute of limitations in Section 1595(c)(1).

At the time when the plaintiff alleges the violation

in this case occurred -- in 2006 and 2007 -- Section 1595

contained a four-year statute of limitations.  See Trafficking

Victims Protection Reauthorization Act of 2003, Public Law No.

108-193, Section 4(a)(4), 117 Statutes 2875, 2878; 28 U.S.C.

Section 1658(a); see also Cruz v. Maypa, 773 F.3d 138, 143-44

(4th Cir. 2014).  In December 2008, Section 1595 was amended to

I877DOEC

1    provide a ten year statute of limitations.  See William

2    Wilberforce Trafficking Victims Protection Reauthorization Act

3    of 2008, Public Law No. 110-457, Section 221, 122 Statutes

4    5044, 5067.

5            The defendants argue that the ten year statute of

6    limitations should not be read to apply to this case under the

7    anti-retroactivity doctrine and that the four-year statute of

8    limitations applies to the plaintiff's claims in this case.

9    See Weingarten v. United States, 865 F.3d 48, 54-55 (2d Cir.

10   2017) (citing Landgraf v. USI Film Products, 511 U.S. 244,

11   (1994)).  Therefore, the defendants conclude that the

12   plaintiff's claims are plainly time-barred.

13           The defendants rely on Abarca v. Little, 54 F. Supp.

14   3d 1064 (District of Minnesota 2014), in which the district

15   court held that the four-year statute of limitations applied to

16   Section 1595 claims, where the conduct was alleged to have

17   occurred prior to the 2008 amendment.  Id. at 1068-69.

18   However, courts within this Circuit have held consistently that

19   the ten-year statute of limitations applies to TVPRA claims

20   that were not time-barred under the four-year statute of

21   limitations when Congress extended the Section 1595 statute of

22   limitations in December 2008, even if those claims accrued

23   before 2008.  See Lama v. Malik, 192 F. Supp. 3d 313, 321-323

24   (E.D.N.Y. 2016); Oluoch, v. Orina, 101 F. Supp. 3d 325, 329-31

25   (S.D.N.Y. 2015); accord Cruz, 773 F.3d at 143-44.  In that

I877DOEC

situation, applying this ten year statute to claims that were

alive in December of 2008 has no retroactive effect because it

does not impair any rights or revive any stale or expired

claims.  The defendants have not explained why this Court

should reject the conclusions reached by all of the other

courts of this Circuit that have addressed this question, which

have held uniformly that the ten-year statute of limitations

applies to claims that were viable when the ten-year statute of

limitations period was enacted.  See Lama, 192 F. Supp. 3d at

321-22 (collecting cases).  Accordingly, the ten-year statute

of limitations applies to the plaintiff's claims in this

action.

          The defendants argue that even if the ten-year period

applies, the plaintiff's claims would still be time barred

because they accrued no later than January 2007.  But the

amended complaint alleges that the plaintiff returned to New

York in February 2007, each of the defendants promised the

plaintiff again that her sexual compliance would be rewarded

with admission into F.I.T. and that each defendant required the

plaintiff to provide Epstein with sex acts thereafter.  Amended

complaint paragraphs 61-63.  The defendants argue further that

after January 2007 it was unreasonable for the plaintiff to

rely on any alleged promises made by the defendants, but this

is a factual question that cannot be decided on a motion to

dismiss.  A statute of limitations defense that involves a

I877DOEC

fact-specific analysis is inappropriate to resolve on a motion

to dismiss unless it is clearly meritorious from the face of

the complaint.  See Bigsby v. Barclays Capital Real Estate,

Inc., 298 F. Supp. 3d 708, 725-26 (S.D.N.Y. 2018).  That is

plainly not the case here.  Accordingly the defendants' motions

to dismiss based on the argument that the plaintiff's claim is

time-barred are not yet ripe for litigation.

        Accordingly, the defendants' statute of limitations

defense is not a basis to dismiss the plaintiff's claims.

        Finally, the defendants move to dismiss the amended

complaint for lack of personal jurisdiction.  Groff, Kellen,

and Maxwell argue that the amended complaint fails to allege

any present connection between the defendants and New York.

However, there is plainly specific personal jurisdiction over

all of the defendants on the basis that the alleged violations

of Section 1595 occurred in New York.  See N.Y. C.P.L.R.

Section 302(a)(2) (providing personal jurisdiction over any

person who "commits a tortious act within the state").

        The defendants contend that the alleged tortious

conduct in this case ended prior to the period covered by the

statute of limitations and that therefore the amended complaint

fails to show that the suit-related conduct occurred in New

York.  This argument depends upon accepting the defendants'

arguments on the statute of limitations that the Court has

already rejected.  In any event, to survive a motion to dismiss

I877DOEC

where no evidentiary hearing is held, the plaintiff need only

make a prima facie case that the defendants are subject to the

Court's personal jurisdiction.  See In re Magnetic Audiotape

Antitrust Litigation, 334 F.3d 204, 206 (2d Cir. 2003) (per

curium) ("Prior to discovery, a plaintiff may defeat a motion

to dismiss based on legally sufficient allegations of

jurisdiction;") PDX Labs, Inc. v. Friedlander, 103 F.3d 1105,

1108 (2d Cir. 1997); Rubinbaum LLP v. Related corporate

Partners V, L.P., 154 F. Supp. 2d 481, 486 (S.D.N.Y. 2001).

The Court must construe the pleadings and supporting affidavits

in the light most favorable to the plaintiff.  See PDK Labs,

103 F.3d at 1108.  The plaintiff eventually will have to

establish jurisdiction by a preponderance of the evidence,

either at trial or at a pretrial evidentiary hearing.  See

CutCo Industries, Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir.

1986); Marine Midland Bank, N.A. v. Miller, 664 F.2d 889, 904

(2d Cir. 1981).  But at this stage, prior to discovery, the

Court must "credit a plaintiff's averments of jurisdictional

facts as true."  In re Magnetic Audiotape, 334 F.3d at 206; see

also Landau v. New Horizon, No. 02 Civ. 6802, 2003 WL 22097989,

at *3, (S.D.N.Y., Sept. 8, 2003).  The plaintiff has done all

she needs to do to plead personal jurisdiction at this stage of

the litigation.  See United States v. Machet, No. 08 Civ. 7936,

2009 WL 3029303, at *8 (S.D.N.Y. Sept. 21, 2009) ("Where, as

here, the facts of the case itself are so intertwined with the

1  jurisdictional issue, the Court is well within its discretion

2  to deny the motion to dismiss for lack of personal

3  jurisdiction.").

4          Similarly, the defendants' assertion that venue is

5  improper in this District is without merit.  Again, the

6  defendants argue that the alleged conduct occurred outside of

7  the statute of limitations period and therefore cannot

8  establish that a substantial part of the events giving rise to

9  the claim occurred within this District.  The defendants'

10  argument is yet another variant of their statute of limitations

11  argument, which has already been rejected as grounds to dismiss

12  the amended complaint.  The amended complaint alleges that a

13  substantial amount of the actionable conduct occurred here in

14  the Southern District of New York.

15          Accordingly, the defendants' arguments to dismiss for

16  lack of personal jurisdiction and improper are without merit.

17          The Court has considered all of the arguments raised

18  by the parties.  To the extent not specifically addressed, the

19  arguments are either moot or without merit.  As explained

20  above, the defendants' motions to dismiss are denied.  The

21  clerk is directed to close all pending motions.  So ordered.

22          All right.  That brings us then to the scheduling

23  order.  How much time for discovery?

24          It would seem to me that discovery in the case is

25  fairly straightforward.  There are about six potential

I877DOEC

witnesses.  The parties allege that each of the other parties

is not telling the truth.  Whether those issues can be resolved

on summary judgment, I don't know.  I don't decide anything

until it's briefed on the facts and the law; and there is no

such motion before me, except the parties attempted to rely on

lots of material outside the complaint.  But there are about

six witnesses, except perhaps some additional witnesses with

respect to the allegations in the complaint that were the

subject of the motion to strike.  But I would think that you

all ought to be able to complete discovery by the end of the

year, end of December.  OK?

　　　　　MR. MILLER:  Your Honor, respectfully, could we

request a close of discovery at the end of February of 2019?

　　　　　THE COURT:  On what basis?

　　　　　MR. MILLER:  Just as I'm starting to discuss the issue

of timing with my colleagues here, there is some concern that

between document production and scheduling depositions, the end

of the year may not be realistic, and we're just trying to set

a date that gives us some flexibility there.

　　　　　THE COURT:  OK.  Yes, plaintiff?

　　　　　MS. MCCAWLEY:  On behalf of the plaintiff, we would

like to proceed as swiftly as possible, so we would appreciate

the December date.

　　　　　THE COURT:  I think February is a little long.  On the

other hand, I think asking the parties to complete discovery at

1    the end of the holiday season, December the 28th, may not be

2    quite fair to both sides, so I think the end of January is not

3    unreasonable -- that's six months -- but that should be a firm

4    deadline.  There is no reason why you can't get the discovery

5    done by then.  So, the last Friday in January is actually

6    January 25.  So, complete discovery by January 25, 2019.

7            There aren't going to be anymore parties, causes of

8    action, amendments to the complaint; is that right?

9            MS. MCCAWLEY:  Not from the plaintiff, no.

10           THE COURT:  OK.

11           MR. MILLER:  Your Honor, obviously we have not filed

12    an answer yet.

13           THE COURT:  Right.

14           MR. MILLER:  And we haven't fully evaluated whether

15    there are any counterclaims or the like, so I just want to note

16    that for the record.

17           THE COURT:  OK.  I think the rules say, what, how much

18    time after a decision on the motion to dismiss to file an

19    answer?  14 days?

20           MR. MILLER:  The wiser heads at this table are telling

21    me 20 days.

22           MS. MENNINGER:  I think it's 21 just off the top of my

23    head, but I apologize, your Honor, I may be confusing another

24    rule.

25           THE COURT:  It doesn't really make a difference,

I877DOEC

1   because I can set it.

2          For what it's worth, my recollection was correct, it's

3   14 days.  "Unless the court sets a different time, serving a

4   motion under this rule alters these periods as follows:  If the

5   court denies the motion or postpones its disposition until

6   trial, the responsive pleading must be served within 14 days

7   after notice of the court's action."

8          MR. MILLER:  Your Honor, can we request --

9          THE COURT:  You can have some more time.  So end of

10  August, August 31.  So, time for defendants to answer is August

11  31, 2018.

12         No additional parties or causes of action after

13  September 14, 2018.

14         No additional defenses after September 28, 2018.

15         Except for good cause shown, all discovery is to be

16  completed by January 25, 2019.

17         Dispositive motions, if any, February 15, 2019.

18         Joint pretrial order, March 1, 2019.

19         And the date for the pretrial order gets put over

20  automatically for three weeks if there is a dispositive motion,

21  and the ready trial date gets put over also for four weeks.

22         So, if there is a dispositive motion, the parties

23  should be ready for trial 48 hours notice on and after March

24  15.

25         This is a jury trial, yes?  Jury trial.

I877DOEC

1          Estimated trial time?  Eight days?

2          MS. MCCAWLEY:  That would be fine, your Honor.

3          THE COURT:  Do the parties want to talk to the

4    magistrate judge about the possibility of settlement?

5          MS. MCCAWLEY:  We have no objection to that, your

6    Honor.

7          MR. MILLER:  We haven't discussed that with the

8    clients yet.  As a general proposition, we are always open to

9    that, but I would like to discuss it with the clients if I

10   could.

11         THE COURT:  Well, it seems to me if there is

12   willingness on one side to talk, I should at least send it to

13   the magistrate judge, even if one side says that there will

14   never be a settlement in this case.  So long as there is some

15   flexibility on one side, that at least is a step forward.

16   Which leads then to the next question:  Would the parties agree

17   to try this case before the magistrate judge?  I don't know if

18   another magistrate judge has been appointed.  It was originally

19   Magistrate Judge Francis, who has now left the bench, but the

20   docket sheet will reflect a new magistrate judge when I assign

21   it to the magistrate judge for purposes of settlement, so you

22   can follow that.

23         I imagine that without even knowing who the magistrate

24   judge is, you're not going to tell me that you're prepared to

25   agree to try the case before the magistrate judge, but maybe

I877DOEC

1    I'm wrong.

2          MS. MCCAWLEY:  I would appreciate knowing the

3    magistrate before we make that decision and talk to our client.

4          THE COURT:  OK.  So, I'm going to refer it to the

5    magistrate judge for purposes of settlement.  Follow the docket

6    sheet, and you will see who the magistrate judge is.

7          And you can let me know by September 14 -- just write

8    me a letter -- whether the parties consent to trial before the

9    magistrate judge.  And you can just write me a joint letter.

10   You don't have to tell me who wants to go to the magistrate

11   judge and who doesn't; all I need to know is whether all agree

12   to go to the magistrate judge.

13         Which leads me then to one other request.  I really

14   urge all of you to be cooperative and civil with each other.

15         Whatever the relations are between your clients should

16   not infect the way you deal with each other, or the papers that

17   you file before me, because that's really not helpful.

18         So, OK, I'll enter the civil scheduling order.  I will

19   do an order disposing of the motions, and the full rationale

20   for the motions is in the transcript.

21         All right.  Anything further?

22         MS. MCCAWLEY:  Thank you, your Honor.

23         MR. MILLER:  No.  Thank you, your Honor.

24         THE COURT:  Good afternoon, all.

25         (Adjourned)