Ib7ddoec
                        Speakerphone Conference

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   JANE DOE 43,

 4                 Plaintiff,              New York, N.Y.

 5            v.                           17 Civ. 0616(JGK)

 6   JEFFREY EPSTEIN, et al.,

 7                 Defendants.

 8   ------------------------------x

 9                                         November 7, 2018
                                           4:00 p.m.
10
     Before:
11
                       HON. SARAH NETBURN,
12
                                      Magistrate Judge
13
                     APPEARANCES (via speakerphone)
14
     BOIES, SCHILLER & FLEXNER LLP
15        Attorneys for Plaintiff
     BY:  SIGRID S. McCAWLEY
16           – and –
          PAUL G. CASSELL
17        Attorney for Plaintiff

18   LINK & ROCKENBACH, P.C.
          Attorneys for Defendants
19        Jeffrey Epstein, Sarah Kellen and
          Lesley Groff
20   BY:  SCOTT J. LINK

21   HADDON, MORGAN AND FOREMAN, P.C.
          Attorneys for Defendant Ghislain Maxwell
22        Haddon, Morgan & Foreman, P.C.
     BY:  LAURA A. MENNINGER

23

24

25

Ib7ddoec
Speakerphone Conference

1          (In chambers; speakerphone call initiated)

2          THE COURT:  Good afternoon.  This is Judge Netburn.  I

3     have you here with my law clerk and with a court reporter.

4          What I'm going to ask is that each party state its

5     appearance for the record, and then if I can request that

6     whenever anybody speaks, that that person identify themself

7     again so that the court reporter can properly attribute your

8     comments to the correct person.  And then last housekeeping

9     matter is that when I do these telephone conference, I do them

10    as a courtesy to the parties.  Obviously, you can't read body

11    language over the phone, so please be considerate of one

12    another and do your very best not to speak over somebody who is

13    speaking.

14         So, who is here on behalf of the plaintiff?

15         MS. McCAWLEY:  Good afternoon, your Honor.  This is

16    Sigrid McCawley, from the law firm of Boies, Schiller &

17    Flexner, and I represent the plaintiff Sarah Ransome, and I

18    have on the line with me as well Paul Cassell, who is our

19    co-counsel who also represents plaintiff, Ms. Ransome.

20         THE COURT:  Thank you.

21         MR. CASSELL:  Good afternoon, your Honor.

22         THE COURT:  Good afternoon.

23         And on behalf of Mr. Epstein and others?

24         MR. LINK:  Good afternoon, your Honor.  This is Scott

25    Link on behalf of defendants Epstein, Kellen and Groff, and we

Ib7ddoec
                          Speakerphone Conference

1     really appreciate your time this afternoon.  Thank you.

2              MS. MENNINGER:  Good afternoon, your Honor.  Laura

3     Menninger on behalf of defendant Ghislain Maxwell.

4              THE COURT:  Thank you.

5              All right.  So I have a series of letters from the

6     parties regarding the dispute over the confidentiality order.

7     My understanding is that the parties agree in principle to a

8     confidentiality order but we have some disputes over its scope.

9              Having reviewed the two versions that were filed

10    yesterday, I believe the primary disputes are on paragraph 3,

11    where the definition of what is confidential is being

12    negotiated, and then with respect to paragraph 8, about who is

13    the qualified designating party.  And then in the plaintiff's

14    proposal there is a paragraph 13, regarding what to do with

15    respect to electronic information that is sought by subpoena

16    from a nonparty.

17             Are those the three areas in dispute at this point?

18             MS. MENNINGER:  Your Honor, this is Laura Menninger

19    for Ms. Maxwell.

20             There also is a dispute in paragraph 12 that relates

21    to the paragraph 13, that is whether electronic copies could

22    be -- after the conclusion of the case.

23             THE COURT:  Sorry.  You cut out for a minute.  Whether

24    electronic copies?

25             MS. MENNINGER:  Could be maintained after the

Ib7ddoec
                    Speakerphone Conference

1    conclusion of the case.

2              THE COURT:  OK.  I see what you are referring to.

3              All right.  So let's begin with paragraph 3, which is

4    the definition of "confidential."  And as I understand it,

5    defendant Maxwell seeks a definition that would encompass

6    information that is, quote, confidential, and implicates common

7    law and statutory privacy interests.  Whereas the designation

8    from the plaintiff is, in my opinion, more broad, which just

9    requires a good faith basis to believe that the material is

10   entitled to confidential treatment.

11             So the plaintiff here seems to be advocating for a

12   more broad definition of confidentiality.  I think the problem

13   with that is should there be a dispute that I need to resolve

14   as to whether something is appropriate or not, I think the way

15   it is written in paragraph 3 would require me to evaluate

16   whether or not the designating party had a good faith basis and

17   potentially even their own subjective view.  And to the extent

18   there is an objective test that is implicit here, I'm not quite

19   sure what I would be weighing that against.  So I'm not -- I'm

20   a little concerned that paragraph 3 is so broad.

21             That said, I think -- you know, I guess I'm curious to

22   hear what the nature of the conversations have been on this

23   particular topic to get a sense of where the real concerns lie.

24             MS. McCAWLEY:  Your Honor, this is Sigrid McCawley for

25   the plaintiff.  If I could just address that briefly?

Ib7ddoec

Speakerphone Conference

1          The one -- with respect to paragraph 3, the one thing

2     that is also different between the version that we proposed and

3     the version that Ms. Maxwell proposed which relates to

4     paragraph 3 is in the beginning, the opening paragraph of

5     Ms. Maxwell's protective order, you will see additional

6     language that is not in our protective order, and that is the

7     sentence that says, "Upon" -- at the very beginning of the

8     protective order, "Upon a showing of good cause in support of

9     the entry of a protective order to protect the discovery and

10     dissemination of confidential information or information which

11     will improperly annoy, embarrass, or oppress any party,

12     witness, or person providing discovery in this case, it is so

13     ordered."  That language is not included in our introductory

14     paragraph.

15          We have in our proposal order, "Upon a showing of good

16     cause in support of the entry of a protective order to protect

17     the discovery and dissemination of confidential information in

18     this case, it is so ordered," because in our view that language

19     allows the defendants to mark in a broad manner information as

20     confidential that may not have -- they may not have a good

21     faith basis for asserting confidentiality.

22          THE COURT:  Can we pull back the lens for a minute?

23          What are the types of documents that we are talking

24     about here that the parties have concern over?

25          MS. McCAWLEY:  This is Sigrid McCawley again for the

Ib7ddoec
                        Speakerphone Conference

 1   plaintiff.

 2          Your Honor, we started this conversation by in this

 3   case not proposing a protective order; it is the defendants who

 4   wanted the protective order.  We agreed to it in good faith in

 5   order to try to move discovery along in this case.

 6          My understanding is the types of -- you know, I see

 7   this as a sexual trafficking case, and the types of information

 8   that will be exchanged may have information of a sexual nature.

 9   However, unlike prior cases that we have had that have dealt

10   with minors, the plaintiff in this case was not a minor at the

11   time she was trafficked.  So we were -- we believe that we did

12   not need a protective order in this case as an initial matter.

13   The defendants would like a protective order in this matter.

14          THE COURT:  So maybe, Ms. Menninger, you can tell me

15   what it is that you believe you are -- what is motivating you

16   here?  What are you worried about producing that you want to

17   keep confidential?

18          MS. MENNINGER:  Your Honor, I believe that the

19   majority of the concerns will be related to discussions during

20   depositions about sexual activities.  Plaintiff has alleged not

21   only that my client ran a sex trafficking organization but she

22   claims also that she was directed by my client and the Epstein

23   defendants to have sex with third parties, including Alan

24   Dershowitz, for example.  And so to the extent my client or

25   Mr. Dershowitz or anyone else is going to be asked about their

Ib7ddoec

Speakerphone Conference

1   private sexual activity, I believe that would implicate their

2   privacy rights for the reasons that Judge Sweet articulated in

3   the opinion that I had referenced in my moving letter.  He

4   analyzed it largely on the basis of sexual activity -- or

5   sexual conduct being encompassed within a right of privacy -- a

6   broad right of privacy and that people who will be in pretrial

7   litigation have a right of some type around their private

8   affairs, to include sexual activity.

9           I will say that plaintiffs have requested things like

10  tax returns.  They've requested credit card statements.

11  They've requested photographs.  They requested all kinds of

12  materials relating to my client's personal life.  The requests

13  range from the years 1997 through today.

14          So to sort of -- I think in my view there is a

15  mechanism within the protective order that should the other

16  parties disagree with the designation of confidentiality, to

17  raise that concern, and then if the parties still can't agree,

18  to bring it to the Court's attention.  I think, in my view,

19  that's the more cost-effective and efficient way to go about

20  this rather than a third party who get involved or a witness

21  who is called to testify, having to raise it individually

22  themselves in a motion to quash or a motion for a protective

23  order.

24          I think it is not just documents that we're talking

25  about but based on my experience in the <u>Giuffre v. Maxwell</u>

Ib7ddoec

Speakerphone Conference

1   matter, it largely came up during the course of deposition

2   testimony.  There were also medical records that were being

3   sought, psychiatric records being sought and I anticipate that

4   would occur in this case as well.

5          THE COURT:  Make sure that everybody is speaking as

6   slowly and as clearly as possible so that the court reporter

7   can be sure to get everybody's statement.

8          I guess my concern here is -- I think that this goes

9   for both paragraphs, both paragraph 3's, that when the dispute

10  comes up, I need to have a standard against which I can measure

11  an application.  And so, in my opinion, it is more effective if

12  we can have some more detail.  And so if the parties are

13  prepared to agree to deem confidential, for instance, you know,

14  information that relates to, you know, sexual conduct or sexual

15  activity, you know, information that discloses personal

16  identifying information, which would cover tax returns,

17  information that discloses medical records, you know, and then,

18  if necessary, there can be some sort of a catchall, but at

19  least then I think that will save disputes in the first

20  instance, and if there are disputes, it will give me some sense

21  of what is intended here.

22          (Pause)

23          MS. McCAWLEY:  Your Honor, this is Sigrid McCawley for

24  the plaintiff.

25          The concern I have with the broadbrush of sexual

Ib7ddoec
                          Speakerphone Conference

1    activity is that the case we brought is obviously for violation

2    under the Sexual Trafficking Act, so it would encompass

3    essentially everything that's going to transpire in the case.

4    And while that -- there may be a way to modify that, for

5    example, sexual activity as it relates to minors or something

6    in that regard if we are going to have a witness who was abused

7    by, or allegedly abused by the defendants when they were

8    underage, I will be willing to talk about something like that

9    would cover or protect from that issue.  But to have a very

10   broad definition of any sexual activity would -- you know,

11   everything we would be filing would be almost entirely under

12   seal, in my view.

13          THE COURT:  Well, you know, your point is well taken

14   that this is the topic of this case, and as a result, I think

15   very little would be authorized to be filed under seal should

16   it be relevant to an issue that the Court is going to decide.

17   And so my -- you know, right now we're really talking about

18   discovery and exchanging information, and I think it's

19   reasonable for nonparties especially, but even parties, to, you

20   know, to disclose information without a fear that it's going to

21   be passed along to the New York Times.  And so, you know, it

22   may ultimately be covered by the press because it may

23   ultimately be tried, or there may be motion practice where all

24   of this is disclosed.  But for the purposes of discovery, I'm

25   less sympathetic to the argument that this case is about sexual

Ib7ddoec
Speakerphone Conference

1   trafficking and therefore everything needs to be available to

2   the public.

3            Is there a way that you think you can narrow the issue

4   to accommodate your concerns?

5            MS. MENNINGER:  Your Honor, this is Laura Menninger on

6   behalf of Ms. Maxwell.

7            I am happy to draft a list of potential topics that I

8   think are encompassed by the subject matter and circulate it.

9   I don't have -- I agree with all of the ones your Honor

10  suggested, and I would like to just take a look back at the

11  discovery requests thus far and see if there are any additional

12  discrete areas along with the language for a catchall that we

13  could use as our measuring stick going forward.

14           THE COURT:  What is your response to Ms. McCawley's

15  general concern, and, therefore, what if we limited the sexual

16  nature documents to those that concern nonparties?

17           MS. MENNINGER:  Your Honor, I can only speak from the

18  experience of the last case in which my client was asked by

19  these same counsel about her consensual sexual adult

20  relationships with others, including Mr. Epstein.  So I don't

21  think addressing -- we are only talking about minors or

22  nonconsensual activities, those are the only things that are

23  likely to come up.  If they are not planning to ask questions

24  about adult consensual relationships, then I probably would

25  have less of a concern.  But we actually had a couple rounds of

Ib7ddoec
                        Speakerphone Conference

1    litigation before Judge Sweet in that case over whether my

2    client had to answer questions regarding her adult consensual

3    sexual activities, and ultimately, relying on the protective

4    order, he ordered her to answer those questions.

5            So I'm -- I don't think that the distinction about

6    whether it is a case involving alleged trafficking of minors or

7    adults changes what I anticipate may be asked.  I could be

8    completely wrong and they don't plan to ask those same kind of

9    questions in this case.

10           THE COURT:  OK.  Why don't I ask you, Ms. Menninger,

11   to send a revised paragraph 3.  I think the goal here is to be

12   as specific as possible.  And, again, because of the nature of

13   this litigation, I think it's likely that much of the

14   information that you seek to hold confidential for purposes of

15   discovery would ultimately be disclosed certainly at a trial.

16   Obviously, this protective order makes clear of that.

17           MS. MENNINGER:  Right.

18           THE COURT:  But even in the context of any motion

19   practice, it may well be that the Court needs to rely on this

20   information in order to render a decision, which would then

21   make that confidential information a judicial document for

22   which the public has a presumptive right of access.  OK.

23           MS. MENNINGER:  All right.  Yes, your Honor.  I am

24   happy to do that.

25           This is Laura Menninger.

Ib7ddoec
                    Speakerphone Conference

1              THE COURT:  OK.  So let's see what that is.  I don't

2       think that the proviso that the defendants have in their --

3              Sorry.

4              (Pause)

5              -- in the opening paragraph of the protective order

6       that talks about annoyance, embarrassment, or oppression, I

7       think that that should be removed, and so I would adopt the

8       plaintiff's version of the sort of preliminary whereas clause

9       for the protective order.  But let's see if we can be more

10      specific in paragraph 3 as to what it is that we are seeking to

11      protect.

12             OK.  Paragraph 8.

13             Paragraph 8, as I understand it, has to do with who

14      has the right to designate something as confidential.  And in

15      my experience it has always been the producing party who has

16      the obligation and the right to do so, but maybe in this case

17      there are other concerns that I am not focusing on.  Who wants

18      to address this in the first instance?

19             MS. McCAWLEY:  Your Honor, this is Sigrid McCawley.  I

20      am the one who proposed the language for paragraph 8.

21             The concern we had was from other actions --

22      Ms. Menninger has referenced the action before Judge Sweet,

23      where one party would designate wholescale a nonparty, for

24      example, all of their testimony confidential irrespective of

25      whether the nonparty believes that it should be held

Ib7ddoec
                         Speakerphone Conference

 1   confidential.  And so this paragraph, I adjusted it to

 2   provide --

 3            THE COURT:  Sorry.  Ms. McCawley, you've got to speak

 4   half as fast.

 5            MS. McCAWLEY:  I'm so sorry.

 6            THE COURT:  We will never get a record here.

 7            MS. McCAWLEY:  I'm sorry.

 8            So with this paragraph, I proposed to change the

 9   language such that only the person that is actually producing

10   the confidential information, the one who owns that

11   confidential information, would be able to designate it as

12   confidential to protect from having a party wholescale

13   designate things as confidential that weren't that individual's

14   confidential information.

15            THE COURT:  And your example is a nonparty gets

16   deposed and then the defendant says everything in that

17   nonparty's deposition should be confidential?

18            MS. McCAWLEY:  Exactly.

19            THE COURT:  Well, in part I would imagine that that

20   would be -- we would have some limitations based on the revised

21   paragraph 3 that will be more specific about what can and

22   cannot be designated as confidential.  And so, you know, I

23   don't think testimony that, you know, one party believes is

24   intended to annoy or to harass is an appropriate designation.

25   But if that nonparty were speaking about something more narrow

Ib7ddoec
Speakerphone Conference

1  and more particularized, how would you feel about that

2  designation?

3        MS. McCAWLEY:  Well, it can certainly be, for example,

4  if that individual provided testimony with respect to something

5  in this matter that they did not want to mark as confidential

6  or, for example, produce photographs of the defendants with

7  them that they did not want marked as confidential, under the

8  old version of this protective order, the defendants could come

9  in and mark it as confidential and the nonparty would have no

10  control over that situation.

11        So this is meant to -- in other words, the party who

12  is providing the information, whether it be by subpoena or

13  whether it be a party to this agreement, has the ability to

14  mark their information confidential if they want it to be

15  protected in that manner, but no other person can do that other

16  than the person who is producing the information.

17        THE COURT:  OK.  Ms. Menninger, that's certainly the

18  most traditional way to proceed.  What's the reason for not

19  doing it that way?

20        (Pause)

21        MR. LINK:  Your Honor, this Scott Link.  Can I be

22  heard on this for just a minute?

23        THE COURT:  Sure.

24        MS. MENNINGER:  I'm having some trouble hearing

25  everyone.

                        Speakerphone Conference

1           MR. LINK:  OK.  This is Scott Link, your Honor.  May I

2   be heard on this --

3           THE COURT:  Yes.

4           MR. LINK:  -- topic for one moment?

5           THE COURT:  Yes.

6           MR. LINK:  So, first, I think it's unfair to expect a

7   third-party witness, some of whom are not represented by

8   lawyers, to have to make the decision about confidentiality.

9           Second, when a third-party witness comes in and gives

10  testimony that relates to potential, for example, sexual

11  activity with one of the defendants, then that defendant should

12  have the right to designate that information as confidential.

13  It's one thing to say that the defendant -- you know, that

14  whoever the third-party witness is doesn't have an interest in

15  maintain confidentiality, but that's really only half of the

16  equation, because the person that they're testifying about may

17  in fact want to keep that particular sexual relationship or

18  consensual relationship from being in The New York Times, like

19  you said.

20          So I think it just creates more of an issue for us if

21  we leave it to an unrepresented person to control whether the

22  confidentiality applies, particularly where you're going to

23  give us a definition now in paragraph 3 that should be more

24  limiting in what can be designated.  And, frankly, if a party

25  goes too far in the designation, then we'll be back before you,

Ib7ddoec
                        Speakerphone Conference

1    and obviously you can do whatever you think is appropriate from

2    the attorney's fees and costs and enforce the protective order

3    that you've signed off on.

4            Thank you, your Honor.

5            THE COURT:  Thank you.

6            MS. McCAWLEY:  Your Honor, this is Sigrid McCawley

7    again.

8            Just to address Mr. Link's comments in a reply from

9    the plaintiff, exactly what he is saying is what we're trying

10   to prevent, having to come back to you multiple times over

11   something like this.  So the party who is, for example, a

12   nonparty witness who brings to a deposition photographs showing

13   that witness with the defendant, those are that nonparty's

14   photographs and they should be able to mark them as

15   confidential and (unintelligible).  So choose or not mark them

16   as confidential, it is their material to designate.  It

17   shouldn't be that a party to the litigation can then coax that

18   in confidentiality through this order.  In other words, it

19   creates more layers of dispute relating to confidentiality than

20   is necessary.

21           THE COURT:  I guess one question I have is, you know,

22   what confidence do you have that a lay witness who comes to

23   testify will have any understanding of the concept of

24   confidentiality and any rights that he or she might be able to

25   invoke to keep from the press his or her sexual activity?  That

Ib7ddoec
Speakerphone Conference

1   is question number one.

2   And question number two is, you know, with respect to

3   the comment made by Mr. Link, which is that, you know, someone

4   else may be implicated in a way that they wish not to be

5   disclosed.  You know, obviously, the nonparty is free to talk

6   about their own experiences in whatever way they wish outside

7   of the context of the litigation, but in the context of this

8   litigation, if they are called upon to disclose information

9   that might be I'll say confidential to a party, why shouldn't

10  that party be able to protect his or her interests?

11  MS. McCAWLEY:  This is Sigrid McCawley again.

12  So to address the first point, in this litigation thus

13  far, we've only had obviously a few handful of depositions, and

14  all of the nonparty deponents are represented by counsel.  So

15  this is not -- it is a hypothetical that we are posing, of

16  course, but it is not a circumstance that has arisen in this

17  case with respect to any nonparty witnesses.

18  On this second point of -- you made the point that

19  they are free to disclose.  Obviously, a nonparty is in control

20  of their information if they want to disclose it, and that is

21  why courts typically have the standard that everything is open

22  and public.  So we're going against that standard by folding in

23  a situation where a party could designate some other

24  individual's information as being confidential.  So, it cuts

25  against what the standard is for federal court disclosures

Ib7ddoec
Speakerphone Conference

1    generally, and that individual has the right to disclose that

2    if they so choose.

3           THE COURT:  OK.  All right.  I think I'm going to take

4    paragraph 8 under advisement and think a little bit, and I will

5    issue an order later on as to how to proceed on that topic.

6           Let's --

7           MS. MENNINGER:  Your Honor, this is Laura Menninger

8    again.  If I may just quickly, I want to correct one

9    misstatement.

10          There were a number of -- there are a number of

11   witnesses in this case who have been implicated by plaintiff

12   and do not have counsel.  I think there are something like 80

13   witnesses who have been endorsed.  And certainly if plaintiff

14   counsel believes that they -- each of those people have

15   counsel, they have not shared that information with us.  So I

16   do actually believe this is quite a big concern that there will

17   be people involved in the pretrial discovery process who do not

18   have lawyers make the kind of assessment that paragraph 8

19   suggests they have a lawyer who would make it for them.

20          THE COURT:  OK.  OK.  I appreciate that.

21          OK.  Let's move to paragraph 12 and 13, which I think

22   are connected.

23          Paragraph 12, as I understand it, the issue in dispute

24   is with respect to the retention of electronic copies and a

25   representation that they would be not distributed at the

Ib7ddoec
                          Speakerphone Conference

1    conclusion of the litigation.  And I take it that the

2    defendants' concern is that that paragraph and paragraph --

3    that provision in paragraph 12 implies that electronic

4    documents would be retained, and I presume that what you want

5    is full destruction of those documents.

6              You know, in this day and age --

7              MS. MENNINGER:  Your Honor, Laura Menninger.

8              THE COURT:  Yes.

9              MS. MENNINGER:  That is correct.  In the last case we

10   had that provision so that there would be destruction.

11   Obviously, if the case goes to trial, anything that is aired

12   publicly at the trial would not be destroyed.  If there are

13   motions practice where documents are legal documents and relied

14   upon by the Court, they enjoy the protections of the matter.

15   But I do -- it is our request that there not be material held

16   indefinitely afterwards if they don't qualify under one of

17   those exceptions (unintelligible) because the pretrial

18   discovery process should not be used for ulterior purposes like

19   gathering material in subsequent media, you know,

20   participation, that shouldn't be the reason why these materials

21   are (unintelligible) for purposes of use at trial or as

22   judicial documents so that the matters can be resolved, as they

23   should be, through the court system.

24             MS. McCAWLEY:  Your Honor, this is Sigrid McCawley for

25   the plaintiff.

Ib7ddoec
Speakerphone Conference

1          And I proposed the language in 12, but Ms. Menninger,

2     in response to that language, proposed paragraph 13.  So that

3     was what we were negotiating.  I want to make clear, 13 is not

4     my language.  It was an accommodation with when I proposed 12.

5          And the reason why I proposed 12 is really more of a

6     technical reason.  It is in my view -- and I have limited IT

7     experience, but in my view, the order that was -- is the prior

8     order that we had talked about makes it -- makes you attest to

9     the fact that you have destroyed all electronic information

10    that has been marked as confidential.  And as you know, in this

11    electronic age, what happens is if you are filing, for example,

12    pleadings under seal, those documents get attached as filings.

13    Then they get moved by email to different individuals,

14    circulated in drafts.  They get sent to experts.  They get

15    moved electronically in a number of ways that in my view is

16    virtually impossible as an attorney to attest that you have

17    destroyed every single electronic -- you've extracted it from

18    other filings, other pdfs, and destroyed every single piece of

19    that confidential information, particularly when there are

20    large-scale confidentiality designations in a case where things

21    are -- the majority or the bulk of the information in the case

22    is designated confidential such that anytime discovery is used

23    in any manner, you would have to track down every single email

24    or electronic version of that document and make sure you have

25    destroyed it.

Ib7ddoec
                        Speakerphone Conference

1           So this is really from my perspective as a

2    practitioner, practically being able to say I have destroyed --

3    certifying I have destroyed everything I think is really an

4    impossibility in that regard.  So that is why I proposed the

5    language, to attest that you've not destroyed it, you won't

6    destroy it, you will hold on to it, and not do so without a

7    court order, but I think it's virtually impossible to attest

8    that you have been able to destroy it all.

9           THE COURT:  Well, I think that's a reasonable concern

10   given the technology.  And I guess as to paragraph 13, my

11   reaction was -- and I think maybe this is what gave the

12   defendants some pause -- I mean, why can't paragraph 13 simply

13   say that absent a court order, you know, that the party is not

14   going to respond to a subpoena?  You know, obviously notify the

15   designating party that a subpoena has been served, but the

16   protective order just prohibits you from responding.  And you

17   can tell the party that subpoenas you, sorry, I'm bound by a

18   court order.  You know, I can make an application to the Court

19   for permission to respond, but absent a court order, I can't

20   produce these documents.  And in that way there will be no -- I

21   think that will be a good protection for the defendants against

22   some production of documents, whether electronic or otherwise,

23   that may be still accessible to the plaintiffs after the

24   litigation is over.

25           MS. McCAWLEY:  Yes, your Honor.  This is Sigrid

Ib7ddoec
                    Speakerphone Conference

1   McCawley again.

2             I'm sorry, Laura.

3             I'm comfortable with that modification or any

4   modification of paragraph 13 in that regard.

5             MS. MENNINGER:  This is Laura Menninger on behalf of

6   Ms. Maxwell.

7             My only small concern to the paragraph 13 suggestion

8   is just to make sure we all are clear about what a court order

9   means, because in some contexts, in some cases, subpoenas are

10  viewed as court orders, and so I did not want a subpoena to be

11  construed as having the same force and effect as an actual, you

12  know, review and consideration by a judicial officer and then

13  giving rise to a court order.  So with the caveat that a court

14  order really means that and it is not a subpoena, I don't have

15  a problem with that aspect of paragraph 13.

16            Getting back to the issues that Ms. McCawley raised

17  regarding, you know, the difficulty of complying with

18  destroying electronic copies, I think as long as there were a

19  certification that an attempt has been made to destroy

20  electronic copies, recognizing that perhaps not every single

21  one was caught, would then alleviate the defendants' concerns.

22  My concern, I think as the Court understands, is that

23  intentionally holding on to electronic copies and then

24  participating in trying to get a court order to release those

25  copies kind of undercuts the utility of the protective order in

Ib7ddoec
Speakerphone Conference

1   a way that makes -- would potentially make witnesses and

2   parties feel reluctant to provide information which they

3   thought was going to live on forever in a lawyer's file

4   regardless of whether it ultimately became public in a

5   courtroom.  And so, you know, I think there could be language

6   maybe better crafted which said you make a good faith effort to

7   destroy the electronic copy, you know, that that would

8   alleviate the practicality concerns raised by Ms. McCawley but

9   also give some comfort to parties or third-party witnesses who

10   are understandably reluctant to have the limited categories of

11   documents exist forever and also ensure that the litigation

12   process is not being for ulterior purposes with regards to the

13   media.

14          THE COURT:  Well, I am -- I think we're on our way to

15   finding a solution.  Obviously, a good faith effort, the beauty

16   is in the eye of the beholder.  And Ms. McCawley raises the,

17   you know, probable experience of lawyers during the course of

18   the litigation e-mailing documents back and forth.  Look at

19   this.  What do you think about this?  Etc.  Etc.  And to comply

20   with any good-faith obligation would -- you know, the lawyers

21   need to then, you know, cull through their emails almost like

22   an e-discovery search to find out -- to find documents.  That

23   seems a little bit much.

24          You know, maybe the -- you know, as long as they

25   represent that they've destroyed their --

Ib7ddoec
Speakerphone Conference

1        MR. LINK:  This is Scott Link.  Maybe it is my phone

2   that is cutting out, but I'm only hearing a few words here and

3   there for the last 20/30 seconds.

4        MS. MENNINGER:  That is my problem, too.  This is

5   Laura Menninger.

6        I apologize, your Honor.

7        THE COURT:  Well, we can try another phone call or we

8   can have people come in.

9        (Pause)

10        MS. McCAWLEY:  Your Honor, this is Sigrid McCawley.

11        I'm hearing fine.  I think it is when -- I think if it

12   is possible, you seem to get louder and a little quieter.  I

13   don't know if it is possible to get closer to where the

14   microphone is at all so that Ms. Menninger and Mr. Link can

15   hear better.

16        THE COURT:  I'm happy to try.  I haven't moved and I'm

17   pretty close.

18        In any event, my concern is about what obligations

19   would be on counsel of all sides, all parties, to sort of go

20   through their email and other electronic file retention to

21   destroy documents.  And it seems perfectly reasonable to

22   require a party to, for example, destroy an electronic file, so

23   maybe the file set, but it seems less reasonable to require

24   lawyers at the conclusion of this litigation to search through

25   the thousands of internal emails and identify and delete those

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Ib7ddoec
Speakerphone Conference

1  emails that have a document attached to them.  That seems

2  burdensome and unnecessary.

3       You know, in my experience, and I take it that you all

4  have had litigation experience between each other, but I find

5  that lawyers often overlitigate protective orders for fear of

6  nefarious conduct that very rarely comes to pass.  And maybe

7  you all have experience to know that that conduct may arise,

8  but the parties are going to sign this protective order and

9  they're going to agree to be bound by it and to keep in

10 confidence the information that they receive, and they will be

11 held in contempt if they fail to comply.  And, you know, I'm

12 not sure that any wordsmithing that we're going to do here with

13 respect to the destruction of electronic documents is going to

14 be that much more powerful than the fact that I will hold the

15 party in contempt if they violate any of the terms of this

16 protective order.

17       So I think, you know, requiring a party to destroy

18 their electronic file maybe is reasonable, but I don't think it

19 is reasonable to require them to comb through three years worth

20 of emails to see whether or not there are any attachments that

21 might be of confidential material, and that the party will

22 agree that they won't produce any documents in response to a

23 subpoena after -- you know, absent a court order from a

24 competent jurisdiction.

25       It seems to me that should be that should be --

Ib7ddoec
                    Speakerphone Conference

1              MS. MENNINGER:  Your Honor, this is --

2              THE COURT:  Go ahead.

3              MS. MENNINGER:  Your Honor, this is Laura Menninger,

4    for Ms. Maxwell.

5              I appreciate your comments and I understand where they

6    are coming from.  The other reason I had referenced Judge

7    Sweet's opinion in the <u>Giuffre</u> matter is that in that opinion

8    he talks about plaintiff's counsel supporting the protective

9    order throughout the litigation of that matter and then

10   afterwards, when the Miami Herald had an application to have

11   access to the confidential information, that they reversed

12   position and supported the Miami Herald's application so that

13   the Miami Herald, who I now have been observing by their

14   reporter as of yesterday, is writing a story about this --

15   about Ms. Giuffre's case and has introduced Ms. Giuffre.  And

16   her counsel have supported their application to have access to

17   the confidential information after the conclusion of the case

18   and after the (unintelligible).

19             So Judge Sweet ruled that -- he declined the

20   invitation to do so in that opinion.  I think that is -- while

21   I do think that in most cases parties are concerned about

22   things that never come to pass, in this particular case, I had

23   to -- we have reason to be concerned that even though the

24   protective order says what it says, should the case resolve

25   afterwards, there may be a changed position by plaintiff's

Ib7ddoec
                        Speakerphone Conference

1   counsel.

2           MS. McCAWLEY:   Your Honor, this is Sigrid McCawley for

3   the plaintiff.

4           That isn't accurate and it needs to stand corrected.

5   If you look at the filings that we submitted, the Miami Herald

6   was trying to get access to information under the protective

7   order as well as other third parties.   There are two appeals

8   pending.   We did not file any of those appeals.   They are by

9   other third parties who had access to the information.   We said

10  that if they are going to be accessing information, it has to

11  be to all of the information, it cannot be to a selective

12  portion of the confidential information.   And that was the

13  position that we took in that litigation.   And Judge Sweet did

14  not make any comment that Laura had just stated that he did.

15  Those orders stand for themselves, as we read, by the Court.

16          THE COURT:   OK.   Well, again, I'm not quite sure we

17  can account for all of the potential scenarios that the parties

18  are contemplating or anticipating.   I think we can revise

19  paragraphs 12 and 13 to require the destruction of electronic

20  files and that, you know, the commitment to keep in confidence

21  all materials held that are designated confidential and the

22  prohibition against disclosing any confidential materials

23  absent an order from a court signed by a judge.

24          I understand that there is a deposition happening

25  tomorrow and that there are documents that are to be turned

Ib7ddoec
                          Speakerphone Conference

 1   over today.  I'm going to consider paragraph 8.  I may not get

 2   you my thoughts before the day is over.  The documents should

 3   be produced immediately, and they should be kept in confidence,

 4   and any protective order will apply to those documents.  But

 5   for time being they are to be kept in confidence, and the

 6   deposition should be kept in confidence until the protective

 7   order is entered.

 8               Are there any --

 9               MS. MENNINGER:  Your Honor, this is Laura Menninger.

10               I produced the documents yesterday under the

11   confidentiality agreement.  We'll keep it confidential as you

12   just suggested, and I appreciate the comments about the

13   deposition tomorrow.

14               THE COURT:  OK.  So I will turn to this last

15   outstanding issue in the next day or two and give you my

16   thoughts and then ask you to send me a revised protective order

17   sometime next week.

18               Anything further from either side?

19               MR. LINK:  Your Honor, this is Scott Link.  Nothing

20   for us, your Honor.  Thank you.

21               MS. McCAWLEY:  That is Sigrid McCawley.

22               Thank you, your Honor.  We appreciate your time.

23               MS. MENNINGER:  Thank you, your Honor.  This is Laura

24   Menninger.

25               THE COURT:  All right.  Thank you.

Ib7ddoec

                    Speakerphone Conference

1              MR. CASSELL:  Your Honor, this is Paul Cassell.  Thank

2     you as well.

3              THE COURT:  Thank you.

4              (Adjourned)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25